DEVERIE J. CHRISTENSEN, ESQ.
Nevada Bar No. 6596
JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
DANIEL I. AQUINO, ESQ.
Nevada Bar No. 12682
**JACKSON LEWIS P.C.**
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
Telephone: (702) 921-2460
Facsimile: (702) 921-2461
E-Mail: deverie.christensen@jacksonlewis.com
        joshua.sliker@jacksonlewis.com
        daniel.aquino@jacksonlewis.com

*Attorneys for Defendants*
*Wynn Resorts, Limited and Wynn Las Vegas, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JUDY DOE NO. 1, an individual; JUDY DOE NO. 2, an individual; JUDY DOE NO. 3, an individual; JUDY DOE NO. 4, an individual; JUDY DOE NO. 5, an individual; JUDY DOE NO. 6, an individual; JUDY DOE NO. 7, an individual; JUDY DOE NO. 8, an individual; and JUDY DOE NO. 9, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> WYNN RESORTS, LIMITED, a Nevada corporation; WYNN LAS VEGAS, LLC, ability company; DOES I through X; and ROE CORPORATIONS I through X, inclusive, <br><br> Defendants. | Case No. 2:19-cv-01904-JCM-VCF <br><br><br> **DEFENDANT WYNN LAS VEGAS, LLC'S:** <br><br> **(1) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; or** <br><br> **(2) IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT** |

Defendant Wynn Las Vegas, LLC, by and through its counsel, moves to dismiss Plaintiffs' JUDY DOES 1 through 9's ("Plaintiffs") First Amended Complaint (ECF No. 7) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and, in the alternative, moves for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.

Defendant's Motions are based on Rules 12(b)(6) and 12(e), the pleadings and papers on file in this case, the following memorandum of points and authorities, and any additional

1   argument of counsel that the Court may consider.

2           Dated this 5th day of November, 2019.

3                                JACKSON LEWIS P.C.

4

5                              */s/ Deverie J. Christensen*
                           DEVERIE J. CHRISTENSEN, ESQ.

6                              JOSHUA A. SLIKER, ESQ.
                           DANIEL I. AQUINO, ESQ.

7                              300 S. Fourth Street, Suite 900
                           Las Vegas, Nevada 89101

8                              *Attorneys for Defendants*

9                              *Wynn Resorts, Limited, and*
                           *Wynn Las Vegas, LLC*

10                 **MEMORANDUM OF POINTS AND AUTHORITIES**

11   **I.    INTRODUCTION**

12           The First Amended Complaint must be dismissed because Plaintiffs allege none of the

13   basic facts required to state claims for relief.  Fed. R. Civ. P. 12(b)(6).   Despite the First

14   Amended Complaint's salacious description of discrimination, sexual harassment, and retaliation

15   allegedly committed against an unidentified group of Defendant WLV employees over a period of

16   15 years, there is not a single allegation identifying how or when any of the nine individual

17   Plaintiffs were mistreated or harmed.  Instead, Plaintiffs offer general inflammatory allegations in

18   lieu of well-plead facts, preventing Defendant WLV from determining whether any individual

19   Plaintiff may have a valid claim for relief.

20           According to the First Amended Complaint, Plaintiffs are current salon employees of

21   Defendant WLV who suffered "individualized" sexual harassment from Stephen A. Wynn

22   ("Steve Wynn") at "different times, with different durations and under different (and unique)

23   circumstances and consequences for each female plaintiff," as well as discrimination and

24   retaliation due to Defendant WLV's alleged failure to prevent Steve Wynn's actions.  *See*

25   Plaintiffs' First Amended Complaint, ¶ 77, ECF No. 7.  However, the First Amended Complaint

26   fails to identify any specific facts supporting any individual Plaintiff's claims.  Plaintiffs nowhere

27   state what allegedly happened to any specific individual Plaintiff, when it allegedly happened, or

28   who did it.   Rather, Plaintiffs identify the victim of every alleged instance of misconduct

generally as "Plaintiffs" or "salon employees," engaging in collective pleading that fails to sufficiently state a claim for any individual Plaintiff.  The alleged actions of Steve Wynn led to a widely publicized scandal involving an unidentified number of potential alleged victims beyond the nine Plaintiffs.  Plaintiffs cannot state claims by alleging events affecting *other* alleged victims, much of which Plaintiffs appear to have drawn from media coverage, regulatory reports, and other public sources generally describing the allegations against Steve Wynn.

This generalized pleading unfairly prejudices Defendant WLV's ability to respond to the First Amended Complaint and mount its defense.  For example, without knowing *what* allegedly happened to any specific Plaintiff and *when* it allegedly happened, Defendant WLV cannot evaluate whether any statutes of limitation may bar Plaintiffs' claims.  This is critical, given Plaintiffs' alleged predicate events occurred as early as 2004 (15 years ago), and Plaintiffs concede the events occurred "over a period of time, but at different times, with different durations"—none of which are specified in the Amended Complaint.  *Id*., ¶¶ 77-78.  Moreover, Plaintiffs' vague allegations prevent Defendant WLV from determining whether the fact allegations (to the extent it is even possible to do so) should be admitted or denied.  Nor can Defendant investigate the accuracy of any Plaintiff's individual allegations, because the First Amended Complaint includes no such allegations.

Plaintiffs further obscure whether they have exhausted administrative remedies for their discrimination, harassment, and retaliation claims.  Doing so is mandatory.  But Plaintiffs fail to identify the dates and events giving rise to their claims, and fail to attach their right to sue notices, a basic procedural deficiency warranting dismissal of these claims.  *See Dryden v. Faen*, No. 2:14-cv-01625-GMN-NJK, 2014 U.S. Dist. LEXIS 172380, at *3-4 (D. Nev. Dec. 11, 2014). This omission prevents Defendant from assessing whether the charges are timely and ripe, which requires specific facts from the individual content of each charge. Plaintiffs' failure to carry their burden to allege administrative exhaustion is an independent reason to dismiss the Amended Complaint.

In addition to these pleading deficiencies, Plaintiffs' request to remain anonymous is overbroad.  Even if this Court shields Plaintiffs' identities from public disclosure, their identities

must be revealed to Defendant WLV, who, in turn, must be permitted to use Plaintiffs' true names in connection with necessary discovery.  Indeed, it would be impossible to question a witness as to an individual Plaintiff's alleged involvement in a given event without referring the witness to the Plaintiff's identity (pursuant to a protective order, if the Court deems necessary).  Moreover, without knowing Plaintiffs' identities as current employees, Defendant WLV cannot take steps to protect the Plaintiffs from retaliation or ensure they are aware of internal resources to address any workplace issues, including concerns of perceived retaliation.  Plaintiffs' insistence that their identities be concealed from Steve Wynn, likewise, fails to recognize the necessary litigation that must ensue from their claims.  Although WLV is sympathetic to the Plaintiffs stated concerns regarding the sensitive nature of sexual harassment related allegations, the First Amended Complaint identifies Steve Wynn as the perpetrator of the conduct for which Plaintiffs claim Defendant WLV is liable; given Plaintiffs allegations, he is either a critical witness who must be specifically questioned regarding Plaintiffs' individual claims, or a necessary party to be joined through a third-party claim and entitled to learn Plaintiffs' identities.

As Plaintiffs have failed to allege any specific facts to support their individual claims, failed to demonstrate administrative exhaustion, and failed to establish sufficient bases to withhold their identities, dismissal of the First Amended Complaint is warranted.   In the alternative, Plaintiffs must be required to provide a more definite statement with specific allegations supporting their individual claims, and disclose their identities to enable full and fair discovery in this case.

## II.     FACTUAL BACKGROUND[1]

### A.      Factual Allegations.

The nine Plaintiffs were hired by Defendant WLV between 2004 and 2008.  *See* Plaintiffs' First Amended Complaint, ¶ 71, ECF No. 7.  Aside from identifying the year that each of the Judy Doe Plaintiffs from No. 1 to No. 9 commenced employment, the Amended Complaint fails to allege any facts specific to each Plaintiff.  Indeed, despite alleging that each Plaintiff suffered "individualized" harm (¶ 77), the remaining allegations in the First Amended Complaint are only alleged generally and collectively, without identifying any factual details that might distinguish any individual Plaintiff's claim.  *See* Plaintiffs' First Amended Complaint.

According to the First Amended Complaint, Plaintiffs currently work in Defendant WLV's salons (either the Wynn Salon or the Encore Salon) as either manicurists or makeup artists.  *Id*., ¶ 73.  Plaintiffs collectively allege, during their employment which began as early as 2004, they "saw, surmised, heard about and suspected misconduct by Steve Wynn" happening to other employees, including unwelcome sexual advances, exposure of genitals, solicitation of sex, sexual assault, and rape.  *Id*., ¶ 75.  The Plaintiffs do not specifically allege they were victims of such severe conduct, only alleging they suffered "individualized acts of sexual harassment and personal degradation by Steve Wynn, over a period of time, but at different times, with different durations and under different (and unique) circumstances and consequences for each female plaintiff."  *Id*., ¶ 77.  The Plaintiffs further collectively allege they had personal interactions with Steve Wynn at unidentified times from 2004 through 2018, and feared losing their jobs, or for their safety, at unidentified periods during these years.  *Id*., ¶¶ 78-80.

---

[1] Defendant does not admit any of the allegations in the First Amended Complaint, nor does Defendant admit any wrongdoing.  Defendant intends to vigorously defend against all claims asserted against it in the event this matter survives this Motion to Dismiss.  However, for the purposes of this motion only, Defendant accepts as true the allegations set forth in the First Amended Complaint.  *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1094 (9th Cir. 2010).  Therefore, the factual contentions set forth herein are drawn exclusively from Plaintiff's First Amended Complaint.  Defendant reserves its rights to dispute Plaintiff's allegations in the event that the motion is not granted, and deny and dispute Plaintiff's allegations for all other purposes.

The First Amended Complaint includes no further facts regarding any individual Plaintiff's claim. Plaintiffs assert that further facts supporting their claims are included in separate documents not before the Court, namely, their administrative charges filed with the Equal Employment Opportunity Commission ("EEOC") at some point after March 2018. *Id.*, ¶¶ 20, 78.

Separate from the facts set forth above submitted as "Specific Allegations Relating to Each Judy Doe Plaintiff" (*Id.*, ¶¶ 71-89), the First Amended Complaint includes generalized allegations of conduct by Steve Wynn and Defendant WLV, some of which involved Plaintiffs. *Id.*, ¶¶ 25-70. Plaintiffs allege Steve Wynn personally selected the board members and executive management for companies he controlled, who in turn enabled his pattern of sexual harassment. *Id.*, ¶ 26. Plaintiffs allege that, after media outlets began investigating Steve Wynn's activities in late 2017 and early 2018, Defendant WLV's management (including Wynn Las Vegas President Maurice Wooden and Vice President of Human Resources Troy Mitchum) convened a meeting with salon employees on January 17, 2018 emphasizing that no one should talk to reporters. *Id.*, ¶¶ 27-31. Further, in January 2018 when media outlets began publishing reports regarding Steve Wynn's activities, Mr. Wooden expressed support for Steve Wynn via a memo posted in the workplace, allegedly designed to stifle employees from raising complaints. *Id.*, ¶¶ 32-34.

Plaintiffs next allege Steve Wynn personally engaged in interactions that intimidated salon employees, starting with a mandatory meeting held on January 31, 2018 wherein all salon employees (including Plaintiffs) were gathered and asked by Steve Wynn whether they had ever felt abused or assaulted by him. *Id.*, ¶¶ 36-38. Steve Wynn further implied the employees were not welcome to speak to the media, which intimidated many employees. *Id.* Thereafter, on February 1, 2018, Steve Wynn appeared personally at the salon with a camera crew for a birthday celebration of a salon employee, where he made further intimidating comments and conveyed that he was still in control of Defendant WLV. *Id.*, ¶¶ 40-41. Further, an unidentified number of Plaintiffs were asked to state on camera that Steve Wynn had never assaulted or abused them, a request with which some (unidentified) Plaintiffs complied. *Id.*, ¶ 41.

Plaintiffs allege further events caused them to feel uncomfortable or unprotected from potential retaliation, including a February 6, 2018 statement by the Wynn Resorts Board of Directors regarding Steve Wynn's resignation (¶¶ 43-44), mandatory meetings with Defendant WLV's in-house and investigatory counsel in February and March of 2018 that were "poorly perceived (¶¶ 46-48), information-gathering communications and meetings involving Matt Maddox (Wynn Resorts CEO) or Patricia Mulroy (Wynn Resorts Board member) (¶¶ 49-51, 55), a defamation lawsuit Steve Wynn filed against the former Salon Director that Defendant WLV allegedly "did nothing to distance[] themselves from" (¶¶ 52-53), and lawsuits Steve Wynn filed against the gaming commissions investigating his activities (¶ 54).

Lastly, Plaintiffs describe the investigations and findings of the Nevada Gaming Control Board and the Massachusetts Gaming Commission, which found mishandling of complaints regarding Steve Wynn's actions by executives and management, resulting in large fines against Wynn Resorts.  *Id*., ¶¶ 56-686.  The First Amended Complaint does not allege that these investigations and findings specifically discuss any of the Plaintiffs or support their individual claims.  Plaintiffs allege that unnamed executives and Board members, at unidentified times, have continued to inquire about salon employees' experiences.  *Id*., ¶ 69.

**B.**     **Claims for Relief.**

On September 30, 2019, Plaintiffs filed their initial Complaint in Clark County District Court and served the Summons and Complaint on October 8, 2019.  Defendants removed to federal court on October 29, 2019.  ECF No. 1.  On November 5, 2019, Defendants filed an Amended Notice of Removal after accepting service of Plaintiffs' First Amended Complaint, effective November 4, 2019, which First Amended Complaint was filed in state court on October 24, 2019.  ECF No. 7.

Plaintiffs First Amended Complaint alleges five claims for relief.  Specifically, in their First Claim, Plaintiffs allege discrimination and harassment based on sex in violation of 42 U.S.C. § 2000e *et seq*. and NRS 613.330 *et. seq*., including a hostile work environment.  *Id*., ¶¶ 90-109. Plaintiffs allege they were subjected to "verbal or physical conduct" based on their gender (¶ 96), but do not identify specific instances of discrimination or harassment for each Plaintiff, nor do

they identify which Plaintiffs were subjected to verbal conduct, physical conduct, or both.  In their Second Claim, Plaintiffs allege retaliation pursuant to 42 U.S.C. § 2000e *et. seq.* and NRS 613.340.  *Id*., ¶¶ 110-129.  Plaintiffs allege that they were "retaliated against as a whole," and do not allege any individualized facts for each Plaintiff.  *Id*., ¶ 115.

According to Plaintiffs, with respect to their First and Second Claims, they exhausted their administrative remedies by filing charges with EEOC and Nevada Equal Rights Commission ("NERC"), beginning in March 2018.  *Id*., ¶¶ 19-20.  They allege that all Plaintiffs' charges included claims for discrimination, harassment, and retaliation.  *Id*., ¶ 20.  Plaintiffs do not attach any of their administrative charges to the Amended Complaint.  Plaintiffs state that Defendant WLV is in possession of each of Plaintiffs' administrative charges, allegedly provided to Defendant WLV by the EEOC over a period of several months in "spring and summer of 2018." *Id*., ¶ 21.   However, Plaintiffs admit their administrative charges were not the only charges Defendant received in that time period.  *Id*.  Plaintiffs allege they each received a Notice of Right to Sue from the EEOC on or about July 5, 2019, none of which are attached to the Amended Complaint.  *Id*., ¶ 23.

Plaintiffs' Third Claim for Negligent Hiring, Training, Supervision, and Retention refers to "executives and human resources" personnel that Defendant WLV allegedly failed to hire, supervise, and retain.  *Id*., ¶ 132.  However, there are no allegations identifying the names or any further basic details regarding these employees.

Plaintiffs' Fourth Claim for Intentional Infliction of Emotional Distress states that various events alleged in the Amended Complaint constituted extreme and outrageous conduct, including allowing and supporting Steve Wynn's actions (¶¶ 144-145), conducting meetings with and interviewing salon employees (¶¶ 146, 148), and allowing Steve Wynn to personally intimidate salon employees (¶ 147).  Plaintiffs identify the individuals at whom these events were directed as either "many employees" or "Salon employees" without any specific facts as to each Plaintiff.  *Id*., ¶¶ 144, 147-148.

Plaintiffs' Fifth Claim for Invasion of Privacy alleges that Plaintiffs' collective interest in privacy was violated by allowing Steve Wynn to access their contact information and work

schedules, requiring salon employees to attend meetings, and requiring "some employees" to provide on-camera interviews. *Id.*, ¶¶ 153-167. Plaintiffs further speculate they could have been the subject of secret surveillance in 2018. *Id.*, ¶162.

## III.   STANDARD OF REVIEW

### A.   General Pleading Standards.

A court may dismiss a complaint for failure to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although Rule 8(a)(2) requires that a complaint only provide a "short and plain statement of the claim showing that the pleader is entitled to relief," the U.S. Supreme Court established that the plain statement must still contain enough "factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007) (citing *Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, dismissal is warranted when the allegations state a claim that is not a "cognizable theory of law" or when there are insufficient facts to satisfy the pleading standard under Rule 8(a). *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

The purpose of these requirements is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957). In practical terms, the requirements of Rule 8 ensure that a defendant will be able to respond to the allegations against him. *Edwards v. N. Am. Rockwell Corp.*, 291 F. Supp. 199 (C.D. Cal 1968) ("Rule 8(a)(2) envisions the presentation of factual allegations of sufficient clarity and certainty to enable defendants to determine the basis of plaintiff's claim and to formulate a responsive pleading."). They also help frame the lawsuit to guide case management and discovery. *McHenry v. Renne*, 84 F.3d 1172, 1178 (9th Cir. 1996).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss based on a failure to properly plead a cause of action. First, a district court must accept as true all well-pled *factual* allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. 556 U.S. at 680. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 679. Where a complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has only "alleged—but it has not shown— that the pleader is entitled to relief." *Id*. at 679 (internal quotation marks omitted).

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). For example, requiring a more definite statement is appropriate where a complaint fails to plead each aggrieved persons' claims. *See EEOC v. Hotspur Resorts Nev., Ltd.*, No. 2:10-cv-2265-RCJ-GWF, 2011 U.S. Dist. LEXIS 115325, at *12-14 (D. Nev. Oct. 3, 2011).

### B.    Impermissible Collective Pleading.

Where multiple plaintiffs bring individual claims in one lawsuit, the complaint must specify *individualized* acts giving rise to each plaintiffs' dispute in order to comply with Rule 8. *Bautista v. L.A. Cty.*, 216 F.3d 837 (9th Cir. 2000). For example, in *Bautista*, a group of plaintiffs who had been hired and terminated at different times for different reasons sought to plead their discrimination claims collectively, without specifying individualized acts that gave rise to the dispute. *Id*. at 840. The Court stated that while the complaint contained "allegations of discriminatory policies or practices imposed by [the defendant], what it seeks is individual relief for each of the plaintiffs. Each plaintiff's right to relief therefore depends upon proof of the operative facts giving rise to an enforceable right in favor of that plaintiff." *Id*. at 840. Plainly, "[t]o comply with Rule 8 **each plaintiff** must plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Id*. at 840 (emphasis added). Accordingly, the Ninth Circuit held that dismissal without prejudice was proper, and a more specific pleading was necessary to satisfy the relevant pleading requirements. *Id*. at 840-841. Ultimately, the Ninth Circuit's holding was necessary to preserve efficiency and fairness, as "unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer

justice." *Id.* at 841 (citing *Anderson v. District Bd. of Trustees*, 77 F.3d 364, 367 (11th Cir. 1996)).

Many courts within the Ninth Circuit and other jurisdictions have dismissed complaints that, like the Amended Complaint here, rely on group or collective pleading rather than specifying facts as to each individual plaintiff.  *See, e.g.*, *Adams v. BRG Sports, Inc.*, No. 17-cv-00457-BLF, 2017 U.S. Dist. LEXIS 193642, at *2 (N.D. Cal. Nov. 21, 2017) (football players' complaint against helmet company, while "full of information about the history of concussions and Defendants' involvement in the manufacturing, sales and marketing of football helmets *generally*," consisted of claims "identically alleged by each Player," and thus court found there was "not enough information in the Complaint regarding *each* Player's use of the products in question during what time period, or the nature of his injuries that would be required in order to put Defendants on notice of the allegations against them") (emphasis added); *Erone Corp. v. Skouras Theatres Corp.*, 19 F.R.D. 299, 300 (S.D.N.Y. 1956) (directing filing of an amended complaint stating the claims of each plaintiff in a separate count, because, among other reasons, "there may be defenses available to the defendants which are applicable to one or more plaintiffs but not to the others"); *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 672 (W.D. Tex. 2013) (allowing two plaintiffs to plead their individual claims collectively only where complaint had not "impeded [defendant's] ability to assess the parties' individual claims" and it was "clear, for example, that the [plaintiff's] failure to plead separately has not prevented [defendant] from asserting party-specific defenses").

## IV.   LEGAL ARGUMENT

### A.   Plaintiffs' First Claim for Sexual Harassment and Second Claim for Retaliation Fail to State A Claim Upon Which Relief May Be Granted.

#### 1.   Plaintiffs Fail to Plead Any Specific Facts Regarding Discrimination, Harassment, and Retaliation.

Plaintiffs' First Amended Complaint contains no individualized allegations regarding their claims for discrimination, harassment, or retaliation.   All of Plaintiffs' allegations supporting these claims are made collectively.   *See* Plaintiffs' First Amended Complaint*, ¶¶ 91-108.  For example, Plaintiffs generally allege they were subjected to "verbal or physical conduct" based on

their gender without identifying any specific instances of discrimination or harassment for each particular Plaintiff. *Id*., ¶ 96. Plaintiffs further allege they were "retaliated against as a whole," and do not specifically allege any facts individual to each Plaintiff. *Id*., ¶ 115.

Likewise, Plaintiffs' citation to the investigative reports and findings of state gaming commissions merely states what happened to *others*, without referencing any individual Plaintiff. It does not appear from the First Amended Complaint that any individual Plaintiff was named or included in those reports. Indeed, Plaintiffs exclude themselves from the most repugnant allegations in the First Amended Complaint, such as unwelcome sexual advances, exposure of genitals, solicitation of sex, sexual assault, and rape. *Id*., ¶¶ 75, 77. Plaintiffs' reliance on strongly-worded reports and the alleged notorious actions of Steve Wynn do not change the fact that Plaintiffs offer no facts demonstrating how any individual Plaintiff was harmed.

Indeed, Plaintiffs *admit* the First Amended Complaint omits the individualized facts underlying their claims. They state they are "willing to provide" such information "[i]f the Defendant-employers seek dismissal of this suit . . . or challenge the legal sufficiency of the factual assertions." *Id*., ¶ 89. Defendant is unaware of any case law permitting a plaintiff to file an insufficient complaint while reserving the right to correct deficiencies if a motion to dismiss is filed. In fact, case law states the opposite, as "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Korhonen v. Sentinel Ins., Ltd.*, 2014 U.S. Dist. LEXIS 38321, at *10-11 (D. Nev. 2014) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Rather, dismissal is warranted where the complaint itself is not well-pled and contains facts insufficient to satisfy federal pleading standards. *Navarro*, 250 F.3d at 732; *Balistreri*, 901 F.2d at 699.

Plaintiffs' collectively pled allegations fall short of these requirements. Plaintiffs allege they each suffered "individualized" harassment at "different times, with different durations and under different (and unique) circumstances and consequences for each female plaintiff," but do not specify any of the "times," "durations," "circumstances," or "consequences" required to state claims. *Id*., ¶ 77. These are the exact circumstances the Ninth Circuit contemplated in requiring that each individual plaintiff sufficiently plead their claim. *Bautista*, 216 F.3d at 840.

Indeed, without these basic facts, Defendant WLV cannot assess basic defenses, such as the timeliness of the First Amended Complaint. Pursuant to 42 U.S.C. § 2000e-5(e), the limitations period for filing a charge of discrimination under Title VII is 300 days after the unlawful employment practice. "A claim is time barred if it is not filed within [this] limit" and recovery is precluded "for discrete acts of discrimination or retaliation that occur outside the statutory time period." *AMTRAK v. Morgan*, 536 U.S. 101, 105 (2002). From the face of the First Amended Complaint, Defendant is unable to assess whether any individual Plaintiff filed their administrative charge within 300 days of any alleged discrimination. This is a critical inquiry given, again, that Plaintiffs allege they each suffered harassment at "different times, with different durations." Plaintiffs' First Amended Complaint, ¶ 77. As the First Amended Complaint includes claims based on conduct occurring *15 years ago*, the absence of information sufficient to assess timeliness of claims is an inexcusable pleading deficiency. *Id.*, ¶ 78 (alleging predicate events occurred in 2004 "for some" of the Plaintiffs). Likewise, the lack of individualized pleading precludes Defendant from evaluating the strength of any individual Plaintiffs' claims for discrimination, harassment, or retaliation. Under these circumstances, the claims must be dismissed. *See Equal Emp't Opportunities Comm'n v. La Rana Haw., LLC*, 888 F. Supp. 2d 1019, 1046-47 (D. Haw. 2012) (dismissing complaint that "fail[ed] to identify dates of the alleged harassment and discrimination," particularly where "timeline of events may prove significant" to defenses); *McDonald v. S.F. Unified Sch. Dist.*, No. C 07-4249 PJH, 2008 U.S. Dist. LEXIS 8891, at **12, 17 (N.D. Cal. Jan. 23, 2008) (agreeing dismissal of discrimination claims was appropriate where plaintiff failed to "state when [acts] occurred or provide any other details," and "fail[ed] to put [defendant] on notice of the claims being asserted against it").

As Plaintiffs' collective allegations fail to satisfy the Ninth Circuit's requirement of individualized pleading for multiple plaintiffs, their claims for discrimination, harassment, and retaliation must be dismissed.

2.   <u>Plaintiffs' Failure to Reveal Their Identities Precludes Defendant From Adequately Defending Itself or Responding to the Amended Complaint.</u>

The pleading deficiencies in Plaintiffs' First Amended Complaint are exacerbated by the lack of information regarding Plaintiffs' identities.  The "use of fictitious names runs afoul of the public's common law right of access to judicial proceedings and Rule 10(a)'s command that the title of every complaint 'include the names of all the parties.'"  *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000) (internal citations omitted).  Litigants may preserve their anonymity in judicial proceedings only where their "need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity."  *Id.* at 1068.  As set forth above, the prejudice to Defendant if Plaintiffs remain completely anonymous to Defendant and their counsel, even at this early stage, is enormous.  Without knowing Plaintiffs' identities, Defendant cannot even begin to perform any preliminary investigative tasks to defend itself, let alone prepare an appropriate answer that addresses the nine unidentified Plaintiffs' claims.  Should this action proceed, Defendant must be apprised of Plaintiffs' identities, as well as individualized allegations regarding each of their claims, in order to adequately defend itself.

As the First Amended Complaint states Plaintiffs are Defendant WLV's current employees concerned about retaliation in the workplace, Defendant also needs to know their identities to ensure they are protected against retaliation in the workplace, to offer resources internally should they believe during this litigation that any work-related actions or conduct are retaliatory, and to ensure Plaintiffs are able to bring any concerns or issues to Defendant WLV's attention in their current workplace to take appropriate internal action.  Aside from these workplace concerns, Plaintiffs' First Amended Complaint cites several further reasons for maintaining anonymity, which Defendant will address below.

a.   <u>Defendant WLV is Agreeable to a Protective Order Precluding Disclosure of the Plaintiffs' Names/Identities to the Media and in Public Court Filings, With Authorized Disclosure for Discovery Purposes and Filings Under Seal.</u>

Plaintiffs raise privacy concerns related to *public disclosure* of their identities.  Defendant WLV is amenable to necessary and reasonable steps to address this stated concern regarding media and public disclosure, while balancing the need for disclosure, as authorized and protected

by Court Order, to permit WLV to conduct discovery and defend against Plaintiffs' claims. Defendant WLV will agree <u>not</u> to identify Plaintiffs by name to the media, and will refer to each Plaintiff using only their fictitious name (e.g., "Judy Doe 1", etc.) in *public* court filings, pursuant to a protective order, so long as Defendant WLV is granted permission of the Court to make court filings under seal when it is necessary to include the individual names of the Plaintiffs. In addition, in order to adequately defend itself, Defendant must be allowed to use Plaintiffs' real names for discovery purposes, including identifying Plaintiffs to necessary third-party witnesses and serving subpoenas for records during discovery, as well as identifying Plaintiffs by name in depositions in order to gather facts and information related to each Plaintiff that are necessary to the prosecution of Plaintiffs' claims and Defendant WLV's defenses. *See, e.g.*, *Doe v. Rose*, No. CV-15-07503-MWF-JC, 2016 U.S. Dist. LEXIS 188930, at *7-8 (C.D. Cal. June 17, 2016) (where anonymous plaintiff feared publicity and public retaliation due to defendant's high profile status as professional basketball player, court allowed defendant "to use Plaintiff's real name insofar as such use is necessary to obtain discovery from third-party witnesses," while precluding defendant from revealing plaintiff's identity "outside the discovery process"); *Jessica K. v. Eureka City Sch. Dist.*, No. C 13-05854 WHA, 2014 U.S. Dist. LEXIS 22443, at *17 (N.D. Cal. Feb. 21, 2014) (denying request to proceed anonymously, stating "to defend themselves, defendants must in their investigations and depositions ask point blank whether the alleged harasser did the accused things to specific victims, naming names" as "do[ing] otherwise would skirt the questions that need to be asked"); *Doe v. John F Kennedy Univ.*, No. C-13-01137 DMR, 2013 U.S. Dist. LEXIS 122050, at *14 (N.D. Cal. Aug. 27, 2013) (identifying "significant barriers" for defense if plaintiff were allowed to proceed with complete anonymity, for example, "it is unclear how Defendants would interview potential witnesses to gather facts or to assess Plaintiff's credibility if they could not disclose her name"); *Balance Studio, Inc. v. Cybernet Entm't*, LLC, 204 F. Supp. 3d 1098, 1102 (N.D. Cal. 2016) (court has authority to "manage pretrial proceedings to shape discovery and avoid impediments that anonymity might raise, including issuing limited protective orders allowing [plaintiff's] name to be revealed to significant

third parties, in a way that protects [plaintiff's] interests sufficiently, without prejudicing the opposing party's ability to litigate the case") (internal quotations omitted).

> b.   Plaintiffs' Claims and Allegations Make It Necessary For Defendant to Disclose Their Names/Identities in Discovery to Witnesses And Parties.

Plaintiffs seek to avoid having Steve Wynn learn of their identities. Although WLV is sympathetic to the Plaintiffs stated concerns regarding the sensitive nature of sexual harassment related allegations, the nature of Plaintiffs' allegations and claim makes this result likely unavoidable. The central events alleged in the First Amended Complaint are personal interactions between Plaintiffs and Steve Wynn, as well as Steve Wynn's alleged control and influence over Defendant WLV and its management. Thus, Steve Wynn is likely a necessary party to this action who Defendant WLV may join through a third-party claim. Steve Wynn, as a party to the action or even as a necessary third party witness as the individual accused of the alleged harassing and retaliatory conduct, would have the right and need to learn Plaintiffs' identities, for example, at the time each Plaintiff is deposed during discovery.[2] Defendant WLV does not represent and does not defend Steve Wynn, whose business relationship with WLV ended in February 2018. Nevertheless, WLV is obligated to defend against the overbroad claims asserted by Plaintiffs in this case. Plaintiffs' claims and allegations render it necessary for WLV to conduct discovery into the alleged interactions between Plaintiffs and Steve Wynn, and disclosure of Plaintiffs' identities to Steve Wynn is inevitable. Plaintiffs, who are represented by experienced and capable counsel, cannot have been unaware of this outcome, and presumably filed suit with full knowledge of the likelihood Steve Wynn would learn of their identities. If Plaintiffs' wanted to pursue their allegations against Steve Wynn but did not want their identities disclosed to him, Plaintiffs could have used other avenues than filing this lawsuit. For example, Plaintiffs could have submitted confidential complaints to the Nevada Gaming Control Board or Massachusetts Gaming Commission, whose complaint and investigations processes are clearly known to

---

[2] Even if Steve Wynn were not a necessary party, he would certainly be a critical third-party witness to be deposed in this action. In order to adequately question him regarding each of Plaintiffs' claims, counsel for both parties would need to reference Plaintiffs' identities while posing questions to Mr. Wynn.

Plaintiffs given their repeated references to the Nevada Gaming Control Board's and Massachusetts Gaming Commission's investigations and reports in the Amended Complaint. Because Plaintiffs choose to file a public suit against Defendant WLV in the courts, Defendant must be allowed to defend against their claims and conduct all necessary discovery.

Plaintiffs also state they fear being sued by Steve Wynn for defamation, given that he has, according to the First Amended Complaint, filed a defamation lawsuit against a former Salon Director who spoke publicly about Steve Wynn's actions. *See* Plaintiffs' First Amended Complaint, ¶ 52. Plaintiffs' concern is based upon a single past case; neither Plaintiffs nor Defendant WLV can speculate how likely Steve Wynn may be to file a subsequent suit on that basis alone. Further, given that Plaintiffs have filed this current action and are represented by counsel, they are presumably prepared to proceed with litigation, and to support the truth of any allegations made. Moreover, any allegations made by Plaintiffs in the course of this litigation are absolutely privileged and could not form the basis of a defamation claim. *See Jacobs v. Adelson*, 130 Nev., Adv. Op. 44, 325 P.3d 1282, 1285 (2014) ("Nevada has long recognized the existence of an absolute privilege for defamatory statements made during the course of judicial and quasi-judicial proceedings"). Thus, while Defendant recognizes Plaintiffs' general desire to avoid further litigation, Defendant WLV submits that speculation regarding a separate individual's right to bring a legal claim does not diminish Defendant WLV's need for knowledge of Plaintiffs' identities to have the opportunity to fully and fairly defend itself.

Further, in the event Steve Wynn is joined in this action as a party, he will be subject to any protective order issued by this Court. While Defendant WLV is agreeable to taking all reasonable steps set forth above to protect Plaintiffs from retaliation in the workplace and to shield their identities from disclosure to the media and in public court filings, Defendants believe that it will be impossible for this action to proceed without Steve Wynn learning of Plaintiffs' identities given the nature of their claims.

       3.    <u>Plaintiffs' Claims Should Be Dismissed for the Independent Reason That Plaintiffs Fail to Attach Their Right to Sue Notices or Sufficiently Plead Exhaustion of Remedies.</u>

Plaintiffs fail to sufficiently plead exhaustion of administrative remedies, which serves as

an additional and separate basis to dismiss their claims for discrimination, harassment, and retaliation. To establish subject matter jurisdiction over a Title VII[3] claim, a plaintiff must first exhaust their administrative remedies. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002); 42 U.S.C. § 2000e-5(f)(1). Under Title VII, a claimant must exhaust their administrative remedies by filing a timely charge with the EEOC. 42 U.S.C. § 2000e–5(b). If the EEOC elects not to sue, the EEOC will issue the claimant a right to sue letter. 42 U.S.C. § 2000e–5(f)(l). The claimant "must then file his or her complaint within 90 days after receipt of a right to sue letter from the EEOC ***and attach the letter to his or her complaint***." *Dryden*, 2014 U.S. Dist. LEXIS 172380, at *3-4 (emphasis added) (citing *Johnson v. Lucky Stores, Inc.*, 928 F.2d 1137 (9th Cir. 1991). Failure to do so results in automatic dismissal. *See Nehara v. California*, No. 1:10-CV-00491-OWW-SMS, 2010 U.S. Dist. LEXIS 71789, at *14 (E.D. Cal. July 14, 2010) ("Plaintiff, however, fails to attach his EEOC 'right-to-sue' letter, which is a prerequisite to filing a suit under Title VII"); *Ungureanu v. Teichert*, No. CIV S-11-0316 LKK GGH PS, 2011 U.S. Dist. LEXIS 118507, at *27 (E.D. Cal. Oct. 12, 2011) (Title VII claims dismissed where plaintiff "failed to attach a right-to-sue letter to his complaint"); *Hildebrand v. Allegheny Cty.*, No. 12cv1122, 2012 U.S. Dist. LEXIS 173954, at *6 (W.D. Pa. Dec. 7, 2012) ("because Plaintiff failed to attach his Right to Sue to the Complaint, this Court is constrained to concur with [defendant] that the Complaint falls short of providing the facts to establish whether he has adequately exhausted his administrative remedies").

---

[3] A claim for unlawful discrimination under NRS § 613.330 is "assessed under the applicable federal anti-discrimination law." *Coburn v. PN II, Inc.*, 372 F. App'x 796, 798 (9th Cir. 2010) (citing *Apeceche v. White Pine County*, 96 Nev. 723, 615 P.2d 975, 977-78 (Nev. 1980)). As with Title VII, Nevada's anti-discrimination laws require plaintiffs to exhaust administrative remedies before filing suit. NRS § 613.420; *see also Pope v. Motel 6*, 121 Nev. 307, 114 P.3d 277, 280 (Nev. 2005). However, suit must be filed within 180 days of the allegedly unlawful act (with time for filing tolled during the exhaustion period). NRS § 613.430. "The Nevada Equal Rights Commission ("NERC") and the federal EEOC operate under a work-sharing agreement such that a right-to-sue letter from the EEOC is sufficient to pursue a claim under Nevada law." *Narayanan v. Nev. ex rel. Bd. of Regents of the Nev. Sys. of Higher Ed.*, 3:11-cv-00744-LRH-VPC, 2013 U.S. Dist. LEXIS 76680, at *8-9 (May 13, 2013).

While Plaintiffs allege the EEOC issued each Plaintiff a right to sue notice received on July 5, 2019, and that their initial Complaint was filed within 90 days on September 30, 2019, these allegations are no substitute for the right-to-sue letters themselves.  Without the letters, Defendant is unable to perform the basic inquiry of whether the claims raised in this action have been properly administratively exhausted.  The administrative charge requirement serves the important purpose of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision.  *B.K.B.*, 276 F.3d at 1099.  "Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role as well as deprive the charged party of notice of the charge . . ."  *Id.*  Discriminatory allegations that are not made on a timely basis are "merely an unfortunate event in history which has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).  "The crucial element of a charge is the factual statement contained therein." *B.K.B.,* 276 F.3d at 1100.  Thus, in the absence of the right to sue notices, neither Defendant nor the Court can assess whether the specific factual content of any individual Plaintiff's charge is sufficient to exhaust administrative charges for any of their individual claims for discrimination, harassment, or retaliation.

For these reasons, Plaintiffs' failure to attach their right to sue notices to the First Amended Complaint warrants dismissal of their claims for discrimination, harassment, and retaliation.

**B.**    **Plaintiffs' Third Claim for Relief for Negligent Hiring, Training, Supervision, and Retention Fails to State A Claim Upon Which Relief May Be Granted.**

"The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position," which is breached when "it hires an employee even though the employer knew, or should have known, of that employee's dangerous propensities."  *Hall v. SSF, Inc.*, 112 Nev. 1384, 1392, 930 P.2d 94, 98 (1996) (*citing Burnett v. C.B.A. Security Service*, 107 Nev. 787, 789, 820 P.2d 750, 752 (1991); *Kelley v. Baker Protective Services, Inc.*, 198 Ga. App. 378, 401 S.E.2d 585, 586 (Ga. Ct. App. 1991)).  This duty extends to the "training, supervision, and

retention of his or her employees to make sure that the employees are fit for their positions." *Id.* (citing 27 Am. Jur. 2d Employment Relationship §§ 475-76 (1996)).

As with their other claims, Plaintiffs fail to plead their negligent hiring claim with the requisite specificity. Instead, Plaintiffs allege this claim generally and collectively, asserting that Defendant breached its duty to "Salon employees (including Plaintiffs)." Plaintiffs' First Amended Complaint, ¶ 134. There are no allegations of conduct or harm related to hiring, training, supervision, or retention that are specific to any individual Plaintiff. *Id.*, ¶¶ 131-142. The First Amended Complaint refers to "executives and human resources" personnel that Defendant WLV allegedly failed to hire, train, supervise, and retain. *Id.*, ¶ 132. However, there are no allegations identifying the names or any further basic details about who these employees are or were, and how Defendant WLV caused harm to any specific Plaintiff.

Further, there are no allegations of *when* any employees were negligently hired, trained, supervised, or retained, which prevents Defendant from assessing whether any such claims may be time-barred. Claims for negligent hiring, training, supervision, and retention are subject to a two-year statute of limitations. NRS 11.190(4)(e). Given, again, that Plaintiffs allege predicate events occurred 15 years ago, Defendant WLV cannot evaluate necessary defenses in the absence of this information. *Id.*, ¶ 78 (alleging predicate events occurred in 2004 "for some" of the Plaintiffs). *See Gardner v. Michigan*, No. 14-cv-14134, 2017 U.S. Dist. LEXIS 26916, at *11 (E.D. Mich. Feb. 9, 2017) (dismissing complaint that "fail[ed] to provide any dates or a sense of chronology relative to any of the allegations, which makes it impossible for Defendants to assess appropriate defenses such as the statute of limitations"). Accordingly, Plaintiffs' claims for negligent hiring, training, supervision, and retention must be dismissed.

**C.    Plaintiffs' Fourth Claim for Relief for Intentional Infliction of Emotional Distress ("IIED") Fails to State A Claim Upon Which Relief May Be Granted.**

The Nevada Supreme Court has made clear that to state a claim for IIED, Plaintiff must allege *facts* showing: (1) defendant's conduct was extreme and outrageous; (2) defendant either intended or recklessly disregarded the causing of emotional distress; (3) plaintiff actually suffered severe or extreme emotional distress; and, (4) defendant's conduct actually or proximately caused

the distress. *Star v. Rabello*, 97 Nev. 124, 125, 625 P.3d 90, 92 (1981); *Nelson v. Nelson*, 99 Nev. 548, 555, 665 P.2d 1141, 1145 (1983). In addition to these individualized requirements, a "plaintiff is required to demonstrate that he or she has suffered some physical manifestation of emotional distress in order to support an award of emotional damages." *Russo v. Clearwire*, 2:12-CV-01831-PMP-VCF, 2013 U.S. Dist. LEXIS 61440, at *4 (D. Nev. Apr. 30, 2013) (citation omitted).

Plaintiffs allege none of these individualized facts. Plaintiffs allege that allowing and supporting Steve Wynn's actions (¶¶ 144-145), conducting meetings with and interviewing Salon employees (¶¶ 146, 148), and allowing Steve Wynn to personally intimidate Salon employees (¶ 147) all constituted extreme and outrageous conduct. However, Plaintiffs identify the individuals at whom these events were directed as "many employees" or "Salon employees." *Id.*, ¶¶ 144, 147-148. There are no allegations of conduct or harm specific to any individual Plaintiff, which are required elements of an IIED claim. *Id.*, ¶¶ 143-152. Likewise, there are no allegations stating *when* any of these events may have occurred for individual Plaintiffs, which are necessary to determine whether such claims were filed within the relevant two-year statute of limitations for IIED claims. NRS 11.190(4)(e). Accordingly, Plaintiffs' IIED claims are insufficiently pled and must be dismissed.

### D. Plaintiffs' Fifth Claim for Relief for Invasion of Privacy Fails to State A Claim Upon Which Relief May Be Granted.

Nevada recognizes the tort of invasion of privacy for unreasonable intrusion upon the seclusion of another. *PETA v. Bobby Berosini, Ltd.*, 111 Nev. 615, 895 P.2d 1269 (1995) (overruled on other grounds by *City of Las Vegas Downtown Redev. Agency v. Hecht*, 113 Nev. 644, 650, 940 P.2d 134, 138 (1997)). To recover for the tort of intrusion, a plaintiff must prove: (1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person. *PETA*, 895 P.2d at 1279. "In order to have an interest in seclusion or solitude which the law will protect, a plaintiff must show that he or she had an actual expectation of seclusion or solitude and that the expectation was objectively

1   reasonable." *Id.* (citing *M & R Investment Co. v. Mandarino*, 103 Nev. 711, 748 P.2d 488, 493
2   (1987)).

3          Plaintiffs fail to allege any specific interaction in which any Plaintiff (a) had an
4   objectively reasonable expectation of seclusion, (b) which was intruded, (c) involving highly
5   offensive conduct.  *See Flowers v. Carville*, 112 F. Supp. 2d 1202, 1213 (D. Nev. 2000)
6   (complaint alleging privacy tort under Nevada state law, among other deficiencies, did not
7   identify "when or where" private facts were disclosed, rendering allegations "impermissibly
8   vague and inadequate to support a claim for relief") (*aff'd in part, rev'd in part on other grounds,*
9   310 F.3d 1118, 1126 (9th Cir. 2002).  Plaintiffs allege their *collective* interest in privacy was
10  violated by allowing Steve Wynn to access their contact information and work schedules,
11  requiring Salon employees to attend meetings, and requiring "some employees" to provide on-
12  camera interviews.  *Id.*, ¶¶ 154-157.  Plaintiffs allege that some interviews involved only "certain
13  Salon employees."  *Id.*, ¶ 47.  Absent from their allegations is any conduct or harm specific to any
14  individual Plaintiff.  *Id.*, ¶¶ 154-167.

15         Further, though Plaintiffs refer to a general expectation of privacy "in their workplace,"
16  they allege no facts suggesting they had an actual and reasonable expectation of privacy in any
17  specific interaction.  *Id.*, ¶¶ 154-167.  For example, presumably Plaintiffs are aware that they may
18  be recorded by cameras for safety and security purposes any time they enter a hotel or casino
19  property. *Id.*, ¶ 159; *cf M & R Inv. Co. v. Mandarino*, 103 Nev. 711, 719 (1987) (card counter had
20  no reasonable expectation of privacy on casino floor).  The interactions Plaintiffs allege involved
21  large "meetings" and many other unspecified "employees."  *See, e.g.*, *id.*, ¶ 36 (alleging that
22  "Steve Wynn asked the 40+ Salon employees assembled to raise their hands if they ever felt
23  assaulted or abused").  These interactions did not take place in any private or secluded location—
24  such as "a private bedroom . . . a hospital room . . . a restroom, [or] a young ladies' dressing
25  room," *PETA*, 111 Nev. at 635—but rather at an open-for-business salon, country club, and
26  casino. *Id.*, ¶¶ 36-40.  Plaintiffs had neither a subjective nor reasonable expectation of privacy in
27  such interactions.  *See PETA*, 111 Nev. at 633 (an intrusion based on a workplace conversation
28  "that the plaintiff knew that other persons could overhear" merits "no reasonable expectation of

privacy"); *Kemp v. Block*, 607 F. Supp. 1262, 1264 (D. Nev. 1985) (holding that where coworkers could overhear conversation and plaintiff had no right to exclude other persons from entering the room, plaintiff "had no reasonable expectation of privacy"); *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 818 (9th Cir. 2002) (applying Restatement test, holding that plaintiff had "no reasonable expectation of limited privacy in a workplace interaction with three strangers").

In sum, Plaintiffs' collective pleading does not sufficiently support an invasion of privacy claim, nor does it give notice sufficient to allow Defendant WLV to assess individual claims or prepare an appropriate answer. On this basis, Plaintiffs' claims for invasion of privacy must be dismissed.

### E.    In the Alternative, Defendant Moves the Court to Order Plaintiffs to Provide a More Definite Statement Including Allegations Identifying and Supporting Each Individual Plaintiff's Claim.

In the event the Court does not dismiss Plaintiffs' First Amended Complaint in its entirety, Defendant WLV asks the Court to order Plaintiffs to file a more definite statement of their claims pursuant to Rule 12(e). "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Plaintiffs' failure to plead any individualized facts or reveal their identities to Defendant, set forth in detail above, prevents Defendant WLV from reasonably preparing a response to the First Amended Complaint. If the First Amended Complaint is not dismissed, the Court should order Plaintiffs to provide a more definite statement including such details. *See, e.g.*, *EEOC v. Hotspur Resorts Nev., Ltd.*, No. 2:10-cv-2265-RCJ-GWF, 2011 U.S. Dist. LEXIS 115325, at *12-14 (D. Nev. Oct. 3, 2011) (granting motion for more definite statement where harassment complaint failed to plead the claims of each aggrieved person); *Thomas v. Baca*, No. CV 04-08448 DDP (SHx), 2005 U.S. Dist. LEXIS 4780, at *5 (C.D. Cal. Feb. 3, 2005) (granting motion for more definite statement where complaint omitted plaintiffs' full names, which was "critical to enable the defendants to identify the plaintiffs in their records and prepare an adequate response," and "pertain[ed] directly to the defendants['] ability to establish whether the plaintiffs have exhausted their administrative

1  remedies").  If this occurs, the Court may enter a protective order restricting the public disclosure

2  of Plaintiffs' identities, while allowing Defendant WLV to use Plaintiffs' real names as necessary

3  to conduct discovery and to file any appropriate documents with the Court under seal.  *See supra*,

4  Section IV.A.2.

5  **V.      CONCLUSION**

6        For the reasons set forth above, Defendant WLV respectfully requests the Court dismiss

7  Plaintiffs' First Amended Complaint in its entirety, or, in the alternative, issue an order requiring

8  Plaintiffs to provide a more definite statement, including sufficiently individualized facts and

9  Plaintiffs' identities.

10       Dated this 5th day of November, 2019.

11                                                 JACKSON LEWIS P.C.

12
                                                   */s/ Deverie J. Christensen*
13                                                 DEVERIE J. CHRISTENSEN, ESQ.
                                                   JOSHUA A. SLIKER, ESQ.
14                                                 DANIEL I. AQUINO, ESQ.
                                                   300 S. Fourth Street, Suite 900
15                                                 Las Vegas, Nevada 89101

16                                                 *Attorneys for Defendants*
                                                   *Wynn Resorts, Limited, and*
17                                                 *Wynn Las Vegas, LLC*

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2

I HEREBY CERTIFY that I am an employee of Jackson Lewis P.C., and that on this 5th

3

day of November, 2019, I caused a true and correct copy of the foregoing **DEFENDANT WYNN**

4

**LAS VEGAS, LLC'S: (1) MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED**

5

**COMPLAINT; or (2) IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE**

6

**STATEMENT** to be served via the Court's CM/ECF electronic filing and service system to the

7

following:

8
9
10

Kathleen J. England, Esq.
**Gilbert & England Law Firm**
610 South Ninth Street
Las Vegas, Nevada 89101

11
12
13
14

Jason R. Maier, Esq.
Joseph A. Gutierrez, Esq.
Danielle J. Barraza, Esq.
**Maier Gutierrez & Associates**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89145

15

*Attorneys for Plaintiffs*

16
17

*/s/ Kelley Chandler*
Employee of Jackson Lewis P.C.

18

4850-8362-0778, v. 9

19

20

21

22

23

24

25

26

27

28