DEVERIE J. CHRISTENSEN, ESQ.
Nevada Bar No. 6596
JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
HILARY A. WILLIAMS, ESQ.
Nevada Bar No. 14645
**JACKSON LEWIS P.C.**
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
Telephone: (702) 921-2460
Facsimile: (702) 921-2461
E-Mail: deverie.christensen@jacksonlewis.com
E-Mail: joshua.sliker@jacksonlewis.com
E-Mail: hilary.williams@jacksonlewis.com

*Attorneys for Defendants*
*Wynn Resorts, Limited and Wynn Las Vegas, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JUDY DOE NO. 1, an individual; JUDY DOE NO. 2, an individual; JUDY DOE NO. 3, an individual; JUDY DOE NO. 4, an individual; JUDY DOE NO. 5, an individual; JUDY DOE NO. 6, an individual; JUDY DOE NO. 7, an individual; JUDY DOE NO. 8, an individual; and JUDY DOE NO. 9, an individual, | Case No. 2:19-cv-01904-GMN-VCF **DEFENDANT WYNN LAS VEGAS, LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |
| Plaintiffs, | |
| vs. | |
| WYNN RESORTS, LIMITED, a Nevada corporation; WYNN LAS VEGAS, LLC, ability company; DOES I through X; and ROE CORPORATIONS I through X, inclusive, | |
| Defendants. | |

Defendant Wynn Las Vegas, LLC ("WLV"), by and through its counsel, the law firm of Jackson Lewis, P.C. moves to dismiss Plaintiffs' JUDY DOES 1 through 9's ("Plaintiffs") Second Amended Complaint (ECF No. 106) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant's Motion is based on the pleadings and papers on file in this case, the following memorandum of points and authorities, and any additional argument of counsel that the Court may consider.

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ................................................................... 1

II.   FACTUAL BACKGROUND ..................................................... 2

III.  LEGAL ARGUMENT ............................................................. 4

A.    Standard of Review ........................................................ 4

B.    Plaintiffs' First Claim for Discrimination and Sexual Harassment
      Fails to State a Claim Upon Which Relief May be Granted ...................... 5

      1.   Plaintiffs' allegations regarding Steve Wynn's conduct during
           in-room services are untimely and cannot be saved by the
           continuing violations doctrine.................................................... 5

           a.   Actions and conduct occurring outside of the limitations
                period should not be considered. .......................................... 5

           b.   Plaintiffs' allegations regarding Steve Wynn's conduct
                during in-room services is untimely and cannot be saved by
                the continuing violations doctrine........................................ 6

                i.    Steve Wynn's alleged conduct towards Plaintiffs during
                      in-room services is untimely ........................................ 6

                ii.   Steve Wynn's alleged conduct constitutes discrete acts
                      that are time barred ................................................. 7

                iii.  The conduct alleged by Plaintiffs before and after the
                      statute of limitations period is not similar in nature and
                      character ............................................................. 8

                iv.   The doctrine of laches trumps the doctrine of continuing
                      violations............................................................. 9

      2.   Plaintiffs' undated and vague allegations regarding other in-
           room guest services should not be considered ............................ 10

      3.   Plaintiffs' alleged timely incidents cannot support a hostile
           work environment claim ................................................... 10

C.    Plaintiffs' Second Claim for Retaliation Fails to State a Claim Upon
      Which Relief May Be Granted ........................................... 14

      1.   The alleged adverse actions cannot support a retaliation claim............. 15

           a.   Meetings         ........................................................... 16

|   |   | b. | Investigation activities .................................................................. 16 |

c. Remedial mechanism ..................................................................... 17

d. Possible surveillance of former or current salon employees ........................... 18

2. A causal connection does not exist between the protected activities and the alleged adverse employment actions ..................................... 19

D. Plaintiffs' Third Claim for Relief for Negligent Hiring, Training, Supervision, and Retention Fails to State A Claim Upon Which Relief May be Granted ............................................................. 19

1. Plaintiffs' attempt to plead a claim based on untimely allegations and without pleading specific harm or injury to each Plaintiff within the statute of limitations period is fatal to this Claim ............................... 19

2. Plaintiffs' claim for negligent hiring, training, supervision, and retention is preempted ................................................................. 23

E. Plaintiffs' Fourth Claim for Relief for Intentional Infliction of Emotional Distress ("IIED") Fails to State A Claim Upon Which Relief May Be Granted ............................................................. 23

1. Statute of Limitations Applicable to Plaintiff's IIED Claim ...................... 23

2. Plaintiffs' IIED claim is barred by the Nevada Industrial Insurance Act (NILA) ........................................................................... 23

3. Plaintiffs' Fail to State a Claim for IIED ........................................... 25

a. Plaintiffs' IIED claim is merely a harassment claim with a different title, and thus, is preempted ........................................... 25

b. Plaintiffs cannot demonstrate Defendants engaged in "extreme and outrageous" conduct ............................................................. 26

c. Plaintiffs cannot demonstrate Defendants intended to or recklessly disregarded the risk of causing them emotional harm ................. 28

d. Plaintiffs cannot demonstrate they suffered severe distress ..................... 29

F. Plaintiffs' Fifth Claim for False Imprisonment Fails to State A Claim Upon Which Relief May Be Granted ........................................... 29

1. The claim is untimely .................................................................. 29

2. The claim fails as a matter of law .................................................... 30

G. Plaintiffs' Sixth Claim for Relief for Invasion of Privacy Fails to State a Claim Upon Which Relief May Be Granted ............................... 32

1.   Judy Does 5, 8 and 9 fail to plead an invasion of privacy (intrusion on seclusion) claim ........................................................................ 32

2.   Plaintiffs Judy Does 5, 8 and 9 fail to plead facts sufficient to establish invasion of privacy (false light) claim ...................................... 34

H.   Plaintiffs' Seventh Claim, Request for Injunctive Relief, Fails to State a Claim Upon Which Relief Can Be Granted. ................................. 35

IV.   CONCLUSION ........................................................................................... 38

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AMTRAK v. Morgan*,
   536 U.S. 101 (2002) ................................................................................................... 5, 7, 8

*Annenberg v. Clark Cty. Sch. Dist.*,
   2018 U.S. Dist. LEXIS 101003, Case No. 2:17-cv-03090-APG-NJK (D. Nev.
   Jun. 15, 2018) ................................................................................................................. 5

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................... 4, 15, 18, 28

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 4

*Bell v. Clackamas Cty.*,
   341 F.3d 858 (9th Cir. 2003) ......................................................................................... 15

*Brigance v. Nevada*,
   No. 2:17-CV-250 JCM (GWF), 2018 U.S. Dist. LEXIS 94256 (D. Nev. June 5,
   2018) ............................................................................................................................. 29

*Brinkman v. Harrah's Operating Co., Inc.*,
   2008 U.S. Dist. LEXIS 123992 (D. Nev. Oct. 16, 2008) ....................................... 23, 25

*Brooks v. City of San Mateo*,
   229 F.3d 917 (9th Cir. 2000) ................................................................................... 13, 18

*Burnett v. C.B.A. Sec. Serv.*,
   107 Nev. 787, 820 P.2d 750 (1991) ............................................................................. 20

*Candelore v. Clarke Cty. Sanitation Dist.*,
   752 F. Supp. 956 (D. Nev. 1990) .................................................................................. 11

*Christian v. Umpqua Bank*,
   984 F.3d 801 (9th Cir. 2020) ........................................................................................ 10

*Clark County Sch. Dist. v. Breeden*,
   532 U.S. 268, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) ......................................... 11, 15

*Colquhoun v. BHC Montevista Hospital, Inc.*,
   No. 2:10-cv-0144-RLH-PAL, 2010 U.S. Dist. LEXIS 57066 (D. Nev. June 9,
   2010) ............................................................................................................................. 20

*Cranford v. Underhill*,
No. 03:06-CV-00111-LRH-GWF, 2008 U.S. Dist. LEXIS 57211 (D. Nev. July
26, 2008) ....................................................................................................................20, 22

*Creamer v. Cty. of Kauai*,
No. 16-00648 ....................................................................................................................17

*Cummings v. Connell*,
316 F.3d 886 (9th Cir. 2003) ......................................................................................35, 36

*D'Angelo v. Gardner*,
107 Nev. 704 (1991) ...................................................................................................23, 26

*Daisley v. Riggs Bank, N.A.*,
372 F. Supp. 2d 61 (D.D.C. 2005) .....................................................................................20

*Dawson v. Entek*,
630 F.3d 928 (9th Cir. 2011) .............................................................................................15

*Duncan v. Manager, Dep't of Safety*,
397 F.3d 1300 (10th Cir. 2005) ...........................................................................................9

*E.E.O.C. v. Goodyear Aerospace Corp.*,
813 F.2d 1539 (9th Cir. 1987) ....................................................................................35, 36

*EEOC v. Evans Fruit Co.*,
No. CV-10-3033-LRS, 2012 U.S. Dist. LEXIS 169006 (E.D. Wash. Nov. 27,
2012) ..........................................................................................................................9, 13, 15

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998) .....................................................................................................13, 14

*Flint v. Franktown Meadows, Inc.*,
449 P.3d 475, 2019 Nev. Unpub. LEXIS 1061 (Nev. 2019) (unpublished) ..........................24

*Flowers v. Carville*,
112 F. Supp. 2d 1202 (D. Nev. 2000) (reversed on other grounds) ...........................................32

*Franchise Tax Bd. v. Hyatt*,
335 P.3d 125 (Nev. 2014) ...................................................................................................34

*Fuller v. City of Oakland*,
47 F.3d 1522 (9th Cir. 1995) ......................................................................................13, 14

*Gayler v. Nevada*,
No. 2:17-cv-00431-JCM-VCF, 2021 U.S. Dist. LEXIS 227849 (D. Nev. Nov.
29, 2021) ......................................................................................................................20, 21

*Green v. Brennan*,
136 S. Ct. 1769 (2016) .........................................................................................................8

*Grigorescu v. Bd. of Trs.*,
No. 18-cv-05932-EMC, 2019 U.S. Dist. LEXIS 147705 (N.D. Cal. Aug. 29,
2019) .......................................................................................................................... 6, 9, 10

*Harris v. Forklift Syst. Inc.*,
510 U.S. 17 (1993) ................................................................................................................ 11

*Hernandez v. City of Reno*,
97 Nev. 429, 634 P.2d 668 (Nev. 1981) ................................................................................ 30

*Herried v. Pierce Cty. Public Transp. Benefit Auth*,
90 Wn. App. 468 (Wash. Ct. App. 1998) .............................................................................. 11

*Heyman v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*,
No. 2:15-cv-1228-APG-GWF, 2019 U.S. Dist. LEXIS 39375 (D. Nev. Mar.
12, 2019) ................................................................................................................................ 26

*Hoffman v. Red Wing Brands of Am., Inc.*,
No. 3:13-cv-0633-LRH-VPC, 2015 U.S. Dist. LEXIS 82741 (D. Nev. June 24,
2015) ...................................................................................................................................... 27

*Illas v. Gloucester Cty. Sheriff's Dep't*,
No. 14-4061, 2015 U.S. Dist. LEXIS 21753 (D.N.J. Feb. 24, 2015) ...................................... 8

*Kemp v. Block*,
607 F. Supp. 1262 (D. Nev. 1985) ........................................................................................ 33

*Kennedy v. Carriage Cemetery Servs., Inc.*,
727 F. Supp. 2d 925 (D. Nev. 2010) ..................................................................................... 29

*Kilduff v. Cosential, Inc.*,
289 F.Supp.2d 12 (D. Conn. 2003) ....................................................................................... 28

*Kraja v. Bellagio, LLC*,
202 F. Supp. 3d 1163 (D. Nev. 2016) ................................................................................... 28

*Ledbetter v. Goodyear Tire & Rubber Co.*,
550 U.S. 618 (2007) (*superseded on other grounds by statute* (Jan. 29, 2009)) ............... 6, 7, 8

*Lerner Shops of Nevada, Inc. v. Marin*,
83 Nev. 75, 423 P.2d 398 (Nev.1967) ................................................................................... 30

*Leslie v. Las Vegas Metro. Police Dep't*,
No. 2:14-cv-01430-JAD-VCF, 2015 U.S. Dist. LEXIS 170154 (D. Nev. Dec.
18, 2015) ............................................................................................................................ 30, 31

*Local 189, United Papermakers and Paperworkers v. United States*,
416 F.2d 980 (5th Cir. 1969), *cert. denied*, 397 U.S. 919, 90 S. Ct. 926, 25 L.
Ed. 2d 100 (1970) .................................................................................................................. 35

*Long v. Las Vegas Valley Water Dist.*,
No. 2:15-CV-210 JCM (VCF), 2015 U.S. Dist. LEXIS 133978 (D. Nev. Oct. 1, 2015) ................................................................................................................26

*M & R Investment Co. v. Mandarino*,
103 Nev. 711, 748 P.2d 488 (1987) ...........................................................32, 33

*Maduike v. Agency Rent—A—Car*,
114 Nev. 1, 953 P.2d 24 (1998) ........................................................................26

*McCaw v. Potter*,
No. 2:04-CV-878-RLH-RJJ, 2006 U.S. Dist. LEXIS 61774 (D. Nev. Aug. 28, 2006) ................................................................................................................16

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
306 F.3d 806 (9th Cir. 2002) ............................................................................33

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57 (1986)......................................................................................11, 14

*Miller v. Aluminum Co.*,
679 F. Supp. 495 (W.D. Pa. 1988), *aff'd without opinion*, 856 F.2d 184 (3d Cir. 1988) ................................................................................................................11

*Miller v. CVS Pharmacy, Inc.*,
779 F. Supp. 2d 683 (E.D. Mich. 2011) ...........................................................30

*Moen v. Las Vegas Int'l Hotel*,
90 Nev. 176, 521 P.2d 370 (1974) ....................................................................30

*Mohamed v. Jeppesen Dataplan, Inc.*,
614 F.3d 1070 (9th Cir. 2010) ............................................................................2

*Moore v. Big Picture Co.*,
828 F.2d 270 (5th Cir. 1987) ............................................................................34

*Nelson v. Nelson*,
99 Nev. 548, 665 P.2d 1141 (1983) ..................................................................25

*Ngo v. Woodford*,
539 F.3d 1108 (9th Cir. 2008) ............................................................................8

*Nickler v. Clark Cty.*,
No. 2:18-cv-01668-JCM-VCF, 2019 U.S. Dist. LEXIS 63951 (D. Nev. Apr. 15, 2019), *affirmed by, in part, reversed by, in part, remanded by* 2020 U.S. App. LEXIS 4720 (9th Cir. Nev., Feb. 12, 2020).......................................6

*Novak-Scott v. City of Phx.*,
No. CV 05-3147-PHX-JAT, 2008 U.S. Dist. LEXIS 31118 (D. Ariz. Apr. 14, 2008) ................................................................................................................17

*Nunez v. City of Los Angeles*,
   147 F.3d 867 (9th Cir. 1998) ................................................................. 17

*Okeke v. Biomat USA, Inc.*,
   927 F. Supp. 2d 1021 (D. Nev. 2013) ..................................................... 20

*Olivero v. Lowe*,
   116 Nev. 395, 995 P.2d 1023 (2000) ...................................................... 26

*PETA v. Bobby Berosini, Ltd.*,
   111 Nev. 615, 895 P.2d 1269 (1995) (overruled on other grounds by *City of
   Las Vegas Downtown Redev. Agency v. Hecht*, 113 Nev. 644, 650, 940 P.2d
   134, 138 (1997)) ............................................................................. 32, 33

*Pierson v. Storey Cty.*,
   No. 3:12-cv-00598-MMD-VPC, 2013 U.S. Dist. LEXIS 169272 (D. Nev. Nov.
   27, 2013) .................................................................................................. 23

*Pitti v. Albertsons, Inc.*,
   No. 2:11-cv-00280-MMD-CWH, 2012 U.S. Dist. LEXIS 73638 (D. Nev. May
   29, 2012) .................................................................................................. 30

*Porter v. Cal. Dep't of Corr.*,
   383 F.3d 1018 (9th Cir. 2004) ................................................................... 7

*Porter v. Cal. Dept. of Corr.*,
   419 F.3d 885 (9th Cir. 2005) ..................................................................... 8

*Quintana v. Clark Cty. Sch. Dist.*,
   No. 2:21-cv-00023-GMN-NJK, 2021 U.S. Dist. LEXIS 176266 (D. Nev. Sep.
   16, 2021) .................................................................................................... 7

*Ray v. Henderson*,
   217 F.3d 1234 (9th Cir. 2000) ........................................................... 15, 18

*Reyes v. Sw. Gas Corp.*,
   No. 2:07cv-0068-BES-LRL, 2007 U.S. Dist. LEXIS 57421 (D. Nev. Aug. 2,
   2007) ........................................................................................................... 5

*Robinson v. Renown Reg'l Med. Ctr.*,
   No. 3:16-cv-00372-MMD-WGC, 2017 U.S. Dist. LEXIS 105937 (D. Nev. July
   10, 2017) .............................................................................................. 26, 28

*Roche v. Audio Visual Servs. Grp.*,
   No. 2:09-cv-01810-LDG-GWF, 2010 U.S. Dist. LEXIS 77932 (D. Nev. July
   28, 2010) .................................................................................................. 25

*Russo v. Clearwire*,
   2:12-CV-01831-PMP-VCF, 2013 U.S. Dist. LEXIS 61440 (D. Nev. Apr. 30,
   2013) ........................................................................................................ 25

*Safran v. United Health Prods.*,
  No. 2:18-cv-00158-JAD-DJA, 2020 U.S. Dist. LEXIS 93632 (D. Nev. May 28,
  2020) ............................................................................................................................17

*Sands v. Regent*,
  105 Nev. 436, 777 P.2d 898 (1989) ..........................................................................25

*Schaefer v. Diamond Resorts Int'l Mktg.*,
  No. 2:14-cv-01900-GMN-CWH, 2015 U.S. Dist. LEXIS 55511 (D. Nev. Apr.
  28, 2015) ...............................................................................................................23, 25

*Schaeffer v. San Diego Yellow Cabs, Inc.*,
  462 F.2d 1002 (9th Cir. 1972) ...................................................................................35

*Schneider v. TRW, Inc.*,
  938 F.2d 986 (9th Cir. 1991) .....................................................................................26

*Sowemimo v. D.A.O.R. Sec., Inc.*,
  43 F. Supp. 2d 477 (S.D.N.Y. 1999)..........................................................................28

*Star v. Rabello*,
  97 Nev. 124, 625 P.3d 90 (1981) ...............................................................................25

*Swenson v. Potter*,
  271 F.3d 1184 (9th Cir. 2001) .............................................................................14, 17

*U.S. v. Laerdal Mfg. Corp.*,
  73 F.3d 852 (9th Cir. 1995) .......................................................................................36

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) .......................................................................................5

*United States v. W.T. Grant Co.*,
  345 U.S. 629, 73 S. Ct. 894, 97 L. Ed. 1303 (1953)..................................................35

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
  570 U.S. 338, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013).........................................15

*Van Buskirk v. CNN*,
  284 F.3d 977 (9th Cir. 2002) .......................................................................................5

*Vasquez v. City of Los Angeles*,
  349 F.3d 634 (9th Cir. 2003) .....................................................................................11

*Walker v. Venetian Casino Resort, LLC*,
  02:10-CV-00195-LRH-VCF (D. Nev. Oct. 3, 2012)..............................................26, 27

*Watson v. Las Vegas Valley Water Dist.*,
  378 F. Supp. 2d 1269 (D. Nev. 2005).........................................................................29

*Welder v. Univ. of So. Nevada*,
 833 F. Supp. 2d 1240 (D. Nev. 2011) ............................................................26

*Wilkie v. HHS*,
 638 F.3d 944 (8th Cir. 2011) ..................................................................... 8, 9

*Williams v. Community Solutions*,
 932 F. Supp. 2d 323 (D. Conn. 2013) .......................................................28

*Williams v. L.A. Unified Sch. Dist.*,
 No. CV 10-01417 ODW, 2010 U.S. Dist. LEXIS 126338 (C.D. Cal. Nov. 18,
 2010) ........................................................................................................8

*Winterberg v. Univ. of Nev. Reno*,
 2020 U.S. Dist. LEXIS 68485, Case No. 3:19-cv-00747-MMD-CLB (D. Nev.
 Apr. 20, 2020) .........................................................................................5

*Wood v. Safeway, Inc.*,
 121 Nev. 724, 121 P.3d 1026 (2005) .........................................................24

*Young v. Zappos.com, Inc.*,
 No. 2:08-CV-741 JCM (PAL), 2010 U.S. Dist. LEXIS 38854 (D. Nev. Apr.
 19, 2010) ...............................................................................................24

*Zermeno v. Stratosphere Corp.*,
 No. 07-CV-00581-KJD-LRL, 2010 U.S. Dist. LEXIS 54228 (D. Nev. June 2,
 2010) ......................................................................................................29

**Statutes**

42 U.S.C. § 2000e-5(g) ....................................................................................35

42 U.S.C. § 2000e-5(e)(1) .................................................................................5

42 U.S.C. § 2000e *et. seq.* ................................................................................1

Nevada Industrial Insurance Act .......................................................................23

NRS 11.190(4)(c) ...........................................................................................29

NRS 11.190(4)(e) ...........................................................................................20

NRS 613.310 .............................................................................................23, 25

NRS 613.330 ....................................................................................1, 14, 15, 23, 25

NRS 613.340 ..................................................................................................1

NRS 616A.010(1) ...........................................................................................24

NRS 616A.020(1) ...........................................................................................24

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) .................................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 2, 4

Restatement (Second) of Torts §§ 652D, 652E (1977) ............................................... 34

Restatement (Second) of Torts, § 652D, cmt. a (1977) ............................................... 34

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

This is an employment case involving alleged hostile work environment based on sexual harassment, retaliation, and other torts in which Plaintiffs have sued their employer, Wynn Las Vegas, LLC ("WLV") and its thrice-removed ultimate parent company, Wynn Resorts, Limited. Essentially, the Judy Doe[1] Plaintiffs claim their employer allowed Stephen A. Wynn ("Steve Wynn"), the former Chairman and CEO of Wynn Resorts, Limited, to engage in certain alleged misconduct against female employees, and then years later intimidated and retaliated against them after allegations about the alleged prior misconduct became public in 2018 after the publication of a Wall Street Journal article.

Plaintiffs' Second Amended Complaint alleges seven claims for relief: (1) discrimination and harassment based on sex in violation of 42 U.S.C. § 2000e *et. seq*. and NRS 613.330 *et. seq*., including a hostile work environment; (2) retaliation pursuant to 42 U.S.C. § 2000e *et. seq*. and NRS 613.340; (3) negligent hiring, training, supervision, and retention of high-level executives and human resources personnel; (4) intentional infliction of emotional distress; (5) false imprisonment[2] on behalf of Judy Does 1, 2, 3, 4, 5, 6, 8 and 9; (6) invasion of privacy on behalf of Judy Does 5, 8 and 9; and (7) request for injunctive relief on behalf of Judy Does 1, 2, 3, 4, 7, 8 and 9.

Despite filing the Second Amended Complaint more than two years after their original complaint, Plaintiffs repeatedly fail to satisfy applicable *prima facie* requirements to state plausible claims against Defendant. ECF No. 106. For instance, Plaintiffs' claim for hostile work environment sexual harassment improperly pursues recovery based on time barred allegations of conduct by Steve Wynn going back to 2004. Plaintiffs' attempted reliance on the continuing action theory to resurrect ancient time barred allegations is unavailing. Likewise, the timely allegations asserted by Plaintiffs, including typical workplace activities, fail to curate sufficient

---

[1] Plaintiffs seek to sue using fictitious names, and there is presently a briefing schedule applicable to this issue. ECF No. 113.

[2] Plaintiffs raised this claim for the first time in the Second Amended Complaint filed on February 2, 2022.

1   circumstances that collectively create a severe or pervasive hostile work environment.

2       Moreover, in a vain attempt to state a retaliation claim, Plaintiffs incorrectly characterize

3   routine, innocuous workplace activities as adverse actions. Finally, Plaintiffs assert multiple torts

4   under state law and a request for injunctive relief that fail to cross the threshold into plausible

5   claims as plead.

6       Accordingly, the Second Amended Complaint should be dismissed. Fed. R. Civ. P.

7   12(b)(6).

8               **II.    FACTUAL BACKGROUND[3]**

9       WLV owns and operates a hotel and casino property comprised of two hotel towers, Wynn

10  Las Vegas and Encore Resort[4], located on the Las Vegas Strip. ECF No. 106 at ¶ 11. Both towers

11  have salons (collectively referred to in the Second Amended Complaint as the "Salon") *Id.* at ¶

12  27. The nine Plaintiffs were hired by Defendant WLV between 2004 and 2008 and, with the

13  exception of one Plaintiff, currently work in the Salons (either the Wynn Salon or the Encore

14  Salon) as either manicurists or makeup artists.[5] *Id.*, ¶¶ 92, 94.

15      Given the length of this Motion, we provide here a brief summary of the fact allegations

16  common to the Plaintiffs. Plaintiffs allege, during their employment, they were subjected to

17  sexual harassment by Steve Wynn, the former Chairman and Chief Executive Officer of Wynn

18  Resorts, Limited. ECF No. 106, ¶ 28, 34. Plaintiffs allege Steve Wynn personally selected the

19  board members and executive management for companies he controlled, who in turn enabled his

20  pattern of sexual harassment. *Id.*, ¶ 28. Plaintiffs allege that, after media outlets began

21  investigating Steve Wynn's activities in late 2017 and early 2018, Defendant WLV's management

---

22

23  [3] Defendant does not admit any of the allegations in the Second Amended Complaint, nor does Defendant admit any wrongdoing. Defendant intends to vigorously defend against all claims asserted against it in the event this matter survives this Motion to Dismiss. However, for the purposes of this motion only, Defendant accepts as true the allegations set forth in the Second Amended Complaint. *Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1094 (9th Cir. 2010). Therefore, the factual contentions set forth herein are drawn exclusively from Plaintiff's Second Amended Complaint and documents referenced therein or attached as exhibits. Defendant reserves its rights to dispute Plaintiff's allegations in the event that the motion is not granted, and deny and dispute Plaintiffs' allegations for all other purposes.

24

25

26

27  [4] Wynn Las Vegas opened on April 28, 2005, and it opened a second hotel tower, Encore, approximately three years later, on December 22, 2008.

28  [5] Judy Doe 6 resigned her employment effective December 3, 2021.

(including then-Wynn Las Vegas President Maurice Wooden and then-Vice President of Human Resources Troy Mitchum) convened a meeting with salon employees on January 17, 2018 emphasizing that no one should talk to reporters. *Id.*, ¶¶ 30-33. Further, in January 2018 when media outlets began publishing reports regarding Steve Wynn's activities, Mr. Wooden expressed support for Steve Wynn via a memo posted in the workplace, allegedly designed to stifle employees from raising complaints. *Id.*, ¶¶ 35-37.

Plaintiffs allege Steve Wynn personally engaged in interactions that intimidated salon employees, starting with a mandatory meeting held on January 31, 2018 when all salon employees (including some Plaintiffs) were gathered in a group setting and asked by Steve Wynn to raise their hands if they had ever felt abused or assaulted by him. *Id.*, ¶¶ 39-41. On February 1, 2018, Steve Wynn appeared at the Salon with a camera crew for a birthday celebration of a salon employee, where he made jokes and further intimidating comments. *Id.*, ¶¶ 42-44. An unidentified number of Plaintiffs were asked to state on camera that Steve Wynn had never assaulted or abused them, a request with which some (unidentified) Plaintiffs complied. *Id.*, ¶ 44.

Plaintiffs allege further events caused them to feel uncomfortable or unprotected from potential retaliation, including a February 6, 2018 statement by the Wynn Resorts Board of Directors regarding Steve Wynn's resignation, mandatory meetings with Defendant WLV's in-house and investigatory counsel in February and March of 2018 that were "poorly perceived," information-gathering communications and meetings involving Matt Maddox (Wynn Resorts former CEO) or Patricia Mulroy (Wynn Resorts Board member), a defamation lawsuit Steve Wynn filed against the former Salon Director that Defendant WLV allegedly "did nothing to distance[] themselves from." *Id.* at ¶¶ 49, 51-60, 62.

Plaintiffs also describe the investigations and findings of the Nevada Gaming Control Board and the Massachusetts Gaming Commission, which found that select executives and management mishandled complaints received between 2005 and 2016 (ECF No. 106-3, MGC0529-0535) regarding Steve Wynn's actions, resulting in large fines against Wynn Resorts. *Id.*, ¶¶ 68-83. Notably, the Second Amended Complaint does not allege that the Nevada and Massachusetts Gaming related investigations and findings specifically discuss any of the

Plaintiffs or support their individual claims for damages.

Plaintiffs began initiating EEOC Charges in March 2018 asserting sexual harassment and retaliation claims. *Id.* at ¶¶ 20-21. Plaintiffs were issued Right to Sue Notices by the EEOC on July 2, 2019, and filed suit thereafter. *Id.* at ¶ 25.

### III.   LEGAL ARGUMENT

**A. Standard of Review.**

A court may dismiss a complaint for failure to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555.

Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

**B. Plaintiffs' First Claim for Discrimination and Sexual Harassment Fails to State A Claim Upon Which Relief May Be Granted.**

    *1. Plaintiffs' allegations regarding Steve Wynn's conduct during in-room services are untimely and cannot be saved by the continuing violations doctrine.*

        a. <u>Actions and conduct occurring outside of the limitations period should not be considered.</u>

Plaintiffs must file a charge of discrimination within 300 days after the alleged unlawful employment practice or the claim will be time-barred. 42 U.S.C. § 2000e-5(e)(1); *AMTRAK v. Morgan*, 536 U.S. 101, 105 (2002); *Reyes v. Sw. Gas Corp.*, No. 2:07cv-0068-BES-LRL, 2007 U.S. Dist. LEXIS 57421, at *7-8 (D. Nev. Aug. 2, 2007) (holding that because plaintiff's Title VII claims were time-barred, they "must be dismissed without leave to amend.").

Accordingly, the Court should not consider alleged conduct that occurred more than 300 days before each Plaintiff's EEOC intake in accordance with the table below:

| Plaintiff | Date of EEOC Intake | 300 Days Prior to Intake | Exhibit No.[6, 7] |
|---|---|---|---|
| Judy Doe 1 | April 3, 2018 | June 7, 2017 | A |
| Judy Doe 2 | March 14, 2018 | May 18, 2017 | B |
| Judy Doe 3 | March 9, 2018 | May 13, 2017 | C |
| Judy Doe 4 | March 9, 2018 | May 13, 2017 | D |
| Judy Doe 5 | April 10, 2018 | June 14, 2017 | E |
| Judy Doe 6 | March 9, 2018 | May 13, 2017 | F |
| Judy Doe 7 | April 2, 2018 | June 6, 2017 | G |
| Judy Doe 8 | March 9, 2018 | May 13, 2017 | H |
| Judy Doe 9 | March 13, 2018 | May 17, 2017 | I |

[6] Plaintiffs expressly refer to their perfected EEOC Charges in the Second Amended Complaint (*Id.*, ¶¶ 20-21). While a court generally does not consider factual elements beyond the four corners of a pleading on a motion to dismiss, in employment matters the court may consider the related administrative charge and correspondence so long as they are attached to the complaint, incorporated by reference, or "the document forms the basis for the plaintiff's claim," without converting the motion to one seeking summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (*citing Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002)); *Annenberg v. Clark Cty. Sch. Dist.*, 2018 U.S. Dist. LEXIS 101003, *1 n.1, Case No. 2:17-cv-03090-APG-NJK (D. Nev. Jun. 15, 2018) (taking judicial notice of the underlying EEOC charge of discrimination because it was incorporated by reference in the complaint). The Court may also take judicial notice of the Charges as verifiable matters in the public record. *See Winterberg v. Univ. of Nev. Reno*, 2020 U.S. Dist. LEXIS 68485, *8, Case No. 3:19-cv-00747-MMD-CLB (D. Nev. Apr. 20, 2020) ("While the NERC/EEOC Charge may be deemed as incorporated by reference in Plaintiff's complaint…the Court takes judicial notice of the NERC/EEOC Charge as verifiable matters in the public record").

[7] Defendant has filed the Exhibits separately on the docket under seal so as not to preempt the Court's decision of Plaintiffs' forthcoming motion practice to protect their real names from public disclosure and proceed pseudonymously in this case.

1

2

            **b.** **Plaintiffs' allegations regarding Steve Wynn's conduct during in-room services is untimely and cannot be saved by the continuing violations doctrine**.

3

4

5

6

7

8

9

        Plaintiffs cannot rely on the continuing violations doctrine to render their untimely allegations about Steve Wynn's conduct towards Plaintiffs during in-room services actionable. Although the continuing violations doctrine offers plaintiffs a mechanism to proceed with certain time-barred claims, the doctrine has important limits.[8] *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) (*superseded on other grounds by statute* (Jan. 29, 2009)). *Grigorescu v. Bd. of Trs.*, No. 18-cv-05932-EMC, 2019 U.S. Dist. LEXIS 147705, at **9-10 (N.D. Cal. Aug. 29, 2019).

10

11

12

13

        Specifically, the continuing violations doctrine will not save discrete discriminatory acts; nor will it save acts of harassment prior to the statute of limitations period that are not similar in nature and character to the timely acts of harassment. Further, the doctrine cannot be invoked where the plaintiff unreasonably delayed in bringing suit.

14

15

          i.   *Steve Wynn's alleged conduct towards Plaintiffs during in-room services is untimely.*

16

17

18

19

20

        Judy Does 1, 3 and 4 allege conduct that occurred well outside of the limitations period. ECF No. 106 at ¶¶ 97-103 (alleging Steve Wynn made sexual advances toward Judy Doe 1 in 2004, 2008, and 2012-2013)[9]; ECF No. 106 at ¶ 135 (alleging Judy Doe 3 was subject to Steve Wynn's sexual harassment from 2009 to 2012); ECF No. 106 at ¶ 152 (alleging Judy Doe 4 was subject to Steve Wynn's sexual harassment from 2006 to 2008). Accordingly, Plaintiffs'

21

---

22

23

24

25

26

[8] To the extent Plaintiffs are attempting to use the continuing violations doctrine to save their state law tort claims (e.g., Third, Fourth, Fifth and Sixth Claims). This Court has previously held that "the State of Nevada does not have any mandatory case law pertaining to the continuing violation doctrine. Indeed, the Nevada Supreme Court has regularly avoided addressing the issue, even when litigants before the tribunal have invoked the doctrine." *Nickler v. Clark Cty.*, No. 2:18-cv-01668-JCM-VCF, 2019 U.S. Dist. LEXIS 63951, at *11-12 (D. Nev. Apr. 15, 2019), *affirmed by, in part, reversed by, in part, remanded by* 2020 U.S. App. LEXIS 4720 (9th Cir. Nev., Feb. 12, 2020). As a result, "the Nevada Supreme Court has effectively rendered the continuing violation doctrine inapplicable to state torts by consistently declining to create authority pertaining to the doctrine." *Id.*

27

28

[9] Although Judy Doe 1 alleges that she did Steve Wynn's make up in 2017, *id.* at ¶ 102, she does not allege that she actually provided this service, that anything untoward happened to her while she provided the service, or that it was within the limitations period.

allegations of sexual harassment regarding Steve Wynn's alleged conduct toward Judy Doe 1, 3 and 4 are time barred, not actionable, and should not be considered.

The remaining Plaintiffs appear to be intentionally vague about when they provided Steve Wynn with in-room services in a ploy to circumvent the limitations period through a continuing violations theory. ECF No. 106 at ¶¶ 117–120 (Judy Doe 2); ECF No. 106 at ¶¶ 177-78 (Judy Doe 5); ECF No. 106 at ¶¶ 202-06 (including a vague reference to 2017 regarding Judy Doe 6); ECF No. 106 at ¶ 222 (Judy Doe 7); ECF No. 106 at ¶ 239 (Judy Doe 8); *See* ECF No. 106 at ¶ 262 (Judy Doe 9).

In fact, Judy Doe 8 and Judy Doe 9 each asserted that incidents with Steve Wynn occurred outside of the limitations period in their Charges, but a time frame is noticeably absent from the Second Amended Complaint. *See* Ex. H (indicating that Judy Doe 8 was called to provide Steve Wynn a manicure on November 23, 2011 and that "after that" he "moved on" to someone one else); *see also* Ex. I ("From about 2005 to 2008, [Judy Doe 9] was one of the manicurists who was required to provide manicures to Mr. Wynn.") Nevertheless, Plaintiffs allege that their interactions with Steve Wynn occurred from 2004 to 2013 for "most" of the Plaintiffs meaning that the alleged conduct ended approximately four years outside of the limitations period and is not actionable. *See* ECF No. 106 at ¶ 295.

  ii. <u>Steve Wynn's alleged conduct constitutes discrete acts that are time barred.</u>

"Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" and thus the continuing violations doctrine cannot apply to them. *Morgan*, 536 U.S. at 113; *Ledbetter*, 550 U.S. at 6399. Discrete acts include "concrete decisions taken with respect to the employee that have immediate consequences" such as discharge or refusal to hire as well as individually actionable events such as sexual assaults, touching, and sexual advances. *Quintana v. Clark Cty. Sch. Dist.*, No. 2:21-cv-00023-GMN-NJK, 2021 U.S. Dist. LEXIS 176266, at *9 (D. Nev. Sep. 16, 2021); *Porter v. Cal. Dep't of Corr.*, 383 F.3d 1018, 1027-28 (9th Cir. 2004) ("[W]e refuse to mix recent discrete acts like tinder with the planks of ancient sexual advances and then, regardless of whatever it was that set the spark in the

furnace, call the fire that ignites therefrom a hostile environment"); *Illas v. Gloucester Cty. Sheriff's Dep't*, No. 14-4061 (NLH/AMD), 2015 U.S. Dist. LEXIS 21753, at *18-19 (D.N.J. Feb. 24, 2015) (sexual assault a discrete act because it is individually actionable)*; Williams v. L.A. Unified Sch. Dist.*, No. CV 10-01417 ODW (FFMx), 2010 U.S. Dist. LEXIS 126338, at *9 (C.D. Cal. Nov. 18, 2010) (finding that touching plaintiff's hair was a discrete act).

Here, Steve Wynn's conduct towards Plaintiffs cannot be saved by the continuing violations doctrine. Steve Wynn's alleged interactions with Plaintiffs (including touching, indecent exposure, and sexual advances) were discrete acts. The limitations period on a discrete act begins to run when the plaintiff "has a complete and present cause of action" (i.e., when the discrete act adverse to the plaintiff occurs) even if the effects of that violation continue. *Green v. Brennan*, 136 S. Ct. 1769, 1776-77 (2016); *Ngo v. Woodford*, 539 F.3d 1108, 1109 (9th Cir. 2008) (quoting *Ledbetter*, 550 U.S. at 627).

If these discrete acts constituted actionable harassment, a complete and present cause of action would have arisen several years prior to 2018, when Plaintiffs first pursued legal action. ECF No. 106, ¶ 295 (alleging Steve Wynn subjected most of the Plaintiffs to offensive verbal and physical conduct from 2004 to 2013). Thus, Steve Wynn's alleged discrete acts are untimely, and they are not saved by the continuing violations doctrine.

### iii. *The conduct alleged by Plaintiffs before and after the statute of limitations period is not similar in nature and character.*

Furthermore, to invoke the continuing violations doctrine, Plaintiffs must allege timely harassment that is similar to the untimely acts of harassment. To determine whether the component acts constitute "one unlawful employment practice [the Ninth Circuit] considers whether the earlier and later events amounted to the same type of employment actions, occurred relatively frequently, or were perpetrated by the same managers." *Porter v. Cal. Dept. of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (quoting *Morgan*, 536 U.S. at 116).

"[A]cts before and after the limitations period [that are] *so similar in nature, frequency, and severity* . . . must be considered to be part and parcel of the hostile work environment that constituted the unlawful employment practice that gave rise to th[e] action." *Wilkie v. HHS*, 638

F.3d 944, 951-52 (8th Cir. 2011) (emphasis in original) (internal quotations omitted). For example, sexual advances that occur outside of the limitations period cannot become actionable under the continuing violations doctrine where the later (and timely alleged) harassment is *markedly different. Id.* (finding the continuing violations doctrine was inapplicable where the time-barred allegations of sexual advances were markedly different from the timely alleged allegation that a sexual harasser attended a meeting where he made comments that plaintiff felt were confrontational and questioned plaintiff about comments she had made to coworkers).

The untimely alleged conduct by Steve Wynn toward Plaintiffs is dissimilar and markedly different in character as compared to the allegedly timely actions including receiving memos and letters, knowing Steve Wynn still received Salon services, corporate support for Steve Wynn, and attending meetings and investigative interviews. *See, e.g., id.* at ¶¶ 106, 107, 304, 305; *see Wilkie v. HHS*, 638 F.3d 944, 951-52 (8th Cir. 2011) (finding that the continuing violations doctrine did not apply where the untimely allegations of sexual advances were markedly different from the timely allegations of attending meetings and sending letters). Thus, the untimely allegations cannot be saved under the doctrine by the markedly different timely allegations.

### iv.   *The doctrine of laches trumps the doctrine of continuing violations.*

A plaintiff cannot save conduct outside of the limitations period where the plaintiff unreasonably delayed bringing suit. *See EEOC v. Evans Fruit Co.*, No. CV-10-3033-LRS, 2012 U.S. Dist. LEXIS 169006, at *16-*18 (E.D. Wash. Nov. 27, 2012) (finding that the doctrine of laches trumped the continuing violations doctrine rendering certain events including sexual harassment and attempted rape from being actionable when the plaintiffs delayed bringing suit by six years to eleven years); *see also Duncan v. Manager, Dep't of Safety*, 397 F.3d 1300, 1309-10 (10th Cir. 2005) ("To permit litigation now over these actions, which were taken by different individuals so long ago under different circumstances, would frustrate the Congressional purpose in passing a tight deadline for filing Title VII claims.")

**"Where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that she was a victim of actionable harassment, she 'cannot reach back and base her suit on conduct that occurred outside the statute of limitations.'"** *Grigorescu*, 2019

U.S. Dist. LEXIS 147705, at **9-10 (emphasis added). "In determining whether the continuing violation doctrine applies to certain events, the court must look to each event or to a series of events to see if the plaintiff should have been aware that the events constituted actionable harassment." *Id.*

Plaintiffs unreasonably delayed bringing suit regarding Steve Wynn's alleged conduct going back to 2004 during in-room services for several years. Thus, such conduct should be barred from consideration under this claim under the doctrine of laches. ECF No 106, ¶ 295 (alleging most of the conduct occurred between 2004 and 2013).

Accordingly, Steve Wynn's alleged conduct towards Plaintiffs during in-room services are time-barred, the continuing violations doctrine does not render them timely, and they should not be considered as part of this claim.

### 2. Plaintiffs' undated and vague allegations regarding other in-room guest services should not be considered.

A company can only be held liable for a customer's harassment of its employee if it "either ratifie[d] or acquiesce[d] in the harassment by not taking immediate and/or corrective actions when it knew or should have known of the conduct." *Christian v. Umpqua Bank*, 984 F.3d 801, 811 (9th Cir. 2020) (internal quotations omitted).

Here, Judy Does 2, 3, 4, 5, 6, 8, and 9 allege that they felt unsafe and/or had bad experiences while providing in-room services for guests. ¶¶ 120, 139, 164, 179, 207, 242, 266. However, they do not allege any dates of the incidents, that they reported any incidents regarding the guests, or that WLV ratified or acquiesced in the harassment by not taking immediate corrective actions when it knew or should have known about the conduct as to each unnamed guest. Thus, the guests' alleged harassment cannot impose liability on WLV and should not be considered as part of this claim.

### 3. Plaintiffs' alleged timely incidents cannot support a hostile work environment claim.

To state a *prima facie* case of hostile work environment harassment under Title VII and NRS Ch. § 613, Plaintiffs bear the burden of showing: (1) they were subjected to unwelcome sexual advances, conduct, or comments; (2) the harassment complained of was based on sex; and

(3) the harassment was so severe or pervasive as to alter the conditions of each plaintiff's employment and create an abusive work environment. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *see also Vasquez v. City of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan. 2, 2004).

"Hostile behavior that does not bespeak an unlawful motive cannot support a hostile work environment claim." *Candelore v. Clarke Cty. Sanitation Dist.*, 752 F. Supp. 956, 961 (D. Nev. 1990) (quoting *Miller v. Aluminum Co.*, 679 F. Supp. 495, 502 (W.D. Pa. 1988), *aff'd without opinion*, 856 F.2d 184 (3d Cir. 1988)); *see Herried v. Pierce Cty. Public Transp. Benefit Auth*, 90 Wn. App. 468, 473 (Wash. Ct. App. 1998) ("An employee's conduct that is hostile and intimidating, without more, is not actionable as sexual harassment.") Rather, to prevail on a hostile work environment claim, Plaintiff must show that her "workplace [was] permeated with **discriminatory** intimidation…that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Syst. Inc.,* 510 U.S. 17, 21 (1993) (emphasis added).

"[W]hether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001).

Here, Plaintiffs assert that the following circumstances contributed to a hostile work environment:

- Receiving a memo from Maurice Wooden supporting Steve Wynn on January 26, 2018 or other communications of support;[10]
- Attending a January 17, 2018 pre-shift meeting;[11]
- Attending a January 31, 2018 meeting where Steve Wynn and Maurice

---

[10] ECF No. 106 at ¶ 106 (Judy Doe 1); *id.* at ¶ 141 (Judy Doe 3); *id.* at ¶ 209 (Judy Doe 6); *id.* at ¶ 225 (Judy Doe 7).

[11] ECF No. 106 at ¶ 181 (Judy Doe 5); *id.* at ¶ 209 (Judy Doe 6); *id.* at ¶ 243 (Judy Doe 8).

Wooden spoke;[12]

- A birthday celebration at the Salon on February 1, 2018 where Steve Wynn was present;[13]

- Attending a February 15, 2018 pre-shift meeting;[14]

- Knowing that Steve Wynn continued to receive salon services;[15]

- Attending a March 14, 2018 meeting where Matt Maddox announced he was taking over as Chief Executive Officer of Wynn Resorts, Limited and asked how to help employees;[16]

- Scheduling interviews with Gibson Dunn investigators regarding sexual harassment allegations or participating in investigative interviews;[17]

- Receiving a March 23, 2018 letter from Patricia Mulroy about the company's investigative efforts;[18]

- Inquiries from high level executives and Board members regarding workplace experiences;[19]

- Being contacted by Human Resources to discuss their EEOC Charge;[20]

- Learning another employee's phone was examined;[21]

- Handing out cards with the phone numbers for the Massachusetts Gaming and Nevada Gaming representatives.[22]

Even if every allegation in the list above applied to every Plaintiff (which Plaintiffs do not assert) **and** they occurred within each Plaintiff's respective limitations period (which they do not),

---

[12] ECF No. 106 at ¶ 107 (Judy Doe 1); *id.* at ¶ 121 (Judy Doe 2); *id.* at ¶ 141 (Judy Doe 3); *id.* at ¶ 161 (alleging Judy Doe 4 "heard" about the meeting); *id.* at ¶ 182 (Judy Doe 5); *id.* at ¶ 209. (alleging Judy Doe 6 "heard" about the meeting); *id.* at ¶ 225 (alleging Judy Doe 7 "heard" about the meeting); *id.* at ¶ 245 (Judy Doe 8); *id.* at ¶ 262 (alleging Judy Doe 9 heard about the meeting but did not attend).

[13] ECF No. 106 at ¶ 183-84 (alleging Judy Doe 5 was present, witnessed Steve Wynn kiss someone else, and was forced into a group hug); *id.* at ¶ 225 (alleging Judy Doe 7 "heard" about the celebration); *id.* at ¶ 246 (Judy Doe 8); *id.* at ¶ 263 (alleging Judy Doe 9 saw Steve Wynn being "overly-physical" with other employees).

[14] ECF No. 106 at ¶ 107 (Judy Doe 1); *id.* at ¶ 122 (Judy Doe 2).

[15] ECF No. 106 at ¶ 107 (Judy Doe 1); *id.* at ¶ 163 (Judy Doe 4); *id.* at ¶ 226 (Judy Doe 7).

[16] ECF No. 106 at ¶ 107 (Judy Doe 1); *Id.* at ¶ 185 (Judy Doe 5).

[17] ECF No. 106 at ¶ 107 (Judy Doe 1); *id.* at ¶ 123 (Judy Doe 2); *id.* at ¶ 162 (Judy Doe 4); *Id.* at ¶ 186-87 (Judy Doe 5); *id.* at ¶ 209 (Judy Doe 6); *id.* at ¶ 229 (Judy Doe 7); *id.* at ¶ 247 (Judy Doe 8); *id.* at ¶ 265 (Judy Doe 9).

[18] ECF No. 106 at ¶ 107 (Judy Doe 1); *id.* at ¶ 228 (Judy Doe 7).

[19] ECF No. 106 at ¶ 141 (Judy Doe 3); *id.* at ¶ 251 (Judy Doe 8).

[20] ECF No. 106 at ¶ 167 (Judy Doe 4); *id.* at ¶ 209 (Judy Doe 6).

[21] ECF No. 106 at ¶ 227 (Judy Doe 7); *id.* at ¶ 264 (Judy Doe 9).

[22] ECF No. 106 at ¶ 264 (Judy Doe 9).

these circumstances are not actionable and do not rise to the level of a hostile work environment.

First, Plaintiffs do not show how any of these circumstances were based on sex. These circumstances lack **discriminatory** conduct or **discriminatory** intimidation. Accordingly, they are not actionable.

Further, these allegations do not demonstrate the conduct was severe or pervasive enough to support a hostile work environment claim. For example, being required to attend informational meetings and listen to company communications constitute the ordinary tribulations of a workplace. It is well-established that the severe and pervasive requirement "filter[s] out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language…and occasional teasing." *Faragher*, 524 U.S. at 788 (internal quotation marks omitted).

Even if these meetings and communications contained offhand comments or offensive utterances, they do not qualify as "extreme" conduct that would change the terms and conditions of employment. To find a violation of Title VII, "conduct must be extreme to amount to a change in the terms and conditions of employment" and involve a workplace atmosphere so discriminatory and abusive that it unreasonably interferes with the job performance of those harassed. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998); *see also Fuller*, 47 F.3d at 1527; *see also Brooks v. City of San Mateo,* 229 F.3d 917, 922 (9th Cir. 2000).

Moreover, speech and conduct directed at others such as allegations regarding Steve Wynn receiving Salon services (not from Plaintiffs), hearing about (but not attending) certain meetings, observing Steve Wynn interact with other people, and learning a co-worker's phone was examined is not strong evidence that *Plaintiffs* were subjected to a hostile work environment. *EEOC v. Evans Fruit Co.*, No. CV-10-3033-LRS, 2012 U.S. Dist. LEXIS 169006, at *16-*18, (E.D. Wash. Nov. 27, 2012) (finding that speech and conduct directed at others did not constitute sexual harassment of the plaintiff or alter the terms and conditions of her employment).

At most, these are isolated incidents insufficient to satisfy the "severe or pervasive" element of this claim. "[O]ffhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *See*

*Faragher*, 524 U.S. at 788; *see also Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 67 (1986).

Finally, the Company's investigative efforts and remedial measures in the face of sexual harassment allegations cannot support a hostile work environment. Employers have an obligation to take prompt corrective action that is reasonably calculated to end discriminatory harassment, *which can include investigations. Swenson v. Potter*, 271 F.3d 1184, 1192-93 (9th Cir. 2001). Thus, circumstances including attending the March 14, 2018 meeting where Mr. Maddox announced he was taking over and asked how to help employees, asking employees to participate in investigative interviews about the alleged sexual harassment, receiving the March 23, 2018 letter about the internal investigation into the sexual harassment allegations, inquiries from high level executives regarding workplace experiences, and being contacted by HR to discuss EEOC charges cannot support this claim.

The working environment must be perceived both subjectively and objectively as abusive. *See Fuller v. City of Oakland,* 47 F.3d 1522, 1527 (9th Cir. 1995). Objective hostility is determined by examining the totality of the circumstances and whether a reasonable person with the same characteristics as the victim would perceive the workplace as hostile. *Id*. In sum, a reasonable person would not find these events to be overly frequent, severe, or physically threatening or humiliating, such that it would unreasonably interfere with an employee's work performance.

Accordingly, Plaintiffs claim for hostile work environment should be dismissed as to each Plaintiff.

### C. Plaintiffs' Second Claim for Retaliation Fails to State a Claim Upon Which Relief May Be Granted.

Plaintiffs try to disguise typical workplace activities as adverse actions to convince the Court they have asserted a plausible claim. They have not.

To prevail on a retaliation claim under Title VII and NRS 613.330, each plaintiff must establish: (1) she engaged in a protected activity; (2) she suffered an adverse employment action;

and (3) there is a causal link between the protected activity and the adverse employment action.[23] *Dawson v. Entek*, 630 F.3d 928, 936 (9th Cir. 2011). "Title VII retaliation claims require proof that the desire to retaliate was the ***but-for*** cause of the challenged employment action."[24] *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013) (emphasis added). In other words, retaliation for engaging in a protected activity must be ***the cause***, not simply one of the causes for an adverse action.

### 1. The alleged adverse actions cannot support a retaliation claim.

An "adverse employment action" is "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in a protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000). Plaintiffs allege the following actions taken against them were adverse:

- A town hall meeting conducted by Matt Maddox on March 14, 2018 (ECF No. 106 at ¶ 321)[25];
- Interviews with Gibson Dunn investigators in March 2018 (*Id.* at ¶¶ 52, 321);
- Visits from "Wynn Resorts executives, attorneys and Board members to the Salon" where some questioned Plaintiffs about their experiences (*Id.* at ¶ 321);
- HR questioned some Plaintiffs about their EEOC filings (*Id.* at ¶ 323);
- A town hall meeting conducted by Matt Maddox on May 8, 2018 (*Id.* at ¶ 321);
- Failing to remedy the past by crafting a remedial mechanism to compensate Plaintiffs, which forced them to file a lawsuit (*Id.* at ¶¶ 326, 327, 330).[26]

---

[23] "Temporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." *Bell v. Clackamas Cty.*, 341 F.3d 858, 865 (9th Cir. 2003). However, such cases ". . . uniformly hold that the temporal proximity must be very close." *Breeden*, 532 U.S. at 273 (citing to cases where three- and four-month periods are insufficient to establish causality).

[24] The Court considers NRS § 613.330 claims under the same framework as Title VII claims. *See Pope*, 114 P.3d at 280; *Evans*, 2018 U.S. Dist. LEXIS 49055, at *13 n.12.

[25] At minimum, Judy Does 1, 5 and 7 cannot rely on the March 14, 2018 meeting to support their retaliation claim because they did not file their intake forms with the EEOC until *after* the March 14, 2018 meeting.

[26] Plaintiffs also speculate that additional "unknown acts of retaliation may also exist," ECF No. 106 at ¶ 331, but speculation cannot support a retaliation claim. Speculation is not a well-pled factual allegation allowing the court to draw a reasonable inference that the defendant is liable for the alleged misconduct; rather, it only asserts the mere possibility of misconduct, which is insufficient. *See Iqbal*, 55 U.S. at 678-79.

Although Plaintiffs allege that town hall meetings, WLV's investigation efforts, and failing to craft a remedial mechanism to compensate Plaintiffs were retaliatory, none of these acts or omissions qualify as adverse employments actions.

### a.  Meetings

Required work meetings, "bruised egos," and public humiliation cannot be adverse employment actions. *McCaw v. Potter*, No. 2:04-CV-878-RLH-RJJ, 2006 U.S. Dist. LEXIS 61774, at *18-19 (D. Nev. Aug. 28, 2006). For example, in *McCaw*, an employer required the plaintiff's attendance at a training session on assaults and threats in the workplace, which the plaintiff believed was designed to embarrass, humiliate, and attack her based on comments made during the session that were seemingly directed at her. *Id.* The *McCaw* court found that although the plaintiff may have felt humiliated and embarrassed, the training session's circumstances were not severe or pervasive but rather the result of reasonable and legitimate employment concerns. *Id.* at *19-*20. Thus, the *McCaw* plaintiff did not identify an adverse employment action and could not support a retaliation claim. *Id.*

Here, Plaintiffs allege that Matt Maddox held two town hall meetings for WLV employees on March 14, 2018 and May 8, 2018. Even if the meetings were mandatory, Plaintiffs believed comments were directed at them, and/or they felt "uneasy" or "uncomfortable" with the meetings, Plaintiffs have not and could not allege that the meetings contained any severe or pervasive conduct. *See* ECF No. 106 at ¶¶ 55, 62. Rather, like the *McCaw* employer where it held a training session as a result of reasonable and legitimate employment concerns regarding assaults and threats in the workplace, as alleged, WLV held the town hall meetings for all WLV employees for reasonable and legitimate employment purposes (i.e., to introduce Mr. Maddox and address employee concerns in the wake of Steve Wynn's publicized departure from Wynn Resorts, Limited.) *See* ECF No. 106 at ¶ 55 ("Mr. Maddox said he was 'taking over.' He asked, 'How can we help you.'") Thus, the town hall meetings cannot constitute adverse employment actions and cannot support a retaliation claim.

### b.  Investigation activities

Employers have an obligation to take prompt corrective action that is reasonably

calculated to end discriminatory harassment, and the most significant immediate measure an employer can take is to launch a prompt investigation to determine whether a harassment complaint is justified. *Swenson*, 271 F.3d at 1192-93. Thus, addressing an employee's discrimination complaint does not rise to the level of an adverse employment action. *See Novak-Scott v. City of Phx.*, No. CV 05-3147-PHX-JAT, 2008 U.S. Dist. LEXIS 31118, at *12-*14 (D. Ariz. Apr. 14, 2008).

Moreover, an employee's decision to report discriminatory behavior does not shield the employee from the kind of minor inconveniences that one might expect to endure in the context of a sexual-harassment investigation. *Id.* at *9-*15. Minor inconveniences may include others learning that an investigation is taking place, gossip about the investigation, and an investigator's questions about the circumstances of the alleged harassment inclusive of sensitive topics. *Id.*

Here, Plaintiffs allege that they participated in mandatory meetings with investigatory counsel, coworkers knew who was being interviewed by investigatory counsel, human resources personnel attempted to interview some of the Plaintiffs following their initial intake with the EEOC, and management asked questions about Plaintiffs' "experiences." ECF No. 106 at ¶¶ 52, 53, 63, 84, 321, 323. However, these are exactly the kind of minor inconvenience Plaintiffs might expect to endure while WLV investigated the Plaintiffs' harassment complaints, and they allege no facts that their fear of retaliation would change this analysis. *Safran v. United Health Prods.*, No. 2:18-cv-00158-JAD-DJA, 2020 U.S. Dist. LEXIS 93632, at *9 (D. Nev. May 28, 2020) (granting summary judgment in favor of an employer on a retaliation claim reasoning that amorphous threats or false rumors are not adverse employment actions); *Creamer v. Cty. of Kauai*, No. 16-00648 HG-KJM, 2018 U.S. Dist. LEXIS 119857, at *16-17 (D. Haw. July 18, 2018) (citing *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998)) ("Threats of disciplinary action do not constitute an adverse employment action.") Thus, WLV's investigatory efforts as alleged cannot be adverse employment actions.

### c. Remedial mechanism

Plaintiffs further allege that failing to craft a remedial mechanism to compensate Plaintiffs thereby forcing them to engage in an EEOC process and file a lawsuit is an act of retaliation. *See*

ECF No. 106 at ¶ 326, 327, 330. However, an employer's adverse action must be "reasonably likely to deter the charging party or others from engaging in a protected activity." *Ray*, 217 F.3d at 1244. Rather than deterring Plaintiffs from engaging in a protected activity, Plaintiffs allege that WLV's failure to craft a remedial mechanism to compensate Plaintiffs *encouraged* them to engage in protected activities like filing charges with the EEOC and filing lawsuits. Thus, Plaintiffs cannot support a retaliation claim on this basis.

Ultimately, "[a]n employer's legitimate effort to deal with a traumatic workplace situation…cannot be the basis for a retaliation claim under Title VII," and WLV's response to publicized accusations of sexual harassment in which it held informational meetings and investigated the allegations cannot be a basis for retaliation here. *See Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000).

### d. Possible surveillance of former or current salon employees

Plaintiff also allege they "may" have been the subject of surveillance. "During the Massachusetts Gaming Commission hearings on April 2, 3, and 4, 2019, Defendants disclosed that that (sic) back in 2018, some Salon employees, past and present, were secretly surveilled by Defendants." ECF No. 106, ¶ 331.

First, speculation that they "may" have been surveilled is not a well-pled factual allegation allowing the court to draw a reasonable inference that WLV is liable for the alleged misconduct; rather, it only asserts the mere *possibility* that "some Salon employees" (not specifically Plaintiffs) may have been surveilled, which is insufficient. *See Iqbal,* 55 U.S. at 678-79.

Second, the Exhibits to Plaintiffs' Second Amended Complaint contradict their assertion that they "may" have been surveilled. The 4/30/2019 Massachusetts Gaming Commission Decision and Order states, "At some point during this time, Mr. Maddox and Ms. Sinatra approved the request of James Stern, (then-Executive Vice President of Corporate Security and Investigations) to conduct undercover surveillance of the named source in the WSJ article. They ceased those efforts after the IEB expressed concern over the possible chilling effect on witnesses." ECF No. 106-3 at MGC0536. Plaintiffs do not plead nor assert they were the "named source" in the Wall Street Journal article published on January 27, 2018. Moreover, the Plaintiffs

clearly understand Jorgen Nielsen was the "named source" of the article as they have asserted that Steve Wynn filed legal action against Mr. Nielsen for statements he made in the article. ECF No. 20 at p.4, lines 1-5. Thus, the allegation that "some Salon employees were secretly surveilled," ECF No. 106 at ¶ 331, cannot support their attempt to plead a plausible adverse action.

### 2.   *A causal connection does not exist between the protected activities and the alleged adverse employment actions.*

Plaintiffs fail to allege facts showing a causal connection between their contact with the EEOC (the alleged protected activity, ECF No. 106 at ¶ 314, 319, 321) and WLV's allegedly retaliatory actions. Thus, this claim fails. Even if Plaintiffs alleged a causal connection, Plaintiffs do not allege they were each subject to every adverse action.

Importantly, employers must have a desire to retaliate against an employee because the employee engaged in a protected activity. Thus, employers must **know** that an employee engaged in a protected activity to take a retaliatory action against her. Accordingly, allegedly adverse actions that occurred before a Plaintiff contacted the EEOC cannot support a retaliation claim as to that Plaintiff. For example, Judy Does 1, 5, and 7 contacted the EEOC *after* the March 14, 2018 meeting, and therefore cannot use the March 14, 2018 meeting to support their retaliation claim because it occurred before they engaged in a protected activity. ECF No. 106 at ¶¶ 109 (Judy Doe 1), 230 (Judy Doe 7), 321, Ex. E.

Accordingly, because Plaintiffs failed to allege adverse actions and a causal connection to support their Second Claim for Retaliation, the claim should be dismissed in its entirety.

### D.   **Plaintiffs' Third Claim for Relief for Negligent Hiring, Training, Supervision, and Retention Fails to State A Claim Upon Which Relief May Be Granted.**

### 1.   ***Plaintiffs' attempt to plead a claim based on untimely allegations and without pleading specific harm or injury to each Plaintiff within the statute of limitations period is fatal to this Claim.***

To succeed on this claim, a plaintiff must establish that: (1) defendant owed a duty of care to the plaintiff; (2) defendant breached that duty by hiring, retaining, training, and/or supervising an employee even though defendant knew or should have known of the employee's dangerous propensities; (3) the breach caused the plaintiff's injuries; and (4) damages. *Id*. "[T]he plaintiff

must allege facts specifically indicating how the employer violated this duty." *Colquhoun v. BHC Montevista Hospital, Inc.*, No. 2:10-cv-0144-RLH-PAL, 2010 U.S. Dist. LEXIS 57066, at \*10 (D. Nev. June 9, 2010) (citing *Burnett v. C.B.A. Sec. Serv.*, 107 Nev. 787, 789, 820 P.2d 750, 752 (1991)).

"Claims for negligent training and supervision are based upon the premise that an employer should be liable when it places an employee, who it knows or should have known behaves wrongfully, in a position in which the employee can harm someone else." *Okeke v. Biomat USA, Inc.*, 927 F. Supp. 2d 1021, 1028 (D. Nev. 2013) (citing *Daisley v. Riggs Bank, N.A.,* 372 F. Supp. 2d 61, 79 (D.D.C. 2005)). However, "[a]n employee's wrongful behavior does not in and of itself give rise to a claim for negligent training and supervision." *Id.* (citing *Colquhoun*, 2010 U.S. Dist. LEXIS 57066, at \*10). The employer's negligence must cause the employee's injury. *See, e.g., Cranford v. Underhill*, No. 03:06-CV-00111-LRH-GWF, 2008 U.S. Dist. LEXIS 57211, at \*19 (D. Nev. July 26, 2008) ("In order for an employer to be liable for negligent hiring, there must be evidence that the employer's negligence caused the alleged injury.").

Plaintiffs' Claim is subject to a two-year statute of limitations based on the filing of the original complaint on September 30, 2019. NRS 11.190(4)(e); ECF No. 1. Thus, Plaintiffs must plead alleged negligent acts that caused them actual injury on or after September 30, 2017. *Gayler v. Nevada*, No. 2:17-cv-00431-JCM-VCF, 2021 U.S. Dist. LEXIS 227849 at \*5-6 (D. Nev. Nov. 29, 2021) (striking from consideration all plaintiff's allegations of individual instances of conduct occurring outside of the limitations period).

Ignoring the statute of limitations, Plaintiffs' premise this Claim almost exclusively on alleged incidents that occurred *prior to* September 30, 2017 (outside the limitations period); and none of the allegations identify conduct directed at Plaintiffs that caused them actual harm. ECF No. 106 at ¶¶ 337-343, 347-348. Plaintiffs' assert WLV breached its duty to "Salon employees (including Plaintiffs)" by "hiring incompetent, unqualified, poorly trained executives and human resources personnel or by hiring HR personnel who have personal and/or family connections to Steve Wynn." *Id.* at ¶ 337, 340.

Plaintiffs also allege that, "Management and HR personnel failed to prevent Steve Wynn's years of predatory sexual harassment, failed to investigate and remedy it even after numerous occurrences and millions in settlements, and allowed additional victims to be mistreated, and thus putting each of the Plaintiffs and their co-workers at risk." *Id.* Plaintiffs further allege that it was negligent to retain Steve Wynn, not require him to participate in sexual harassment prevention training, and not investigate employee complaints raised about sexual harassment or assault. ECF No. 106 at ¶¶ 343, 347.

Without identifying specific negligent acts that caused each Plaintiff actual harm, Plaintiffs simply assert the "Evidence of Defendants' negligence is found in the Mass Gaming Commission Decision and Order." ECF 106-3 at MGC 0577. However, the MGC Order is devoid of any mention of Plaintiffs, let alone any findings of negligent acts by Defendant that caused Plaintiffs any harm. Plaintiffs' reliance on allegations of sexual harassment or assault that occurred between 2005-2016 to others, as discussed in the MGC Records (*id.* at ¶338, 339; ECF No. 106-2 and 106-3) reveals Plaintiffs' lack sufficient grounds to assert this claim.

Plaintiffs cannot rely on alleged incidents prior to the two-year statute of limitations period, and thus, WLV's alleged negligence based on "Steve Wynn's years of predatory sexual harassment" should be stricken from consideration. *Gayler*, 2021 U.S. Dist. LEXIS 227849 at *5-6. In addition, any allegations regarding the negligent hiring, training, supervision, and retention of Mark Shorr (sic) and Doreen Whennon (sic), should not be considered as part of this claim because they are no longer employed by either Defendant effective 2013 and 2014, respectively, which is well outside of the limitations period. *See* ECF No. 106-2 at MGC 0029. Thus, these allegations are untimely, unrelated to the Plaintiffs, and should not be considered as part of this claim. *See Gayler*, 2021 U.S. Dist. LEXIS 227849 at *5-6.

The only timely allegations plead of conduct directed at some of the Plaintiffs are:

> 344. In early 2018, that corporate negligence continued, by executives (Wooden, Maddox, Sinatra, Mitchum) and Board members making public proclamations of support for Steve Wynn (in letters, memos, and in meetings) in response to the media reports of his misconduct, including the Wooden and Mulroy letters, and the Board's proclamations upon Steve Wynn's resignation.
>
> 345. The lack of HR competence is set forth in the Mass Gaming Commission

> 3/15/19 Investigative Report's discussion of the Gibson Dunn report and its findings of HR deficiencies along with their (Mass Gaming's) concerns based on their interview of Defendant's HR Director Troy Mitchum. See generally, Ex. 2, MGC 0163-0183.

*Id.* at ¶¶ 344-346.

Nonetheless, Plaintiffs fail to allege the hiring, training, supervision or retention of *specific* members of management and/or Human Resources resulted in any harm that is *specific to any individual Plaintiff* within the two-year statute of limitation. *Id.* at ¶¶ 335-352. With respect to injury or harm, Plaintiffs merely state that "as a direct and proximate result of Defendants' aforementioned negligent actions, Plaintiffs have sustained injuries, including mental anguish, in a sum in excess of $15,000," which is a bare recitation of the *prima facie* element of the cause of action.

Finally, Plaintiffs plead generally that "Defendants' negligent hiring, training, supervision, and retention of employees includes their awareness and collective failure to act" and breach of "their duty to provide a safe work environment and premises for employees by placing spa and Salon employees in vulnerable and unsafe situations in non-public hotel rooms." *Id.* at ¶¶ 349-350. However, Plaintiffs do not plead the date and factual circumstances to demonstrate that any of the Plaintiffs provided Salon services to hotel guests, in a guest room, during which they were in any way harmed or injured within the statute of limitations period, or that it was reported by Plaintiffs to their employer. Moreover, Paragraphs 349-350 of the Second Amended Complaint refer only to "employees" and not to "Plaintiffs."

Simply stated, Plaintiffs do not plead that any of them were specifically harmed or injured, during the applicable two-year statute of limitations period, while providing Salon services to a guest in a guest room. *Id. See, e.g., Cranford v. Underhill*, No. 03:06-CV-00111-LRH-GWF, 2008 U.S. Dist. LEXIS 57211, at *19 (D. Nev. July 26, 2008) ("In order for an employer to be liable for negligent hiring, there must be evidence that the employer's negligence **caused** the alleged **injury**." (emphasis added)).

Accordingly, this claim should be dismissed.

### 2. Plaintiffs' claim for negligent hiring, training, supervision, and retention is preempted.

Plaintiffs have merely recast their hostile work environment and retaliation claims as a claim for negligent hiring, training, supervision, and retention. Thus, this claim is preempted by NRS § 613.310. This Court and the Nevada Supreme Court have held that NRS § 613.330 et seq. "provides the **exclusive remedy for tort claims** premised on illegal employment practices." *Schaefer v. Diamond Resorts Int'l Mktg.*, No. 2:14-cv-01900-GMN-CWH, 2015 U.S. Dist. LEXIS 55511, at *17-18 (D. Nev. Apr. 28, 2015) (emphasis added); *Brinkman v. Harrah's Operating Co., Inc.*, 2008 U.S. Dist. LEXIS 123992, at * 5 (D. Nev. Oct. 16, 2008); *D'Angelo v. Gardner*, 107 Nev. 704, 710 n.10 (1991) ("no *additional* court-created remedies . . . arise out of age-based wrongful discharge for which tort recovery is available by statute."). Thus, this claim should be further dismissed as preempted.

### E. Plaintiffs' Fourth Claim for Relief for Intentional Infliction of Emotional Distress ("IIED") Fails to State A Claim Upon Which Relief May Be Granted.

#### 1. Statute of Limitations Applicable to Plaintiff's IIED Claim.

The statute of limitations for an IIED claim is two years. *Pierson v. Storey Cty.*, No. 3:12-cv-00598-MMD-VPC, 2013 U.S. Dist. LEXIS 169272, at *13 (D. Nev. Nov. 27, 2013). Any claims predicated on Steve Wynn's alleged sexual harassment towards Plaintiffs or others while they provided him with in-room services are untimely and must be dismissed. *See, e.g.,* ECF No. 106 at ¶ 295 ("In summary, in 2004 through 2013, most of the Plaintiffs were subjected to offensive verbal or physical conduct…by Steve Wynn"); *id.* at ¶¶ 354, 356 (Steve Wynn was…allowed to intimidate and/or pay off those claims that surfaced as is more fully detailed in the Massachusetts Investigative Report); ECF No. 106 at Ex. 2 (referencing Wynn's misconduct against non-Plaintiff employees in the Massachusetts Investigative Report from 2005 to 2015).

#### 2. Plaintiffs' IIED claim is barred by the Nevada Industrial Insurance Act (NIIA).

It is well established the NIIA provides the exclusive remedy for work-related injuries:

> [t]he rights and remedies provided in [the NIIA] for an employee on account of an injury by accident sustained arising out of and in the course of employment shall be exclusive . . . of all other rights and remedies of the employee, . . . , at common law or otherwise, on account of such injury.

NRS 616A.020(1). Outside of the NIIA, "an employer is immune from suit by an employee for injuries 'arising out of and in the course of employment.'" *Wood v. Safeway, Inc.*, 121 Nev. 724, 732, 121 P.3d 1026, 1031 (2005) (quoting NRS 616A.010(1)). "An injury is said to arise out of one's employment when there is a causal connection between the employee's injury and the nature of the work or workplace." *Id.* at 1032.

Here, Plaintiffs cannot avoid the exclusive remedy of the NIIA. *Flint v. Franktown Meadows, Inc.*, 449 P.3d 475, 2019 Nev. Unpub. LEXIS 1061 (Nev. 2019) (unpublished) (holding claims of assault, battery and intentional infliction of emotional distress were barred by the NIIA where plaintiff alleged co-worker sexual assaulted her, and that the company's owners and senior executives knew about it but did nothing to stop it); *Wood v. Safeway, Inc.,* 121 Nev. 724, 121 P.3d 1026, 1028 (2005)(court expressly "adopt[ed] the rule that the sexual assault of an employee falls within the NIIA if the nature of the employment contributed to or otherwise increased the risk of assault beyond that of the general public."); *Young v. Zappos.com, Inc.*, No. 2:08-CV-741 JCM (PAL), 2010 U.S. Dist. LEXIS 38854, at *11-12 (D. Nev. Apr. 19, 2010).

Plaintiffs allege that Steve Wynn's misconduct and WLV's actions and inactions occurred in the context of Plaintiffs' employment while they were acting in the course and cope of their employment. *See* ECF No. 106 at ¶ 354-62. Like the plaintiffs in *Wood* and *Young*, Plaintiffs were exposed to Steve Wynn and various other employees (e.g., Matt Maddox and Claude Baruk) solely by virtue of their employment with Defendant WLV.

In addition, Plaintiffs "faced a much greater risk" of sexual harassment than that of the general public because of their employment. *Young*, 2010 U.S. Dist. LEXIS 38854, at *11. Indeed, but for their employment with WLV, there is no allegation that they would have otherwise encountered Mr. Wynn or any of the other employees.[27] Accordingly, Plaintiffs' Fourth Claim for

---

[27] This case does not implicate the exception to NIIA preemption where "the animosity of the dispute which culminates in the assault is imported into the place of employment from the injured employee's private or domestic life, … at least where the animosity is not exacerbated by the employment." *Wood*, 121 Nev. at 736. Plaintiffs have not alleged that there was some dispute between them, Steve Wynn or the other employees of WRL and WLV that originated outside of the workplace and was carried over into the workplace.

IIED is preempted by the NIIA and must be dismissed.

### 3. Plaintiffs' Fail to State a Claim for IIED.

To state a claim for IIED, a plaintiff must allege *facts* showing: (1) defendant's conduct was extreme and outrageous; (2) defendant either intended or recklessly disregarded the causing of emotional distress; (3) plaintiff actually suffered severe or extreme emotional distress; and, (4) defendant's conduct actually or proximately caused the distress. *Star v. Rabello*, 97 Nev. 124, 125, 625 P.3d 90, 92 (1981); *Nelson v. Nelson*, 99 Nev. 548, 555, 665 P.2d 1141, 1145 (1983). In addition to these individualized requirements, a "plaintiff is required to demonstrate that he or she has suffered some physical manifestation of emotional distress in order to support an award of emotional damages." *Russo v. Clearwire*, 2:12-CV-01831-PMP-VCF, 2013 U.S. Dist. LEXIS 61440, at *4 (D. Nev. Apr. 30, 2013) (citation omitted).

### a. <u>Plaintiffs' IIED claim is merely a harassment claim with a different title, and thus, is preempted.</u>

Plaintiffs have simply taken the allegations offered in support of their hostile work environment and retaliation claims and recast them as the foundation of their IIED claim, which is insufficient to state a viable claim. "In order for a plaintiff to survive a motion to dismiss an [IIED] claim the complaint must allege conduct that goes beyond that of a run of the mill harassment or discrimination claim." *Roche v. Audio Visual Servs. Grp.*, No. 2:09-cv-01810-LDG-GWF, 2010 U.S. Dist. LEXIS 77932, at *5 (D. Nev. July 28, 2010).

Because Plaintiffs' allegations in support of their IIED claim are the same alleged illegal employment practices underlying Plaintiffs' Title VII claim, the IIED claim is preempted by NRS § 613.310. This Court and the Nevada Supreme Court have held that NRS § 613.330 et seq. "provides the **exclusive remedy for tort claims** premised on illegal employment practices." *Schaefer v. Diamond Resorts Int'l Mktg.*, No. 2:14-cv-01900-GMN-CWH, 2015 U.S. Dist. LEXIS 55511, at *17-18 (D. Nev. Apr. 28, 2015) (dismissing IIED claim in sexual harassment case based on comprehensive statutory remedy under Nevada law); *Brinkman v. Harrah's Operating Co., Inc.*, 2008 U.S. Dist. LEXIS 123992, at * 5 (D. Nev. Oct. 16, 2008); *see Sands v. Regent*, 105 Nev. 436, 440, 777 P.2d 898, 900 (1989) ("the Legislature has addressed the gravity of violating

Nevada's public policy against age discrimination by defining the extent of the remedy available to parties injured by such discrimination."); *D'Angelo v. Gardner*, 107 Nev. 704, 710 n.10 (1991) ("no *additional* court-created remedies . . . arise out of age-based wrongful discharge for which tort recovery is available by statute.").

> **b.** **Plaintiffs cannot demonstrate Defendants engaged in "extreme and outrageous" conduct.**

Plaintiffs' allegations of "extreme and outrageous" conduct are wholly inadequate. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 992 (9th Cir. 1991). "Conduct is extreme or outrageous if it is atrocious, beyond all possible bounds of decency, and utterly intolerable in a civilized community." *Long v. Las Vegas Valley Water Dist.*, No. 2:15-CV-210 JCM (VCF), 2015 U.S. Dist. LEXIS 133978, at *9 (D. Nev. Oct. 1, 2015) (citing *Welder v. Univ. of So. Nevada*, 833 F. Supp. 2d 1240, 1245 (D. Nev. 2011)). However, "[l]iability for emotional distress generally does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Heyman v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, No. 2:15-cv-1228-APG-GWF, 2019 U.S. Dist. LEXIS 39375, at *27 (D. Nev. Mar. 12, 2019). Indeed, "persons must necessarily be expected and required to be hardened to occasional acts that are definitely inconsiderate and unkind." *Maduike v. Agency Rent—A—Car*, 114 Nev. 1, 953 P.2d 24, 26 (1998).

The standard to show "extreme and outrageous" conduct is high. For example, in *Olivero v. Lowe*, the Nevada Supreme Court found a defendant's actions were extreme and outrageous when he brandished a gun at the plaintiff, punched him in the face, pointed the gun at plaintiff's head while threatening to take his life and forced him to dismantle some of his construction work at gunpoint, all without apparent provocation. *Olivero v. Lowe*, 116 Nev. 395, 995 P.2d 1023, 1026 (2000).

On the other hand, negligence in supervising and training executives, failing to adequately investigate discrimination complaints, and other personnel management activities do not constitute extreme and outrageous conduct because they do not constitute conduct that goes "beyond all bounds of human decency." *See Walker v. Venetian Casino Resort, LLC*, 02:10-CV-00195-LRH-VCF, at *21-22 (D. Nev. Oct. 3, 2012); *see also e.g.*, *Robinson v. Renown Reg'l Med.*

*Ctr.*, No. 3:16-cv-00372-MMD-WGC, 2017 U.S. Dist. LEXIS 105937, at *8 (D. Nev. July 10, 2017) (dismissing an IIED claim after concluding that "[w]hile illegal discrimination is offensive conduct, the claim for intentional infliction of emotional distress requires more than conduct taken during the normal course of the employment relationship."); *Hoffman v. Red Wing Brands of Am., Inc.*, No. 3:13-cv-0633-LRH-VPC, 2015 U.S. Dist. LEXIS 82741, at *38 (D. Nev. June 24, 2015) (evidence that a supervisor engaged in sexual acts with another female employee and faced prior sexual harassment allegations was not evidence that supervisor engaged in extreme and outrageous conduct toward plaintiff).

Here, Plaintiffs' allegations fail to rise to the standard of extreme and outrageous conduct. Plaintiffs' only potentially timely allegations are: (1) Steve Wynn was not required to undergo sexual harassment prevention training; (2) allegations of possible sexual harassment were not investigated; (3) Defendants supported Steve Wynn via public proclamations; (4) Defendants allowed Steve Wynn and Matt Maddox to lead meetings; (5) Defendants allowed Steve Wynn to attend an employee birthday party with a camera crew; (6) Defendants allowed Claude Baruk to pressure employees into recording positive statements about Steve Wynn and claim that Steve Wynn never assaulted or harassed them; and (7) Defendants arranged interviews for salon employees through Claude Baruk and subjected them to interviews about their experiences regarding Steve Wynn. ECF No. 106 ¶¶ 355, 357-63.

However, failing to train executives like Steve Wynn and failing to investigate sexual harassment complaints do not constitute extreme and outrageous conduct. *Walker*, 02:10-CV-00195-LRH-VCF, at *21-22. Further, "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" such as going to meetings, seeing other people like Steve Wynn, Matt Maddox, or Claude Baruk in large groups, and being asked to record statements, cannot constitute extreme and outrageous conduct.

Finally, Plaintiffs paradoxically complain that Defendants did not investigate sexual harassment allegations while simultaneously alleging that Defendants engaged in extreme and outrageous conduct by arranging investigative interviews with employees "about their experiences as victims of Steve Wynn's abuse." Regardless, the investigative interviews cannot

support an IIED claim where investigations can be part of the normal course of an employment relationship. *See* ECF No. 106 at ¶¶ 355, 358, 362; *Robinson v. Renown Reg'l Med. Ctr.*, No. 3:16-cv-00372-MMD-WGC, 2017 U.S. Dist. LEXIS 105937, at *8 (D. Nev. July 10, 2017) (dismissing an IIED claim after concluding that "[w]hile illegal discrimination is offensive conduct, the claim for intentional inflict of emotional distress requires more than conduct taken during the normal course of the employment relationship.")

Further, Plaintiffs cannot rely on Defendant's alleged failures to address and remedy past acts of discrimination or harassment to support their claims of extreme and outrageous conduct. [28] *Kraja v. Bellagio, LLC*, 202 F. Supp. 3d 1163, 1174 (D. Nev. 2016) (holding the employer's failure to address past acts of discrimination were not acts "outside all possible bounds of decency" or "utterly intolerable in a civilized community.").

### c.   Plaintiffs cannot demonstrate Defendants intended to or recklessly disregarded the risk of causing them emotional harm.

Plaintiffs' claim does not contain sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Plaintiffs assert as a conclusion: "As set forth above, as evidenced by [alleged extreme and outrageous conduct], Defendants either intended or acted with reckless disregard, about whether their actions would cause emotional distress to Plaintiffs." ECF No. 106 at ¶ 363.

However, asserting that allegedly extreme and outrageous conduct occurred (the first element of an IIED claim) is not the same as alleging *facts* showing Defendants either had the *intent* to or *recklessly disregarded* the causing of emotional distress (the second element of an IIED claim). In its current form, the allegation is nothing more than formulaic recitation of the

---

[28] *See, e.g. Williams v. Community Solutions*, 932 F. Supp. 2d 323, 337-38 (D. Conn. 2013) (holding that insufficient investigation of claims of sexual harassment were insufficient to support IIED claims and collecting cases); *Kilduff v. Cosential, Inc.*, 289 F.Supp.2d 12, 22 (D. Conn. 2003) (dismissing IIED claims against CEO who failed to act in response to plaintiff's complaint detailing ongoing, serious sexual harassment by her supervisor because, whether "[c]haracterized as either a failure to respond or to prevent, or choosing to ignore, such conduct does not rise to the level of extreme and outrageous behavior") (internal quotation marks omitted); *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 492 (S.D.N.Y. 1999) (finding that "even if [the employer] failed to adequately respond to [the plaintiff's] reports of harassment and discharged her based on a retaliatory motive, such action is not sufficient to meet the high threshold of extreme and outrageous conduct").

elements of the second prong of an IIED claim that is ripe for dismissal. *Brigance v. Nevada*, No. 2:17-CV-250 JCM (GWF), 2018 U.S. Dist. LEXIS 94256, at *14 (D. Nev. June 5, 2018) (granting judgment for defendant where plaintiff failed to present evidence that defendants "intentionally or recklessly disregarding the causing of distress"); *Zermeno v. Stratosphere Corp.*, No. 07-CV-00581-KJD-LRL, 2010 U.S. Dist. LEXIS 54228, at *15 (D. Nev. June 2, 2010) (granting judgment in defendant's favor where plaintiff failed to provide any facts showing that Defendant "intended or recklessly disregarded the causing of emotional distress").

### d.  Plaintiffs cannot demonstrate they suffered severe distress.

Plaintiffs fail to sufficiently plead they suffered severe or extreme emotional distress caused by Defendant. A plaintiff "must demonstrate that the stress is so intense that no reasonable person could be expected to endure it—general physical or emotional discomfort is insufficient." *Watson v. Las Vegas Valley Water Dist.*, 378 F. Supp. 2d 1269, 1279 (D. Nev. 2005). A plaintiff is required to "demonstrate that he or she has suffered some physical manifestation of emotional distress in order to support an award of emotional damages." *Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 933 (D. Nev. 2010). Here, Plaintiffs state that they suffered "increased anxiety, a generalized heightened fear of going into work, and panic." ECF No. 106 at ¶ 364. This allegation fails to allege a physical manifestation of distress and merely alleges emotional discomfort, which is not sufficient to satisfy the third element of an IIED claim.

Thus, Plaintiffs have failed to sufficiently please this claim and it should be dismissed.

### F.  Plaintiffs' Fifth Claim for False Imprisonment Fails to State A Claim Upon Which Relief May Be Granted.

#### 1.  *The claim is untimely.*

Plaintiffs, for the first time, asserted a claim of false imprisonment in their Second Amended Complaint on February 2, 2022. (ECF No. 106) Thus, events that occurred prior to February 2, 2020, cannot support a false imprisonment claim as beyond the two-year statute of limitations. NRS 11.190(4)(c) (establishing a two-year statute of limitations for actions "for libel, slander, assault, battery, false imprisonment or seduction").

In support of their false imprisonment claims, Plaintiffs allege that Judy Does 1, 2, 3, 5, and 8 were summoned to a mandatory meeting on January 31, 2018 and that Judy Does 1, 2, 3, 4,

1  5, 6, 8, and 9 were required to attend meetings and interviews in their workplace in 2018. *See*

2  ECF No. 106 at ¶¶ 368, 376. Because all of these events occurred prior to February 2, 2020,

3  Plaintiffs' false imprisonment claims are untimely and should be dismissed.

4  ### 2.   *The claim fails as a matter of law.*

5  Even if this claim were timely (which it is not), Plaintiffs' claim is meritless because they

6  characterize workplace meetings as "false imprisonment" without asserting any threat or use of

7  force to establish confinement. "In order to state a *prima facie* claim for false imprisonment,

8  plaintiff must show (1) defendant intended to confine plaintiff within boundaries fixed by

9  defendant, (2) defendant's act directly or indirectly results in such a confinement of plaintiff, and

10  (3) plaintiff is conscious of the confinement or is harmed by it." *Pitti v. Albertsons, Inc.*, No. 2:11-

11  cv-00280-MMD-CWH, 2012 U.S. Dist. LEXIS 73638, at *10-11 (D. Nev. May 29, 2012) (citing

12  *Hernandez v. City of Reno*, 97 Nev. 429, 634 P.2d 668, 671 (Nev. 1981)).

13  An individual's "submission to the mere verbal direction of another, unaccompanied by

14  force or threats of any character, does not constitute false imprisonment." *Lerner Shops of*

15  *Nevada, Inc. v. Marin*, 83 Nev. 75, 423 P.2d 398, 400 (Nev.1967); *see also Miller v. CVS*

16  *Pharmacy, Inc.*, 779 F. Supp. 2d 683, 691 (E.D. Mich. 2011) (finding that an employee was not

17  falsely imprisoned when she voluntarily accompanied two managers described as "big people"

18  into an office, there was "not enough room to get up," and the managers remained seated during

19  the meeting, never raised their voices, never touched or threatened to touch her, never told her

20  that she could not leave the room, and never took any affirmative steps to prevent her from

21  getting up and leaving the room.)

22  Plaintiffs' claim is incredible because attending work meetings in a specific space at an

23  employer's direction *even under the threat of job loss* is not a form of false imprisonment. *See*

24  *Moen v. Las Vegas Int'l Hotel,* 90 Nev. 176, 177, 521 P.2d 370, 371 (1974) ("Apprehension that

25  one might in the future lose one's job…is not force or the threat of force which is necessary to

26  establish false imprisonment."); *Leslie v. Las Vegas Metro. Police Dep't*, No. 2:14-cv-01430-JAD-

27  VCF, 2015 U.S. Dist. LEXIS 170154, at *18-20 (D. Nev. Dec. 18, 2015) (finding that an

28  employer's threat to fire an employee was insufficient to establish false imprisonment because it

lacked the force or threat of force that would confine her to the building).

Moreover, employees must, in fact, be confined to a fixed area; pushing an employee in a certain direction, blocking a door, and telling an employee not to leave the premises are not sufficient to confine an employee to a fixed area if they can still voluntarily leave the area. *See Leslie,* 2015 U.S. Dist. LEXIS 170154, at *18-20.

Judy Does 1, 2, 3, 5, and 8 allege they were summoned to a mandatory meeting on January 31, 2018 where they "reasonably believed they were not allowed to leave" and "felt they could not leave." ECF No. 106 at ¶¶ 369, 373. In fact, Judy Doe 6 alleges that she chose not to attend the meeting because "she did not want to be seen to be supporting Steve Wynn" and Judy Doe 9 chose not to attend because she believed it would be "lies." *Id.* at ¶¶ 209(b), 262. Moreover, there are no allegations that anyone took affirmative steps to prevent Judy Does 1, 2, 3, 5, and 8 from getting up and leaving the room (i.e., there is no allegation they were forced into the room, touched, threatened, blocked from leaving the room, or told that they could not leave). Thus, Judy Does 1, 2, 3, 5, and 8 failed to establish a claim for false imprisonment regarding the January 31, 2018 meeting.

In addition, Judy Does 1, 2, 3, 4, 5, 6, 8, and 9 allege that they were "required or trapped in their workplace" because they were required to attend meetings by HR and told to report to another room for an interview. ECF No. 106 at ¶ 376. Although Judy Does 1, 2, 3, 4, 5, 6, 8, and 9 allege the meetings were convened in a manner that made them "feel trapped," there is again no indication that they were, in fact, confined, physically forced or threatened with force to attend the meetings or interviews. Moreover, Judy Doe 8 states although she was told to meet with Gibson Dunn investigators, "[s]he declined to be interviewed." *Id.* at ¶ 247.[29] Thus, Judy Does 1, 2, 3, 4, 5, 6, 8, and 9 failed to establish a claim for false imprisonment regarding the interviews.

---

[29] Further, although Plaintiffs allege that "as set forth in their individual sections," Judy Does 1, 2, 3, 4, 5, 6, 8, and 9 were required to attend additional meetings and interviews, there are no additional allegations of meetings and interviews in Judy Doe 3's individual section.

**G. Plaintiffs' Sixth Claim for Relief for Invasion of Privacy Fails to State A Claim Upon Which Relief May Be Granted.**

Plaintiffs Judy Doe 5, 8, and 9 assert two claims for Invasion of Privacy: (1) Intrusion on Seclusion and (2) False Light.

**1. Judy Does 5, 8 and 9 fail to plead an invasion of privacy (intrusion on seclusion) claim.**

Nevada recognizes the tort of invasion of privacy for unreasonable intrusion upon the seclusion of another. *PETA v. Bobby Berosini, Ltd*., 111 Nev. 615, 895 P.2d 1269 (1995) (overruled on other grounds by *City of Las Vegas Downtown Redev. Agency v. Hecht*, 113 Nev. 644, 650, 940 P.2d 134, 138 (1997)). To recover for the tort of intrusion, a plaintiff must prove: (1) an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person. *PETA*, 895 P.2d at 1279.

"In order to have an interest in seclusion or solitude which the law will protect, a plaintiff must show that he or she had an actual expectation of seclusion or solitude and that the expectation was objectively reasonable." *Id*. (citing *M & R Investment Co. v. Mandarino*, 103 Nev. 711, 748 P.2d 488, 493 (1987)). However, Judy Does 5, 8, and 9 fail to allege an interaction in which any of them (a) had an objectively reasonable expectation of seclusion, (b) which was intruded, (c) involving highly offensive conduct. *PETA*, 895 P.2d at 1279; *Flowers v. Carville*, 112 F. Supp. 2d 1202, 1213 (D. Nev. 2000) (reversed on other grounds).

Judy Does 5, 8, and 9 allege they were present February 1, 2018, when Steve Wynn appeared with a camera crew at the Salon to celebrate an employee's 80th birthday. ECF No. 106, at ¶ 381. They allege they "reasonably believe that they may have been filmed without their consent in some capacity." ECF No. 106, at 382.

Inexplicably, Plaintiffs also assert they "may" have been "secretly surveilled" in 2018 (ECF No. 106, at ¶ 390) and cite to an Exhibit to their Second Amended Complaint which contradicts their allegation. The only evidence of surveillance in the MGC Order was directed at Jorgen Nielsen, the "named source" in the Wall Street Journal article, a fact well known to Plaintiffs. ECF No. 106-3 at MGC0536; ECF No. 20 at p.4, lines 1-5. Finally, Plaintiffs asserted they "learned of another employee's cell phone being seized by the Salon, HR, or security

1  personnel and examined," but did not assert the phone belonged to any of the Plaintiffs. ECF No.

2  106, at 390.

3  Although Judy Does 5, 8, and 9 state they had a "reasonable expectation of seclusion and

4  some level of privacy in the workplace" and that it was "objectively reasonable" ECF No. 106, at

5  ¶¶ 383, 387, they allege no facts suggesting, let alone establishing, they had an actual and

6  reasonable expectation of privacy in any specific interaction at the Salon. *Id*. at ¶¶ 383-394. It is

7  impossible to believe that Judy Does 5, 8, and 9 are unaware that they may be recorded by

8  cameras for safety and security purposes any time they enter a hotel or casino property. *Id*. at ¶

9  387; *cf M & R Inv. Co. v. Mandarino*, 103 Nev. 711, 719 (1987) (finding that a card counter had

10  no reasonable expectation of privacy on casino floor).

11  The camera crew incident on February 1, 2018, took place at the Salon which is open and

12  accessible to the public, hotel guests, employees, and others. ECF No. 106 at ¶381. These

13  interactions did not take place in any private or secluded location—such as "a private bedroom . .

14  . a hospital room . . . a restroom, [or] a young ladies' dressing room," *PETA*, 111 Nev. at 635, but

15  rather at an open-for-business salon, within a hotel casino property. ECF No. 106 at ¶¶ 42, 385.

16  Judy Doe No. 5 also alleges she was asked and felt "pressured" to make a statement on

17  camera "that Steve Wynn never sexually assaulted or harassed her," and she was "uncomfortable

18  exposing her likeness on camera but felt she had no choice and would be reported as not being

19  supportive of Steve Wynn," and it "put her on edge." ECF No. 106 at ¶¶ 185, 386. However, Judy

20  Doe No. 5 does not state the content of her alleged on-camera interview, nor plead that the

21  interview was given in a non-public, private space (such as a restroom, dressing room, etc.).

22  Rather, Judy Doe No. 5 states the camera crew filmed in the Salon, a public place.

23  Plaintiffs had neither a subjective nor reasonable expectation of privacy in such

24  interactions at the Salon. *See PETA*, 111 Nev. at 633 (an intrusion based on a workplace

25  conversation "that the plaintiff knew that other persons could overhear" merits "no reasonable

26  expectation of privacy"); *Kemp v. Block*, 607 F. Supp. 1262, 1264 (D. Nev. 1985) (holding that

27  where coworkers could overhear conversation and plaintiff had no right to exclude other persons

28  from entering the room, plaintiff "had no reasonable expectation of privacy"); *Med. Lab. Mgmt.*

*Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 818 (9th Cir. 2002) (applying Restatement test, holding that plaintiff had "no reasonable expectation of limited privacy in a workplace interaction with three strangers").

### 2. *Plaintiffs Judy Does 5, 8, and 9 fail to plead facts sufficient to establish invasion of privacy (false light) claim*

A False Light arises only where a party gives publicity to a matter concerning another. Restatement (Second) of Torts §§ 652D, 652E (1977)). The concept of giving "publicity" to a statement is not the mere publication of a statement, even if that statement is false. Rather, in the context of a claim for false light or public disclosure of private fact, for a communication to be actionable it must be communicated to "the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Moore v. Big Picture Co.*, 828 F.2d 270, 274 (5th Cir. 1987) (quoting Restatement (Second) of Torts, § 652D, cmt. a (1977)).

As Nevada follows the Restatement's view on claims for invasion of privacy, for Plaintiffs Judy Does 5, 8, and 9 to prevail on this claim they must satisfy the following definition of publicity:

> "Publicity," as it is used in this Section, differs from "publication," as that term is used … in connection with liability for defamation. "Publication," in that sense, is a word of art, which includes any communication by the defendant to a third person. "Publicity," on the other hand, means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches, or is sure to reach, the public.

*See Franchise Tax Bd. v. Hyatt*, 335 P.3d 125, 141 (Nev. 2014).

Judy Does 5, 8, and 9 allege they "had no desire to have their image recorded for Wynn Resorts' use of challenging the media reports and Steve Wynn," and that they "did not desire" to be "cast in a false light" that may suggest they supported Steve Wynn. ECF No. 106, at ¶ 385. They further allege questions were asked on camera that "may have cast Plaintiffs and others in a false light" suggesting they supported Steve Wynn and "never experienced unwelcome conduct by him." ECF No. 106, at ¶ 389.

However, Plaintiff Judy Does 5, 8, and 9 do not plead they were each recorded, the recording placed them in a false light (i.e., misrepresented them or statements they made), and the recording was made public. While Judy Doe No. 5 alleges that she made a statement on camera, she does not allege the content, state that it actually placed her in a false light, or that it was publicized. Judy Does 5, 8, and 9 plead only that "they did not desire to have Wynn Resorts nor Steve Wynn have them cast in a false light." ECF No. 106, at ¶¶ 385, 389 (emphasis added). However, Plaintiffs Judy Does 5, 8 and 9 do not plead they made a statement on camera, that was communicated to the public at large, and placed each of them in a false light.

In sum, Plaintiffs' allegations fail to establish a plausible claim for invasion of privacy claim for either intrusion on seclusion and false light. Thus, the claim should be dismissed.

**H. Plaintiffs' Seventh Claim, Request for Injunctive Relief, Fails to State a Claim Upon Which Relief Can Be Granted.**

"If the court finds that the [employer] has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice and order such affirmative action as may be appropriate..."[30] 42 U.S.C. 2000e-5(g). "Generally a person subjected to employment discrimination is entitled to an injunction against future discrimination, unless the employer proves it is unlikely to repeat the practice." *E.E.O.C. v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1544 (9th Cir. 1987); *see Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (providing that the district court may not issue an injunction unless persuaded that there is "some cognizable danger of recurrent violation, something more than a mere possibility").

While the district court has broad equitable powers to redress past discrimination and prevent its recurrence, it must be satisfied that the requested injunctive relief is needed. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S. Ct. 894, 97 L. Ed. 1303 (1953). Factors

---

[30] The Ninth Circuit has "adopt[ed] a broad interpretation of the term 'intentionally' to include all employment practices engaged in deliberately rather than accidentally." *Schaeffer v. San Diego Yellow Cabs, Inc.*, 462 F.2d 1002, 1006 (9th Cir. 1972). In application, this definition requires only that a defendant "meant to do what he did, that is, his [action] was not accidental." *Local 189, United Papermakers and Paperworkers v. United States*, 416 F.2d 980, 996 (5th Cir. 1969), *cert. denied*, 397 U.S. 919, 90 S. Ct. 926, 25 L. Ed. 2d 100 (1970).

that the court examines in determining the likelihood of future violations include:

> the degree of scienter involved; the isolated or recurrent nature of the infraction; the defendant's recognition of the wrongful nature of his conduct; the extent to which the defendant's professional and personal characteristics might enable or tempt him to commit future violations; and the sincerity of any assurances against future violations.

*U.S. v. Laerdal Mfg. Corp*., 73 F.3d 852, 852 (9th Cir. 1995). An employer's curative actions following suit are in themselves insufficient to provide "assurances that it will not repeat the violation to justify denying an injunction." *Goodyear*, 813 F.2d at 1544.

Even assuming *arguendo* that Plaintiffs could show Defendant "intentionally" engaged in an unlawful employment practice under Title VII (which they cannot, as demonstrated above as to their First and Second Claims), there is no "cognizable danger of a recurrent violation" beyond a "mere possibility." *Cummings*, 316 F.3d at 897. As the Massachusetts Gaming Commission recognized, extensive efforts and significant changes were already made to ensure that any failings regarding Mr. Wynn never occur again with respect to WLV's workplace. ECF No. 106-2 at MGC 0013-0014; ECF No. 106-3 at MGC0567. Those efforts included, but were not limited to:

- Complete separation of Mr. Wynn from the Company within weeks of the publication of the WSJ article subsequent removal from the property, and complete divestment of any ownership interest.
- The Board of Directors established a special committee that conducted an in-depth review of matters related to allegations of sexual misconduct by Mr. Wynn, the Company's former CEO and Chairman.
- The Company cooperated with the IEB's investigation.
- High-ranking executives with confirmed knowledge of the allegations against Mr. Wynn have been removed by Defendants or resigned.
- The Company created a new executive-level human resources position and hired a new, experienced Senior Vice President of Human Resources.
- The Company hired a new General Counsel with over 33 years of gaming regulatory experience, including as counsel to the Nevada Gaming Control Board and the Nevada Gaming Commission.
- The Company's Board of Directors has changed substantially, including the installation of a new Chairman from outside the Company.
- The position of CEO has been separated from the Chairman of the Company's board of directors, and an independent Chairman has been installed.
- The Company also made a multitude of policy and organizational changes

to address employee safety and training, including:

- o Updates to the Company's Preventing Harassment & Discrimination Policy;

- o New channels for reporting and filing employee complaints;

- o New investigative protocols for employee complaints;

- o Comprehensive annual harassment training;

- o Updates to personal relationships and potential conflict of interest policy;

- o Updates to spa and salon policies specifically to address safety of employee interaction with guests;

- o New diversity trainings for all employees; and,

- o Daily pre-shift briefings and quarterly manager's meetings.

ECF No. 106-2 at MGC 0013-0014; ECF No. 106-3 at MGC0567.

In short, significant strides in transforming the workplace culture while taking affirmative steps to ensure robust reporting and investigation mechanisms to protect employees have already been made and continued since 2018. Perhaps most significant is that the cited "bad actor"— Steve Wynn—no longer has any relationship or authority with the Defendants and Plaintiffs, and has not since early 2018.

Plaintiffs filed their Second Amended Complaint on February 2, 2022 – nearly four years after they initiated charges with the EEOC. And yet, Plaintiffs have not asserted a single allegation of harassment or retaliation since filing their perfected charges in the summer of 2018. Accordingly, Plaintiffs have plead no facts or allegations to assert the extensive remedial measures already taken by Defendant were deficient, and that injunctive relief is necessary to prevent any future harassment or retaliation against the Plaintiffs. Accordingly, Plaintiffs have plead no allegations sufficient to demonstrate the need for injunctive relief, this claim should be dismissed.

/ / /

/ / /

/ / /

/ / /

/ / /

1

### IV.   <u>CONCLUSION</u>

2       For the reasons set forth above, Defendants respectfully request that the Court dismiss

3  Plaintiffs' Second Amended Complaint (ECF No. 106) in its entirety.

4       Dated this 9th day of March, 2022.

5                                   JACKSON LEWIS P.C.

6                                   */s/ Deverie J. Christensen*

7                                   DEVERIE J. CHRISTENSEN, ESQ.
Nevada Bar No. 6596
JOSHUA A. SLIKER, ESQ.

8                                   Nevada Bar No. 12493
HILARY A. WILLIAMS, ESQ.

9                                   Nevada Bar No. 14645
300 S. Fourth Street, Suite 900

10                                   Las Vegas, Nevada 89101

11                                   *Attorneys for Defendants*

12                                   *Wynn Resorts, Limited, and*
*Wynn Las Vegas, LLC*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that I am an employee of Jackson Lewis P.C., and that on this 9th day of March, 2022, I caused a true and correct copy of the foregoing **DEFENDANT WYNN LAS VEGAS, LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** to be served via the Court's CM/ECF electronic filing and service system to the following:

Kathleen J. England, Esq.
**Gilbert & England Law Firm**
610 South Ninth Street
Las Vegas, Nevada 89101

Jason R. Maier, Esq.
Joseph A. Gutierrez, Esq.
Danielle J. Barraza, Esq.
**Maier Gutierrez & Associates**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89145

*Attorneys for Plaintiffs*

*/s/ Kelley Chandler*
Employee of Jackson Lewis P.C.