KATHLEEN J. ENGLAND, ESQ.
Nevada Bar No. 206
**GILBERT & ENGLAND LAW FIRM**
610 South Ninth Street
Las Vegas, Nevada 89101
Telephone:    702.529.2311
E-mail:        kengland@gilbertenglandlaw.com

JASON R. MAIER, ESQ.
Nevada Bar No. 8557
JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
DANIELLE J. BARRAZA, ESQ.
Nevada Bar No. 13822
**MAIER GUTIERREZ & ASSOCIATES**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148
Telephone: 702.629.7900
Facsimile:  702.629.7925
E-mail:      jrm@mgalaw.com;
             jag@mgalaw.com;
             djb@mgalaw.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JUDY DOE NO. 1, an individual; JUDY DOE NO. 2, an individual; JUDY DOE NO. 3, an individual; JUDY DOE NO. 4, an individual; JUDY DOE NO. 5, an individual; JUDY DOE NO. 6, an individual; JUDY DOE NO. 7, an individual; JUDY DOE NO. 8, an individual; and JUDY DOE NO. 9 an individual,<br>        Plaintiff,<br><br>v.<br><br>WYNN RESORTS, LIMITED, a Nevada corporation; WYNN LAS VEGAS, LLC, a Nevada limited-laiblity company; et al.<br>        Defendants. | Case No.:  2:19-cv-01904-GMN-VCF<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT WYNN RESORTS, LIMITED'S:**<br>  **(1) MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [ECF NO. 118]; OR**<br>  **(2) IN THE ALTERNATIVE, JOINDER TO DEFENDANT WYNN LAS VEGAS, LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [ECF NO. 119]**<br><br>**HEARING REQUESTED** |

The nine Plaintiffs, JUDY DOEs Nos. 1-9 ("Plaintiffs"), hereby oppose  Defendant Wynn Resorts, Limited's ("Wynn Resorts Ltd") (1) motion to dismiss Plaintiff's Second Amended Complaint [ECF NO. 118]; (2)  the alternative joinder to Defendant Wynn Las Vegas, LLC's motion

to dismiss Plaintiffs' Second Amended Complaint [ECF No. 119.][1] This opposition is based on the following memorandum of points and authorities, the pleadings and papers on file, the attached exhibits, and any oral argument  the Court may wish to entertain.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.      INTRODUCTION**

"**You are Wynn Resorts.**"

April 3, 2018 Memorandum from Matt Maddox, CEO of Wynn Resorts Ltd to "All Employees," including the Judy Doe Plaintiffs.  Emphasis added.  **Exhibit 1**, MGC 0288.

Despite this clear proclamation, one of many by parent company officials,  once again, the two named Wynn corporate entities (Wynn Resorts Ltd and Wynn Las Vegas, LLC) have filed a motion to dismiss the parent corporation from this discrimination, retaliation and tort suit.  And once again, without allowing discovery, without competent supporting evidence and in the face of overwhelming admissions and public proclamations of being **the "Company"** which operates world famous hotels and casinos known simply as The Wynn (since 2005) and The Encore (since 2008) where Plaintiffs work, Wynn Resorts Ltd is  now arguing that is merely the "indirect parent company" of Wynn Las Vegas, LLC.  In the face of numerous alleging paragraphs detailing the involvement of Steve Wynn and other parent company executives, Defendant Wynn Resorts Ltd claims to be uninvolved in any meaningful way with the Plaintiffs' employment and the injuries which occurred in their Wynn Resorts workplace.  ECF No. 118 at pp. 1-2.

In contrast, the existing evidence, Defendants' own, some of which is described and some attached to the Second Amended Complaint, compels a conclusion otherwise.  Wynn Resorts Ltd's submissions to the EEOC, to Massachusetts gaming authorities, and the fines imposed by gaming

---

[1]  This opposition addresses the specific arguments in Wynn Resorts Ltd's motion [ECF Nos. 118-119], which involve Wynn Resorts Ltd's allegation that it is not Plaintiffs' employer and is "not a proper party to this action."  Because Wynn Resorts Ltd's joinder to Wynn Las Vegas, LLC's motion to dismiss Plaintiff's Second Amended Complaint does not include any additional substantive arguments but merely incorporates by reference Wynn Las Vegas, LLC's arguments, Plaintiffs' opposition to Wynn Resorts Ltd's joinder incorporates by reference the arguments that Plaintiffs set forth in their separate opposition to Wynn Las Vegas, LLC's motion.

authorities demonstrate and compel a conclusion that this is not a mere parent/subsidiary relationship. This should preclude this Court from dismissing either of the two defendants at this early pleading stage.

These dismissal arguments belie common sense and the manner in which these companies operated. The Company[2] and its world-famous casino and hotel were known as The Wynn. They were built, managed, and lived-in by its owner, billionaire casino mogul Steve Wynn.  Wynn Resorts Ltd's corporate governance and operational documents demonstrate over and over that Steve Wynn and the high-ranking management members he selected, promoted and oversaw completely controlled all the hotel operations of The Wynn and Encore Hotels and Casinos, and thus  are responsible for the terms and conditions of employment of all employees (including the Judy Doe Plaintiffs).   The oppositional arguments are summarized below

First, Wynn Resorts, Ltd's motion to dismiss [ECF No. 118] argues in a conclusory fashion that Wynn Resorts, Ltd is not technically Plaintiffs' employer as if that, and that alone, were sufficient. ECF No. 118 at p. 2.  It is not.

 While Wynn Las Vegas, LLC may be  the entity  issuing paychecks to the Judy Doe Plaintiffs, there is a "singular identity" between the parent Wynn Resorts, Ltd and subsidiary Wynn Las Vegas, LLC in the operation of the resort hotel and casino where Plaintiffs work. This singularity is best illustrated in the  explanations and charts found in the 3/15/19 Massachusetts Gaming Commision's *Investigative Report,* [3] based on the  Defendants' mandated disclosures to Massachusetts gaming authorities. These admissions  amply illustrate the close interconnection  of the parent and subsidiary companies in the way parent company employees and management officials (all selected, promoted and overseen by founder Steve Wynn prior to February 2018) controlled and operated  the subsidiaries, in particular The Wynn and Encore Hotels.  ECF No. 106 at ¶ 11-12.  The Second Amended Complaint and this, this opposition properly relies on those documents, along with other undisputed evidence which demonstrates that Wynn Resorts, Ltd and Wynn Las Vegas, LLC should

---

[2] Which is how Mass gaming regulators referred to Wynn empire. Ex. 12, pages MGC 0016- 0018

[3]  *See* Ex. 12 at MGC 0016-0018, 0028-0029, 0217-0218, and footnotes on Exs. 7 and 9.

1   be treated as one singular employer-corporation, and both should remain defendants in this lawsuit.

2          Second, alternatively, this case also presents a classic example of the well-settled Title VII

3   concept of "joint employer," developed over the years to allow the protections of Title VII to attach

4   as broadly as possible, as Congress intended.  Those protections and that breadth encompass an

5   employer's obligation to provide employees such these Plaintiffs, then and now, with a safe,

6   discrimination and retaliation-free workplace, regardless of the corporate structure of their employer.

7   Defendant Wynn Resorts, Ltd argues  that because the Judy Doe Plaintiffs did not specifically use the

8   term "joint employer" in their Second Amended Complaint (even though they set forth specific facts

9   setting forth the joint employer relationship) they are barred, at this stage, from asserting the protection

10  of  a  joint employer relationship in this Title VII litigation.  ECF No. 118 at p. 4.  That  position is

11  not supported by any legal authority.

12         Third, Defendant Wynn Resorts, Ltd's sole evidentiary support for dismissal is its bare

13  assertions about corporate structure by two employees of the subsidiary, Wynn Las Vegas, LLC. First,

14  Alisha Balee, as Executive Director of Legal for Wynn Las Vegas, LLC, simply declares that Wynn

15  Resorts, Ltd and Wynn Las Vegas, LLC "maintain separate legal existences from each other."  ECF

16  No. 118-1.  Then, Courtney Prescott, as Executive Director of Human Resources for Wynn Las Vegas,

17  LLC, simply declares that Wynn Resorts, Limited has not been the employer of any person working

18  as a manicurist or makeup artist at The Salon at Wynn or The Salon at Encore.  ECF No. 118-2.

19         While Ms. Balee and Ms. Prescott may be competent to attest to the authenticity of specific

20  corporate documents and  corporate records of the subsidiary, both of their declarations lack any

21  indication of their knowledge or competency to speak about the actual operational interrelationship

22  and actual interaction between the parent defendant (Wynn Resorts, Ltd) employees and the subsidiary

23  defendant (Wynn LV, LLC).  Nor do their declarations address the control exercised within and

24  among those corporate entities and their structures, nor the commonality of corporate actors, the

25  existence or issuance of policies by the parent applicable and enforced in the subsidiary workplace,

26  nor the control of subsidiary actors by parent company actors or between and among persons who

27  occupy positions of power and control within those structures or entities, such as that once wielded

28  by, for example, the now disgraced CEO and Chairman of the Board Steve Wynn.  These declarations

are not sufficient to defeat the joint employer concept.

Defendant Wynn Resorts Ltd's motion to dismiss should be denied in its entirety, or alternatively, Plaintiffs should be allowed to conduct discovery on these matters and these fact-intensive issues left for summary judgement and trial.

## II.  RELEVANT CORPORATE HISTORY AND BACKGROUND

The Massachusetts Gaming Commission's Investigative Report provides a plethora of evidence about  the intimate  interrelationship between Wynn Resorts, Ltd and its subsidiary Wynn Las Vegas, LLC, past and present. That report charts the common set of actors, the most powerful of whom sat atop the parent company, and who exercised control over <u>both</u> entities during the time that the Judy Doe Plaintiffs were being discriminated and retaliated against in their Wynn Resorts (Hotel and Casino) workplace while being issued paychecks by the subsidiary company.

Wynn Resorts, Ltd submitted a "Company Employee List" to Massachusetts Gaming regulators, which clearly demonstrate that many top Wynn executives had job titles and occupying positions where  they exerted control over both Wynn Resorts, Ltd and Wynn Las Vegas, LLC. **Exhibit 2**, "Company Employee List."  For example, Matt Maddox is listed as the President of Wynn Resorts, Ltd (since 2013) as well as its CEO and CFO, following Steve Wynn's resignation in 2018) On April 3, 2018, Mr. Maddox issued a memorandum (in his capacity as CEO of Wynn Resorts, Ltd) to "All Employees" in which the Wynn "company" is referred to as a single entity:

> Although it has only been a couple of weeks since you heard from me at our Town Hall meetings, I want you to be current with the changes and updates in our company. As you may know, Steve Wynn is no longer associated with Wynn Resorts.  Mr. Wynn sold all of his shares in the company last week, primarily to two investment funds that I arranged to purchase the shares. . . . Clearly, now more than ever, our brand is you.  **You are Wynn Resorts**.

Ex. 1 (emphasis added).  His memo went on to state that a Special Committee of the Board of Directors of Wynn Resorts Ltd would be "conducting an investigation with the assistance of outside counsel into allegations regarding Mr. Wynn and reviewing Wynn Resorts' internal policies and procedures." *Id.*  In other words, Mr. Maddox was admitting that Wynn Resorts, Ltd's internal policies and procedures apply to "all employees," including those who were issued paychecks by Wynn Las Vegas, LLC – meaning including Plaintiffs.

1   Similarly, it was the board of Wynn Resorts, Ltd that issued "Resolutions" following the

2   January 26, 2018 publication of the *Wall Street Journal* article which exposed Steve Wynn's

3   workplace misconduct. **Exhibit 3**, MGC 0290-0292.  Those Resolutions  created  a (parent company)

4   Special Committee to review, investigate, and make recommendations to the (parent company) Board

5   about the allegations of systemic sexual harassment in the Wynn workplace, the very workplace (The

6   Wynn and Encore Hotels) where the Plaintiffs were employed!

7   Wynn Resorts officials made numerous presentations to Massachusetts gaming regulators to

8   convince them to allow still another Wynn-related subsidiary to open a hotel and casino in

9   Massachusetts after those gaming regulators conducted a year-long investigation triggered by the *Wall*

10   *Street Journal* and other media stories about Steve Wynn's wrongdoing and  corporate cover-ups in

11   Nevada. For example, on 6/8/18, Kirkland & Ellis  made a presentation to the Massachusetts gaming

12   regulators about how  Wynn Resorts as a (singular) "Company" had implemented "significant

13   workplace compliance and culture enhancements to reinforce its commitment to maintaining a safe,

14   supportive, empowered, and diverse workplace." **Exhibit 4**, MGC 0303-0322. These changes

15   included a Wynn Resorts Ltd Revised Code of Business Conduct and Ethics which included "Spa and

16   Salon Specific Initiatives," covering the very salon where the Judy Does worked.  *Id.* This presentation

17   also indicated that "employees may report directly to Audit Committee members" – i.e. directly to

18   parent company (Wynn Resorts Ltd) employees.  *Id.* at MGC 0317.  Further, the "Proposed Workplace

19   Oversight Council Structure" indicated that the new reporting structure went all the way up to the

20   Wynn Resorts Ltd Board.  *Id.* at MGC 0321. These were parent-entity re-assurances to gaming

21   regulators that all subsidiary activities were being strictly controlled and overseen by parent company

22   officials in a new way to prevent what had happened in the past.

23   Next, in The Wynn's new  policy on "Preventing Harassment and Discrimination" policy,

24   updated on January 18, 2019, all employees of Wynn Las Vegas, LLC (which would include the Judy

25   Doe Plaintiffs) are told that they can make complaints about harassment or discrimination directly to

26   Ellen Whittemore,  the Executive Vice President and General Counsel of the defendant-parent

27   company, Wynn Resorts Ltd, or to Rose Huddleston, Sr. Vice President of Human Resources for

28   North America of  Wynn Resorts,  the parent company.  **Exhibit 5**, MGC 0324-0328.  A flow chart

was also provided which re-iterated the close interconnection of the two companies by showing that employee complaints were to be considered and sent to the "VP of HR" and "Legal," both of whom are Wynn Resorts, Ltd employees when that is cross-referenced with the Preventing Harassment and Discrimination Policy. **Exhibit 6**, MGC 0330. As set forth in the Second Amended Complaint and the Massachusetts Gaming Commission's Investigative Report, the "Company" had been severely deficient in not having these protections in place to prevent the alleged Steve Wynn sexual predation and toleration of it by parent and subsidiary executives and officials, most of whom reported to him prior to February 6, 2018. Ex. 12, MGC 006-0018.

The (undated) Wynn "Permitted Disclosure Policy" submitted to Mass Gaming about employees' rights to file charges with federal, state or local agencies includes an oft-repeated footnote found on nearly every policy issued to Wynn employees in the electronic employee handbook. On a page that carries the brand-characteristic "***Wynn***," the parent company states, to these employees and the world, that parent and subsidiaries are one and the same:

> As used herein, the use of the term "Wynn" refers to Wynn Resorts, Limited, Wynn Las Vegas, LLC (which includes Wynn Las Vegas and Encore at Wynn Las Vegas), Wynn MA, LLC, Wynn Design and Development, LLC, and their affiliated companies with operations based in the United States. This Policy applies to all employees of Wynn, unless otherwise prohibited by the applicable laws of the jurisdiction in which the company is operating.

**Exhibit 7**, MGC 0332. In other words, the Wynn empire of entities regularly acts as one single unit when addressing employee issues such as harassment complaints.

Similarly, the policy dealing with "Personal Relationships and Potential Conflicts of Interest" was also presented by Wynn Resorts representatives to Mass Gaming. It uses the collective term "Wynn's Rights," in describing the Company's policy on dating, relative, cohabitating, and intimate relationships and disclosures which to be made. Tellingly, there was no distinguishing between parent company and subsidiary rights. **Exhibit 8**, MGC 0334-0336.

Another example of the interconnections of parent actors exercising operational and management control over subsidiary activities can be found in a Memo dated May 18, 2018 from Kim Sinatra, General Counsel of the parent, Defendant Wynn Resorts Ltd. On the subject of "Executive and Board Member Use of Spa and Salon Services," Ms. Sinatra's directive states that "Wynn

employees, board members, and their families may not receive massages or other spa services at any Wynn Resorts property." **Exhibit 9**, MGC 0344.  That memo includes the oft-repeated stock footnote indicating that the term "Wynn" means Wynn Resorts, Ltd, Wynn Las Vegas, LLC, and all affiliated companies and operations based in the U. S.  *Id.*

Still another example is found in Wynn Resorts Ltd's Compliance Plan, dated August 3, 2018. It  shows involvement of parent entity (Wynn Resorts, Ltd) in matters at the subsidiary level (Wynn Las Vegas, LLC) for various human resources and discrimination matters through a new, supposedly improved compliance process. The compliance officer (at the property level, i.e. the subsidiary) reports to a global level officer, at the parent corporate level  with further reports being made up from the property level to the parent board level. **Exhibit 10**, MGC 0346-0347.

Finally, still another policy  issued by the parent company  which applies at  the subsidiary level is  Wynn Resorts Ltd's "Employee Interaction with Guest and Other  "Wynn believes in maintaining a safe and friendly environment for both its guests and employees."  **Exhibit 11**, MGC 0362.  And once again, the term "Wynn" is used and defined by the parent corporation in a footnote as including Wynn Resorts, Ltd, Wynn Las Vegas, LLC, and all their affiliated companies and operations based in the United States. *Id.*

For additional context, the Wynn Resorts Ltd Organizational Chart confirm that numerous subsidiaries, including Wynn Las Vegas, LLC, all report upwards to Wynn Resorts Ltd.  **Exhibit 12**,Title Page, Contents, Executive Summary and  Org Chart, MGC 006-018.  **Exhibit 13 is** a chart depicting the 1/1/2020 corporate filings with the Nevada Secretary of State, showing a series of single managing member LLC's eventually controlled by the parent, Wynn Resorts Ltd.

Similarly, and perhaps most tellingly, are the parent company's filings with EEOC. Attached as **Exhibit 14** (EEOC (SS) 051) is the 2016 EEO-1 Report filed by and for the parent company, Wynn Resorts Ltd. The company identification is **WYNN RESORTS LTD,** and shows that 11,550 employees[4] are employed at the company's location at 3131 Las Vegas Blvd. South, Las Vegas, NV,

---

[4] 195 of whom are "Executive/Sr Official & Mgrs." No doubt discovery will show those are individuals holding positions in the parent company.

the locations of the Wynn Hotel and Casino and the Encore Hotel and Casino.  It makes no mention of a subsidiary LLC.

These corporate documents directly counter Wynn Resorts Ltd's attempt to characterize itself as an uninvolved parent and distance itself from the actual operation of the resort hotel and casinos (The Wynn Hotel and The Encore Hotel) where the Judy Doe plaintiffs were employed (and where six of them still work).

Following the explosive revelations, in January 2018 of years of Steve Wynn's sexual predation at The Wynn and Encore Hotels, the parent corporation Wynn Resorts Ltd issued new corporate governance documents  promising  the heavy involvement and participation of officials and officers from  the parent level in the operation of the subsidiary (property level). These were provided to gaming regulators to reassure them that the highest echelons of Wynn Resorts Ltd (including its Board of Directors) had implemented changes to rectify past deficiencies which led to the Steve Wynn-misconduct towards employees and years of corporate facilitation, toleration and cover-up. These are  the very grounds (wrongdoing) which give rise to this lawsuit.[5]

Even beyond and before the corrective actions  in parent company  documents submitted to Mass Gaming in 2018 and 2019, , there was  a long and documented history of executive and officials of Wynn Resorts Ltd moving  around and through the parent and subsidiary entities[6] and all the while, exerting control over "Wynn Resorts" employees (who may have been paid by Wynn Las Vegas, LLC) over the years.  Examples include:

- Matt Maddox  testifying  before  the  Massachusetts  Gaming  Commission  that  he  became president of Wynn Resorts Ltd (in 2013) because he was chosen by Steve Wynn as his (Steve Wynn's) possible successor as CEO, that he and Wynn Resorts Ltd General Counsel Kimmarie

---

[5] Indeed, that parent company control power as exercised by Steve Wynn is perhaps best exemplified by Board member Patricia Mulroy (the only female Board member in February, 2018,) testifying that on the day of his resignation (Feb. 6, 2018,) the disgraced Steve Wynn made a recommendation of Matt Maddox as his successor as parent company CEO and president, which was accepted. Ex. 15, 4/3/19 Adjudicatory Hearing, pgs 171-172.

[6] See Exhibit 2, MGC 0217-0218, " Company [singular]Employee List"

Sinatra were "running the company," and that before Steve Wynn left in February 2018, the three of them were the "triumvirate" of the Wynn company. **Exhibit 15**, 4/3/19 Adjudicatory Hearing Transcript at pp. 200-208;

- When (then-Wynn Resorts, Ltd Board member) Elaine Wynn received information about Steve Wynn paying a settlement to a Wynn Hotel (subsidiary) employee who alleged that he raped her, she went to Wynn Resorts, Ltd General Counsel Kimmarie Sinatra in 2009 to "tell her about it in her capacity as general counsel." Ex. 12 at MGC 0092;

- Kevin Tourek, who served as the the subsidiary's SVP and General Counsel from 2006-2014, then the parent's (Wynn Resorts, Ltd) Global Compliance Officer from 2014-2016 , and then as the parent's Project Manager/Legal Advisor in 2018, and Kimmarie Sinatra, who served as the Wynn Resorts Ltd General Counsel, were both put on notice of potential workplace wrongdoing by Steve Wynn against Wynn Las Vegas, LLC employees in 2014, yet they "failed to take any action or require any sort of investigation into the matter." Ex. 12 at MGC 0113;

- In 2014-2015, Maurice Wooden (then-president of Wynn Las Vegas) put Wynn Resorts, Ltd President Matt Maddox on notice of a complaint regarding Steve Wynn engaging in inappropriate conduct against a Wynn spa employee, with Mr. Maddox apparently "instruct[ing] Mr. Wooden to instruct Mr. Wynn to discontinue the conduct," which is direct evidence of Wynn Resorts, Ltd ultimately controlling the sexual harassment complaints being lodged by Wynn employees. Ex. 12 at MGC 0114;

- Wynn Resorts Ltd General Counsel Kimmarie Sinatra attended the depositions of Wynn Las Vegas, LLC employees (including Doreen Whennen who served as the Wynn Las Vegas VP of Hotel Operations from 2004-2006). Ex. 12 at MGC 0147;

- In October 2017, Steve Wynn (then CEO of the parent Wynn Resorts Ltd) testified that he wanted to change the "Zero Tolerance" policy on sexual harassment applicable to employees working at the Wynn and the Encore Hotels (such as the Judy Doe Plaintiffs). Ex. 12 at MGC 0150-156;

- Wynn Resorts Ltd's General Counsel Kimmarie Sinatra participated in drafting the Wynn

1    Company's response to sexual harassment allegations being asserted  by employees working

2    at the Wynn and Encore that the *Wall Street Journal* was publishing in January 2018. Ex. 12

3    at MGC 0157; and

4  • In a statement provided to the Massachusetts Gaming Commission after the publication of the

5    January 2018 Wall Street Journal article, Steve Wynn refers to having conversations with

6    "Company Employees" in 2005, which including Doreen Whennen (who was then the VP of

7    Hotel Operations for Wynn Las Vegas, LLC – not an employee of Wynn Resorts, Ltd), and

8    Artie Nathan (who was then the SVP and Chief HR Office of Wynn Las Vegas, LLC – not an

9    employee of Wynn Resorts Ltd). Ex. 12 at MGC 0177.

## III.   LEGAL ANALYSIS

### A.   LEGAL STANDARD FOR MOTION TO DISMISS

12        A Rule  12(b)(6) motion to dismiss tests the  legal sufficiency of the claims asserted in the

13   complaint. Fed.R.Civ.P. 12(b)(6); *Navarro v. Block,* 250 F.3d 729, 731 (9th Cir. 2001).  The court

14   must accept all factual allegations pleaded in the complaint as true and must construe them and draw

15   all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mutual Ins.*

16   *Co.,* 80 F.3d 336, 337–38 (9th Cir.1996).  To avoid a Rule 12(b)(6) dismissal, a complaint  must plead

17   "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550

18   U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that

19   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

20   alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).

21        Generally, courts should not consider material outside the complaint when ruling on

22   a motion to dismiss.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1555 n. 19

23   (9th Cir.1990).  However, documents specifically identified in the complaint whose authenticity is not

24   questioned by parties may also be considered. *Fecht v. Price Co.,* 70 F.3d 1078, 1080 n. 1 (9th

25   Cir.1995) (superseded by statutes on other grounds).  Moreover, the court may consider the full text

26   of those documents, even when the complaint quotes only selected portions. *Id.*  It may also consider

27   material properly subject to judicial notice without converting the motion into one for summary

28   judgment. *Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir.1994).  As a general rule, a court is to  grant

1   leave to amend a complaint which has been dismissed, which is what has happened in this case on

2   reversal and remand from the Ninth Circuit.

3   **B.   WYNN RESORTS LTD IS A TITLE VII "JOINT EMPLOYER" OF PLAINTIFFS**

4   Title VII (and its corollary Nevada law) impose obligations and responsibility on "employers"

5   to refrain from discrimination and retaliation.  42 U.S.C. § 2000e-2(a).  Title VII does not define the

6   term "employer" beyond "a person engaged in an industry affecting commerce who has fifteen or

7   more employees ... and any agent of such a person." 42 U.S.C. § 2000e(b).

8   The Ninth Circuit recently reversed a district court's partial dismissal and denial of discovery

9   on the issue of joint employers under Title VII. *U.S. Equal Employment Opportunity Comm'n v. Glob.*

10  *Horizons, Inc.*, 915 F.3d 631 (9th Cir. 2019).  "It is now well-settled that an individual can have more

11  than one employer for Title VII purposes," where they "simultaneously share control over the terms

12  and conditions of employment, both should be liable for discrimination." (internal citations omitted).

13  Two entities, in such circumstances, are deemed to be "joint employers" of the employees in question.

14  *Id.* at 637.  The Ninth Circuit held that the common-law agency test should be used to determine

15  whether a joint employer relationship exists.  Under the common-law test, "the principal guidepost"

16  is the element of control — that is, "the extent of control that one may exercise over the details of the

17  work of the other."  *Id.* at 639.  Citing to the U.S. Supreme Court's decision in *Nationwide Mutual*

18  *Insurance Co. v. Darden*, 503 U.S. 318, 324 ((1992), as providing and a non-exhaustive list of factors

19  to be considered, the Ninth Circuit  held that "all incidents of the relationship must be weighed with

20  no one factor being decisive."  Tellingly, this is generally done at the summary judgment stage, not at

21  this dismissal stage.

22  Wynn Resorts, Ltd is attempting to distance itself from being responsible for the Title VII

23  violations allegedly committed only by the (single-employer) subsidiary. It does so simply by insisting

24  it has never been the "employer of any person who works at, or has worked at, The Salon at Wynn or

25  The Salon at Encore." ECF No. 118-2. As indicated below, this is not where the analysis ends.

26

27

28

Over fifty paragraphs[7] in Plaintiffs' Second Amended Complaint allege facts, as Plaintiffs know, observed, or experienced them, or as admitted to by Wynn Resorts Ltd in gaming enforcement actions, which speak to the  total operational control that the parent corporation Wynn Resorts Ltd exercised over in the  Plaintiffs' Wynn and Encore Salon workplace.   These include numerous examples of acts and omissions of  parent company "high level executives," including parent CEO Steve Wynn and his personally selected management team and even Board members  acting in that workplace.  Discovery will no doubt uncover more examples.  Plaintiffs' Second Amended Complaint asserts that the parent company, Wynn Resorts Ltd, acting through its board members, officers (including Board Chair and CEO Steve Wynn and his hand-picked executives in both entities) was a fully involved and active participant in controlling nearly all of the terms and conditions of Plaintiffs' employment.

Further bolstering this fact-intensive inquiry and  also important to note is that it was Wynn Resorts Ltd which was held responsible by gaming regulators  (ECF No. 106 at ¶ 68, 82) for the failure to properly prevent, investigate and remedy the workplace misconduct of  Board Chair and CEO Steve Wynn **in the Plaintiffs' workplace**.   These were the actions and omissions of Wynn Resorts Ltd which first allowed, failed to investigate and thereby ratified the Steve Wynn misconduct and which Plaintiffs are now asserting resulted in an illegal and hostile work environment when exposed in the media.  ECF No. 106 at ¶ 282.   That the parent company, Wynn Resorts Ltd may not have been the entity issuing Plaintiffs their paychecks is not dispositive when  the parent entity (Wynn Resorts Ltd) involvement is examined.

The determinative issue (which the motion does not mention) is the extent to which Wynn Resorts Ltd exercises  <u>control over the terms and conditions of Plaintiffs' employment</u>. This includes, as Plaintiffs have alleged, that Wynn Resorts Ltd employed unqualified, poorly-trained individuals who allowed parent company Board Chair and CEO Steve Wynn to prey upon Wynn Salon and Encore Salon employees, including Plaintiffs and their co-workers.  *See, e.g.* ECF No. 106 at ¶ 34,

---

[7] ECF No. 106 at ¶¶ 21, 22, 28, 32, 33. 34, 39, 40, 49, 52, 54, 55, 56, 57, 58, 62, 66, 68, 69, 70, 72, 74, 75, 77, 79, 80, 82, 83, 84, 89, 90, 282, 292, 297, 301, 304, 305, 306, 315, 321, 322, 323, 326, 337, 338, 341, 342, 343, 344, 345, 346, 354, 355, 356, 357, 360, 361, 362, 369, 370, 372, 373, 385, 386, 390 as examples.

288.

Plaintiffs' Second Amended Complaint asserts that it was Wynn Resorts Ltd that employed, selected, and ultimately controlled the people who in turn ran The Wynn and Encore Hotels.  Wynn Salon and Encore Salon employees were victimized and subjected to a hostile work environment by parent company actors, which goes directly to the principal guidepost of control.  *See* ECF No. 106 at ¶ 11.  Plaintiffs' Second Amended Complaint asserts, for example, that named (parent) Defendant, Wynn Resorts, Ltd., was responsible for the release of the February 6, 2018 public declaration announcing support for the disgraced and resigning CEO Steve Wynn, which injured the Plaintiffs and demonstrating control he wielded over the companies he founded, owned and controlled up to that point. The Board of Wynn Resorts Ltd declared its "collective heavy heart" in accepting wrongdoer and CEO Steve Wynn's resignation, applauding him as the "beloved leader." These Wynn Resorts, Ltd expressions of support of the wrongdoer contributed to the hostile work environment and retaliatory hostile work environment to which the Plaintiffs were subjected.  ECF No. 106 at ¶ 49.

Plaintiffs' Second Amended Complaint also asserts that Defendant Wynn Resorts Ltd's Board Member (and CEO) Matt Maddox convened a meeting with Salon employees (including Plaintiffs) on March 14, 2018 to declare that he was "taking over."  ECF No. 106 at ¶ 55.  Plaintiffs' Second Amended Complaint also asserts that Wynn Resorts Ltd Board Member Patricia Mulroy (who holds no position of any kind with the subsidiary, Wynn LV LLC) issued a letter addressed to the Wynn Salon and Encore Salon employees. Posted in their Wynn Resorts Salon, it stated that if anyone had information regarding sexual harassment allegations, they should report the information to the parent company's Board of Directors' investigators. Employees were required to acknowledge reading Ms. Mulroy's letter on their employee portal.  ECF No. 106 at ¶ 56; 58.

Thus, parent company and named Defendant Wynn Resorts, Ltd took a very active role in asserting itself into Plaintiffs' Salon workplace employment orbit.  All of this (among many other allegations) indicates that parent corporation Wynn Resorts Ltd was operating in as far more than just a "thrice-removed" "parent" corporation capacity. There was clearly a singularity of operational control over Plaintiffs' workplace which is more than sufficient for the parent entity to be considered a joint employer along with the entity that issued Plaintiffs their paychecks.

1          Wynn Resorts, Ltd's dismissal motion is at odds with its disclosures and  admissions about

2    control made to the Massachusetts Gaming Commission in the investigation into the parent Wynn

3    Resorts Ltd's improper handling of the allegations of sexual misconduct by Steve Wynn in Nevada,

4    *the same allegations which give rise to and support this lawsuit.*  In the 4/8/2019 post-hearing brief

5    by the Massachusetts subsidiary, Wynn MA, LLC concedes that it was (Defendant) Wynn Resorts

6    Ltd (the parent, not Wynn Las Vegas, LLC) which was handling the investigation about the allegations

7    about Steve Wynn's sexual misconduct in The  Wynn Resorts workplace.  *See* **Exhibit 16**, Wynn MA,

8    LLC's Post-Hearing Brief at p. 1.  To salvage its Massachusetts gaming license to open Wynn's

9    Encore Hotel and Casino in June, 2019, the Massachusetts subsidiary Wynn MA, LLC relied upon

10   the exercise of control by its parent, Wynn Resorts Limited, to reassure Mass Gaming:

11         Over a period of time . . . Wynn Resorts' refreshed Board and its new executive team
12   grasped the full extent of Stephen Wynn's actions and recognized that, due to the
     failures of several former executives to respond appropriately to complaints against
13   Mr. Wynn, many of the victims of those actions felt powerless and without a voice.
     ***Wynn Resorts and its current executive and Board qualifiers have taken full***
14   ***responsibility for these failures.*** As Matt Maddox expressed in his opening
     statement, Wynn Resorts is deeply sorry that it failed to live up to its values and that,
15   in doing so, it ***let its employees down***. As the record and testimony show, over the
     past year, Wynn Resorts, under Mr. Maddox's leadership, has taken drastic and
16   meaningful measures to ensure that ***all its employees*** are protected, valued, and heard.

17   Ex. 16 at p. 1-2 (emphasis added).  So here Mr. Maddox, who served at both entities, conceded that

18   Wynn Resorts, Ltd,  acting through him and others, was responsible and involved in the events which

19   now give rise to this suit.

20         As set forth above, the 3/15/19 Mass Gaming *Investigative Report* provides the most

21   compelling and undeniable proof of the interconnections and overlap of the two business entities, one

22   of which is seeking dismissal in this action as if it had nothing to do with the injurious events occurring

23   at the Wynn and Encore Salons in the Wynn Resort and Casino property in  Las Vegas.  Without any

24   competent supporting evidence, and which would probably surprise Massachusetts gaming regulators,

25   Wynn Resorts, Ltd's motion inaccurately insists it is merely an "indirect parent company" of Wynn

26   Las Vegas, LLC.  ECF No. 118 at p. 2.   Drawing from Wynn's corporate disclosures to Mass Gaming,

27   in their Second Amended Complaint, Plaintiffs are entitled to plausibly assert, for example, that the

28   3/15/19 Massachusetts Gaming Commission's *Investigative Report* confirmed that the parent

corporation, Wynn Resorts, Ltd, was <u>not merely</u> a "parent" company of Wynn Las Vegas, LLC, but that it "ultimately controlled" Wynn Las Vegas, LLC.  ECF No. 106 at ¶ 11.

The case law provided by Wynn Resorts Ltd which relies or focuses on "indirect parent companies" thus has little applicability in this matter.  *See* Wynn Resorts Ltd's use of  *Goff ex rel. Estate of Torango v. Harrah's Operating Co.*, 392 F. Supp. 2d 1244, 1245 (D. Nev. 2005).  ECF No. 118 at p. 6.  There, the parent company was dismissed from an unjust enrichment action because the plaintiff failed to show that the parent defendant entity had any connection to the wrongful acts attributed to its subsidiaries.  In contrast, the nine Judy Doe Plaintiffs have asserted that specific Wynn Resorts Ltd officials and executives  (including Steve Wynn's misconduct initially setting the stage, and then later, other executives, counsel and Board members) were directly involved with perpetuating the wrongful acts creating the hostile environment and retaliation  in their Wynn Salon workplace.  *See also*, Wynn Resorts Ltd's cite to *Nat'l Convenience Stores, Inc. v. Fantauzzi*, 94 Nev. 655, 658, 584 P.2d 689, 692 (1978) and the contention that *Fantauzzi* involved a dismissal of a parent company.  ECF No. 118 at p. 6.  That case involved an analysis of whether an employee was acting in the scope of employment while committing a tortious act.  It did not involve the dismissal of a parent company.  *Nat'l Convenience Stores, Inc*., 94 Nev. at 659.

The Title VII case law offered by Wynn Resorts Ltd's motion is distinguishable from this matter.  In the case of  *Ozkan v. Am. Casino & Entm't Properties, LLC*, No. 2:14-cv-187-JCM-GWF, 2014 WL 4105065, at *4 (D. Nev. Aug. 19, 2014),  the Court dismissed a parent company because the plaintiff never alleged that the company participated or influenced the employment policies of the subsidiary.  That is not the case here.  These Judy Doe Plaintiffs have all alleged that (among other things) it was Wynn Resorts Ltd which learned of the impending media publication of reports about Steve Wynn's misconduct, and then forced Salon employees into  meetings on January 17, 2018 with Maurice Wooden (President of Wynn Las Vegas, LLC), who appeared with Troy Mitchum (HR Director of Defendant Wynn Las Vegas, LLC) and discouraged Salon employees (including Plaintiffs) from voicing their concerns to the media or internally.  ECF No. 106 at ¶ 32-34.

On January 31, 2018, Salon employees, including some of the Judy Doe Plaintiffs, were forced to attend a small   meeting where   Mr. Wooden introduced wrongdoer Steve Wynn, who then

intimidated (and frightened) Salon employees present and ridiculed those who had spoken out about his sexual misconduct to the media.   ECF No. 106 at ¶ 39-41.  At that time, Steve Wynn was the Chairman and CEO of parent company Wynn Resorts Ltd. Numerous Wynn Resorts high-level executives and security lined the walls at this forced and injurious meeting.  ECF No. 106  at ¶ 369. Discovery will uncover their identities and no doubt the fact that some were management executives with the parent company and some with the subsidiary. All were acting together as the people in charge and control of the Plaintiffs' workplace, The Wynn and Encore Hotels.

Similarly, Wynn Resorts Ltd's reliance on other cases is misplaced. In *Cummings v. United Healthcare Svcs.,* No. 2:13–cv–00479–APG–GWF, 2014 U.S. Dist. LEXIS 44789 at *7–9 (D. Nev. Mar. 31, 2014), the plaintiff had only pled a sole conclusory allegation regarding defendants being parent/subsidiary companies of each other.  In *Lopez v. Goldencorp USA Inc.,* No. 3:09-cv-00104-LRH-VPC, 2010 WL 325 7889 *4-5 (D. Nev. Aug. 13, 2010), the claim asserted was alleging only a parent-subsidiary relationship between defendants.  Finally, in *Nowick v. Gammell*, 351 F. Supp. 2d 1025, 1035 (D. Haw. 2004), the plaintiff failed to assert that the defendant controlled the workplace where the alleged acts occurred.  In contrast, Plaintiffs' Second Amended Complaint goes far beyond alleging that Wynn Resorts Ltd was merely the "parent" to a "subsidiary" Wynn Las Vegas. Similarly, Wynn Resorts Ltd's reliance on an unpublished 2005 Tenth Circuit case (*Florez v. Holly Corp.,* 154 F. App'x 707 (10th Cir. 2005)) is misguided.  That case dealt with the Tenth Circuit's "single employer" analysis instead of the Ninth Circuit's "joint employer" analysis.  *See also*, *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 931 (9th Cir. 2003) (Title VII coverage applies to indirect employers when those employers discriminated against and interfered with the employees' relationship with their employers.").

Wynn Resorts Ltd's motion also cites to other cases that do not involve a direct or indirect employment relationship.  One of those cases,  *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1193 (10th Cir. 2004),  involved a group of employees of one company attempting to hold another company liable for age discrimination because the other company provided an assessment of their need to be retained. *See also*, Wynn Resorts Ltd's use of *Feliciano v. Reger Grp.*,  2014 WL 6685412, at *1 (E.D. Va. Nov. 25, 2014).  This case involved a plaintiff assigned by her separate employer to support a federal

agency (which had no control over her employment terms or conditions) for discrimination.  Wynn

Resorts, Limited's motion also cited to *Morris v. Hartford Courant Co.*, 200 Conn. 676, 679, 513

A.2d 66, 68 (1986) and quoted that case as saying "A wrongful termination case, it is axiomatic, must

In any event, *Morris* has no applicability to this matter.  It involved the question about whether a

former employee could sue his former employer for wrongful termination for public policy wrongful

termination after being falsely charged with criminal conduct.

Although not offered for precedential value, a number of recent cases in this and other district

courts are instructive about the fact-intensive Title VII "joint employer" test to be undertaken  to apply

the Ninth Circuit's directive in *U.S. Equal Emp. Opportunity Comm'n v. Glob. Horizons, Inc.*, 915

F.3d 631, 641 (9th Cir. 2019) - the element of control.  Not surprisingly, this is usually done in motions

for summary judgement where the employees have had a full and fair opportunity to discover and

present facts and evidence about joint employment by more than one corporate entity over employees.

Just two weeks ago, Judge Gordon denied the portion of a motion to dismiss on this very issue in *Haro*

*v. KRM, Inc.*, No. 2:20-cv-02113-APG-DJA, 2022 WL 980249, at *4 (D. Nev. Mar. 30, 2022), where

the *pro se* plaintiff worked at Bouchon, a restaurant operated by parent TKRG through a subsidiary

called KVP. The plaintiff alleged, among other facts, that he had complained to TKRG HR department

about Bouchon activities, and that the policies applicable in the KVP/Bouchon workplace were

promulgated by TKRG, the parent company, and that those policies said Bouchon employees could

be fired for violations of TKRG's policies. Judge Gordon found this suggests the requisite element of

control and the plaintiff's claim would survive dismissal. *Id.*

Also, in *Ramirez-Castellanos v. Nugget Mkt., Inc,* 2020 WL 2770060, (E.D. Cal. May 28,

2020) the Court denied summary judgment to the defendant-employer who had disputed plaintiff's

facts showing control in a lengthy 3-page analysis.  The Court ruled that "No one [*Global Horizons*]

factor is decisive; 'all of the incidents of the relationship must be assessed and weighed.'" *Id.* at *5.

Further, the Court noted that the weighing of evidence about control matters, credibility

determinations of witness testimony about those matters in an employment setting (each of which is

unique) and the drawing of legitimate inferences from those facts are to be left for the jury, not the

court, and therefore summary judgment was denied. *Id.* at *5.

Similarly, in *Kinnebrew v. W. Wholesale Supply, Inc.*, 2021 WL 2581414, at *5 (D. Idaho June 23, 2021) the District Court denied summary judgment to the defendant-employer in an ADA case after analyzing four factors: 1. interrelated operations; 2. common management; 3. centralized control of labor relations; and 4. common financial control. While some minor factors differ from this Judy Does case, the court found, as this Court should find here, that "the line between the Companies' functions, finances, management and operations is, in some respects, blurred and in other respects, indistinguishable."  In *John v. Core Brace, LLC*, No. 4:20-cv-00071-BLW, 2021 WL 3172919 (D. Idaho July 26, 2021), the district court denied summary judgment to the employer in a race discrimination case using the *Global Horizons* common law agency test for the (holding company) parent corporation's[8] activities.  Although differing slightly from this Wynn case on the payroll front, there, the parent corporation issued and enforced the personnel policies, and the subsidiary and parent worked together within a family of corporations, and the subsidiary's upper management operated out of the parent's headquarters such that summary judgement was precluded by the existence of disputed facts.

Wynn Resorts Ltd's motion also seeks dismissal of Plaintiffs' state law claims for negligent hiring, training, supervision and retention; intentional infliction of emotional distress; false imprisonment, and invasion of privacy based on the incorrect allegation that all of these claims are "premised" on Plaintiffs establishing an employment relationship with Wynn Resorts Ltd.  ECF No. 118 at p. 8.  Plaintiffs did not necessarily limit  their state law claims to apply only to Wynn Resorts Ltd in the context of an "employer."  Although the undeniable fact of the employment situation lends credence and weight to the coercive  misuse of power, which Plaintiffs repeatedly alleged, their Second Amended Complaint indicates that, in a more general way, the parent corporation's employees may be among the many  bad actors providing negligent management services which harmed employees of subsidiary Wynn Las Vegas, LLC.  The plausibility of these assertions is demonstrated

---

[8] Including the special circumstances under *Watson v. Gulf & Western  Industries*, 650 F.2d 990, 993 (9th Cir. 1991) where the parent is held liable for the Title VII violations of its wholly-owned subsidiary when  the parent participated in or influenced the employment policies of the subsidiary. *Id.* at fn. 7.

1    by the $55 million in fines imposed by gaming enforcement officials on Wynn Resorts, Ltd for Wynn

2    Resorts, Ltd's failure to do so.

3          Further, Wynn Resorts, Ltd provided no legal authority indicating that Plaintiffs are not

4    permitted to sue Wynn Resorts, Ltd on these state law claims in the capacity of an "employer," where,

5    as here, it appears that Wynn Resorts, Ltd, acting through its executives (such as Wynn Resorts, Ltd

6    president Mark Schorr, Wynn Resorts, Ltd president Matt Maddox, and former Wynn Resorts, Ltd

7    General Counsel Kimmarie Sinatra), exercised control over all aspects of the Wynn and Encore Hotels

8    operations, including the Salons where Plaintiffs worked.  Similarly, it is telling that it appears that

9    Wynn Resorts, Ltd has provided no evidence that it did not provide management and human resources

10   services which have now been found to be so lacking and which failed to protect the Plaintiffs in their

11   Wynn and Encore Salon workplace.

12         Thus, with respect to Plaintiffs' Title VII claims and their state law claims, Wynn Resorts, Ltd

13   should not be allowed to elude discovery about and the applicability of  a  "joint employer" analysis

14   and resulting responsibility.  Wynn Resorts, Ltd's motion relies heavily on other inapplicable, non-

15   binding, or irrelevant legal authorities in support of its conclusory argument that an active parent

16   corporate entity ( Wynn Resorts, Ltd) is immune because it is not the entity issuing Plaintiffs their

17   paychecks so it cannot be deemed an "employer" of Plaintiffs for Title VII purposes.  This argument

18   holds no merit when a proper analysis is conducted into whether these Plaintiffs have alleged and

19   shown with plausibility that Wynn Resorts, Ltd exerted *control* over them through its corporate culture

20   and high-level executives (which is easily established).  Exactly how attenuated the Plaintiffs'

21   relationship was with each of the Defendants, and how distinct and different or distant Wynn Resorts,

22   Ltd was from the Plaintiffs' workplace is a question of fact, as Plaintiffs have already lodged plausible

23   claims through those admitted corporate connections, along with documented evidence attached to

24   this opposition, showing Wynn Resorts, Ltd's heavy involvement in their workplace.

25         **C.     THE DECLARATIONS SUBMITTED BY WYNN RESORTS, LIMITED LACK COMPETENCY**

26              **AND SHOULD NOT BE CONSIDERED, AND ARE ALSO NOT DISPOSITIVE**

27         The "evidence" submitted by Wynn Resorts, Limited in support of its motion are two

28   declarations, neither of which contain sufficient information to indicate that the declarants are

1   competent to be testifying to the matters stated therein, except perhaps to the authenticity of some

2   corporate records. Moreover, it would be unfair to accept this untested, incompetent evidence at this

3   stage for the purpose of dismissing a named corporate entity with demonstrated involvement in at

4   least some of the actions and omissions which led to the harm suffered by the Plaintiffs.

5          The first declaration is from Alisha Balee, who declares that she is currently employed by

6   Wynn Las Vegas, LLC as the "Executive Director of Legal." ECF No. 118-1. Ms. Balee's declaration

7   gives no indication about how long she has been in her position, and her declaration only speaks in

8   the present tense. As set forth in the Second Amended Complaint, many of the actors and individuals

9   controlling or acting in the Plaintiffs' Wynn and Encore Salon workplace which resulted in the

10  discrimination and retaliation occurred in the 2015-2018 timeframe, and chief among the bad actors

11  in that timeframe as a  perpetrator was Steve Wynn so that when the media published reports in 2018,

12  matters got worse for his past victims. Ms. Balee's declaration provides no information about him,

13  his prior corporate roles or the power and authority he exercised through Wynn Resorts, Ltd, of which

14  he was the founder, largest shareholder, CEO and Chairman of the Board and the person who selected,

15  promoted and carried out his wishes in the workplace that bore his name.

16         The second declaration is from Courtney Prescott, who declares that she is currently employed

17  by Wynn Las Vegas, LLC as the "Executive Director of Human Resources." ECF No. 118-2. Similar

18  to Ms. Balee's declaration, no indication is provided as to how long Ms. Prescott has been in her

19  position. Ms. Prescott declares in a conclusory fashion that "[Wynn Resorts, Limited] was not the

20  employer of any person who works at, or has worked at, The Salon at Wynn or The Salon at Encore."

21  *Id.* But no analysis was set forth as to how Ms. Prescott drew that conclusion, including any analysis

22  on the joint employer theory and the elements of control that Wynn Resorts, Limited has exerted over

23  Wynn Las Vegas, LLC over the years.

24         Tellingly, Ms. Prescott also does not disclose her reporting structure upwards, perhaps leaving

25  out the fact about whether she, as the Wynn Las Vegas hotel property HR Director, does indeed report

26  to a global or North American HR Director (who was Rose Huddleston) at the parent corporation

27  level. Certainly, Massachusetts gaming regulators might be interested in knowing whether the

28  reporting structure in the "Wynn." (Ex. 5) is being followed or has been abandoned.

Crucially, neither declaration speaks to the actual operational interrelationship and interaction between the parent defendant (Wynn Resorts, Limited) and the subsidiary defendant (Wynn Las Vegas, LLC), even though Ms. Balee declares that they have "separate legal existences."  ECF No. 118-1.  Neither declaration addresses the control exercised within and among the corporate entities within this structure, nor between and among the persons who occupy positions of power and control in both of those entities (such as the now disgraced CEO and Chairman of the Board Steve Wynn did). Similarly, while Ms. Prescott's declaration asserts in a conclusory fashion that "Wynn Las Vegas is employer for all persons working at The Salon at Wynn [and] The Salon at Encore," her declaration fails to provide any foundation upon which she is competent to offer this evidence, aside from a mere payroll standpoint perhaps in her capacity as Executive Director of Human Resources, which again, is not dispositive.

Neither declaration addresses whether Wynn Resorts, Ltd exercises control in the ways which are repeatedly asserted in Plaintiffs' Second Amended Complaint.  Those factors are the ultimate test of whether Wynn Resorts, Ltd is liable for discrimination and retaliation under Title VII as the joint employer of Plaintiffs.

Lastly, neither declarant addresses any of the commonality of the persons operating and managing the two defendant entities who operate the hotel and casino operation known as the Wynn Resort Hotel and Casino and the Encore Hotel and Casino.  The indisputable facts of interconnection and the same individuals holding similar positions in both corporate entities is set forth in the exhibits attached hereto, which Wynn Resorts, Ltd submitted in disclosures to Massachusetts Gaming regulators.  This alone ought to be sufficient, at this stage, to adequately bolster and corroborate the numerous paragraphs in the Second Amended Complaint which assert that the same individuals hold positions of power, authority, and control in both entities so much so that both entities should remain as defendants in this suit at this time.

## IV.   CONCLUSION

Based on the foregoing, this Court should deny Defendant Wynn Resorts Ltd's  motion to dismiss and joinder to Wynn Las Vegas, LLC's motion to dismiss [ECF Nos. 118, 119] in their entirety.  Alternatively, if the Court deems the factual allegations in the Second Amended Complaint

to be insufficient, Plaintiffs should be allowed to conduct limited discovery on these control matters, including but not limited to deposing declarants Ms. Balee and Ms. Prescott and others, to ascertain and challenge Wynn Resorts Ltd's unsupported assertions of non-control and non-connection between these two corporate entities and to file an amended complaint offering even more evidence of control and connection sufficient to satisfy the joint employer test.

Respectfully submitted this 15th day of April, 2022.

MAIER GUTIERREZ & ASSOCIATES

*/s/ Danielle J. Barraza*

_____
JASON R. MAIER, ESQ., NV Bar No. 8557
JOSEPH A. GUTIERREZ, ESQ., NV Bar No. 9046
DANIELLE J. BARRAZA, ESQ., NV Bar No. 13822
MAIER GUTIERREZ & ASSOCIATES
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89148

KATHLEEN J. ENGLAND, ESQ., NV Bar No. 206
GILBERT & ENGLAND LAW FIRM
610 South Ninth Street
Las Vegas, Nevada 89101
*Attorneys for Plaintiffs*

**DECLARATION OF ATTORNEY KATHLEEN J. ENGLAND, ESQ.**

Kathleen J. England, Esq., attorney for Plaintiffs, hereby declares the following under the penalties of perjury.  I am making this Declaration for the authentication of the exhibit enclosed herein.

**Exhibits 1-11** all contain a true and correct copy of select pages from the Appendix of documents that the Massachusetts Gaming Commission referred to in its March 15, 2019 *Investigative Report Regarding Ongoing Suitability of Wynn MA, LLC*, which are all being submitted as part of an admissible public record pursuant to NRS 51.155.

**Exhibit 12** contains a true and accurate copy of portions of the actual March 15, 2019 *Investigative Report Regarding Ongoing Suitability of Wynn MA, LLC*, which is being submitted as part of an admissible public record pursuant to NRS 51.155.

**Exhibit 13** contains a Wynn Entity Organizational Chart, which was compiled from NV Secretary of State Filings as they existed as of January 13, 2020.  The true and accurate underlying Secretary of State documents as they existed on January 13, 2020 follow behind that Wynn Entity Organizational Chart.

**Exhibit 14** contains a true and accurate copy of a 2016 EEO-1 Report filed by Wynn Resorts Ltd.

**Exhibit 15** contains a true and accurate copy of select pages of the Massachusetts Gaming Commission, 4/3/2019 Adjudicatory Hearing Transcript, which is being submitted as part of an admissible public record pursuant to NRS 51.155.

**Exhibit 16** contains Wynn Resorts, Ltd.'s Post-Hearing Brief submitted to the Massachusetts Gaming Commission, which is being submitted as part of an admissible public record pursuant to NRS 51.155.

Respectfully submitted this 15th day of April 2022:

    */s/ Kathleen J. England*

KATHLEEN J. ENGLAND
Counsel for Plaintiffs

**Exhibit Index**

| Exhibit No. | Description |
|---|---|
| Exhibit 1 | April 3, 2018 Wynn Resorts Memo to All Employees |
| Exhibit 2 | Wynn Company Employee List |
| Exhibit 3 | Resolutions of the Board of Directors of Wynn Resorts, Limited |
| Exhibit 4 | June 8, 2018 Kirkland & Ellis LLP Presentation to Mass Gaming Commission |
| Exhibit 5 | Wynn Preventing Harassment and Discrimination Policy |
| Exhibit 6 | Wynn Flow Chart of Complaints and Investigations |
| Exhibit 7 | Wynn Permitted Disclosures Policy |
| Exhibit 8 | Wynn Personal Relationships and Potential Conflicts of Interest |
| Exhibit 9 | May 18, 2020 Memo from Kim Sinatra Regarding Use of Spa and Salon Services |
| Exhibit 10 | Wynn Resorts, Ltd Compliance Plan, select pages |
| Exhibit 11 | Wynn Employee Interaction with Guest and Other Third Parties Policy |
| Exhibit 12 | Massachusetts Gaming Commission, Investigative Report Regarding Ongoing Suitability of Wynn MA, LLC, select pages. |
| Exhibit 13 | Wynn Entity Organizational Chart, Compiled from NV Secretary of State Filings as they existed as of January 13, 2020 |
| Exhibit 14 | 2016 EEO-1 Report filed by Wynn Resorts Ltd. |
| Exhibit 15 | Massachusetts Gaming Commission, 4/3/2019 Adjudicatory Hearing Transcript, select pages. |
| Exhibit 16 | Wynn Resorts, Ltd.'s Post-Hearing Brief |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 15, 2022, I served a true and correct copy of the foregoing:

**PLAINTIFFS' OPPOSITION TO DEFENDANT WYNN RESORTS, LIMITED'S: (1) MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [ECF NO. 118]; OR (2) IN THE ALTERNATIVE, JOINDER TO DEFENDANT WYNN LAS VEGAS, LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT [ECF NO. 119]** through the CM/ECF system of the United States District court for the District of Nevada upon the following:

Deverie J. Christensen, Esq.
Joshua A. Sliker, Esq.
JACKSON LEWIS P.C.
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
*Attorneys for Defendants Wynn Resorts, Limited and Wynn Las Vegas, LLC*


*/s/ Danielle Barraza*
An Employee of MAIER GUTIERREZ & ASSOCIATES

26