DEVERIE J. CHRISTENSEN, ESQ.
Nevada Bar No. 6596
JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
HILARY A. WILLIAMS, ESQ.
Nevada Bar No. 14645
**JACKSON LEWIS P.C.**
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101
Telephone: (702) 921-2460
Facsimile: (702) 921-2461
E-Mail: deverie.christensen@jacksonlewis.com
E-Mail: joshua.sliker@jacksonlewis.com
E-Mail: hilary.williams@jacksonlewis.com

*Attorneys for Defendants*
*Wynn Resorts, Limited and Wynn Las Vegas, LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JUDY DOE NO. 1, an individual; JUDY DOE NO. 2, an individual; JUDY DOE NO. 3, an individual; JUDY DOE NO. 4, an individual; JUDY DOE NO. 5, an individual; JUDY DOE NO. 6, an individual; JUDY DOE NO. 7, an individual; JUDY DOE NO. 8, an individual; and JUDY DOE NO. 9, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> WYNN RESORTS, LIMITED, a Nevada corporation; WYNN LAS VEGAS, LLC, a Nevada limited liability company; DOES I through X; and ROE CORPORATIONS I through X, inclusive, <br><br> Defendants. | Case No.: 2:19-cv-01904-GMN-VCF <br><br> **DEFENDANT WYNN RESORTS, LIMITED'S REPLY IN SUPPORT OF ITS:** <br><br> **(1) MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; OR** <br><br> **(2) IN THE ALTERNATIVE, JOINDER TO DEFENDANT WYNN LAS VEGAS, LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |

Defendant Wynn Resorts, Limited ("WRL" or "Defendant"), by and through its counsel, the law firm of Jackson Lewis P.C., hereby files this Reply in support of its Motion to Dismiss Plaintiffs' Second Amended Complaint or in the Alternative Joinder to Defendant Wynn Las Vegas, LLC's Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 118) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This Reply is based on the pleadings and papers on file in this case, the following memorandum of points and authorities, the Declarations of Alisha

Balee and Courtney Prescott, and any oral argument that the Court deems proper.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiffs' Opposition (ECF No. 135) demonstrates the insufficiency of their claims against WRL. In a last-ditch effort to avoid WRL's dismissal from this case, Plaintiffs improperly embellish their allegations against WRL, mischaracterize WRL's arguments and their own exhibits, and emphasize irrelevant allegations. In sum, Plaintiffs' Opposition (ECF No. 135) does nothing to change the fact that the Second Amended Complaint (ECF No. 106) failed to sufficiently assert that WRL was Plaintiffs' employer or any facts or theory under which liability could attach to WRL.

## II. LEGAL ARGUMENT

**A. Plaintiffs Fail to Meet their Burden and the Second Amended Complaint Should be Dismissed as to WRL.**

*1. Plaintiffs' do not plead facts to establish employment by WRL.*

As set forth in WRL's Motion to Dismiss (ECF No. 118), simply alleging that one party is the parent company of another party does not, in and of itself, establish a claim as to the parent. ECF No. 118 at 6:7-10:11. That is to say, a plaintiff cannot simply point to an organizational chart as support for a claim against a parent company. "[T]here is a strong presumption against holding a parent corporation liable for the acts or omissions of the subsidiary on the theory that the two corporate entities constitute a single employer;" however, the presumption may be overcome, for example, where the entities can be considered a single employer or integrated enterprise or where the entities can be considered joint employers. *See Urrutia v. Chipotle Mexican Grill, Inc.*, Case No. CV 16-02065-BRO (MRWx), 2017 U.S. Dist. LEXIS 222972, at * 29, (C.D. Cal. June 16, 2017).

Although Plaintiffs conflate the terminology and elements of each of these tests, Plaintiffs appear only to be asserting a joint employer theory. *See, e.g.,* ECF No. 135 at 12:3 (titling the argument "Wynn Resorts Ltd. is a Title VII 'Joint Employer' of Plaintiffs"); *see also, e.g., id.* at

14:26-28 (arguing that WRL is a joint employer due to a "singularity of operational control" over the workplace, a factor to determine whether the integrated enterprise theory applies).[1]

To the extent Plaintiffs nevertheless argue that the integrated enterprise theory, the "single employer" or "integrated enterprise" test is inapplicable where there is no dispute in the pleadings that the plaintiff's direct employer was the subsidiary. *Norwick v. Gammell*, 351 F.Supp.2d 1025, 1034, n. 28 (D. Haw. Aug. 24, 2004) (citing *Watson v. Gulf & W. Indus.*, 650 F.2d 990 (9th Cir. 1981)); *see also Drottz v. Park Electrochemical Corp.*, No. CV 11-1596-PHX-JAT, 2012 U.S. Dist. LEXIS 54274, at *3 (D. Ariz. Apr. 18, 2012) ("[I]f there is no dispute that at least one defendant qualifies as an employer under Title VII, the integrated enterprise test is inapplicable.")

Here, it is undisputed that Defendant Wynn Las Vegas, LLC (not WRL) was Plaintiffs' direct employer. *See, e.g.,* ECF No. 135 at 12:23-25 (arguing that the analysis does not end where WRL insists it never employed any person who works at, or has worked at, The Salon at Wynn or the Salon at Encore); *see also* ECF No. 106 at ¶ 11 (alleging that Wynn Las Vegas, LLC issued Plaintiffs' paychecks). Thus, Plaintiffs cannot rely on the single employer or integrated enterprise theory to support claims against WRL.

Further, Plaintiffs have not sufficiently pled or otherwise explained how WRL and Wynn Las Vegas, LLC are joint employers. To determine whether two entities are joint employers, the test is "the extent of control that one may exercise over the details of the work of the other." *U.S. Equal Emp't Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 638 (9th Cir. 2019). To establish a joint employer relationship, Plaintiffs may allege:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying [employees]; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

---

[1] *See Buchanan v. Watkins & Letofsky, LLP*, No. 21-15633, at *4-5 (9th Cir. Apr. 7, 2022) ("In the Title VII context, we consider the following four factors to determine whether two entities are an integrated enterprise: (1) interrelation of operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership or financial control." (internal quotations omitted))

*See U.S. Equal Emp't Opportunity Comm'n v. Glob. Horizons, Inc.*, 915 F.3d 631, 638 (9th Cir. 2019). In sum, to establish a joint employer relationship, the Plaintiffs must establish the entity had "a comprehensive and immediate level of 'day-to-day' authority over employment decisions." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 682-83 (9th Cir. 2009).

Here, Plaintiffs have alleged that the following to establish that WRL is a joint employer of Plaintiffs:[2]

- "Wynn Resorts" participated in the EEOC process[3]
- Steve Wynn selected the high-level executives for Defendants, who "covered up" Steve Wynn's misconduct and/or failed to protect Plaintiffs[4]
- Wynn Las Vegas, LLC executives held a pre-shift meeting on January 17, 2018[5]
- Defendants convened a meeting on January 31, 2018, in which Steve Wynn appeared[6]
- WRL issued a statement on February 6, 2019, supporting Steve Wynn following his resignation[7]
- Defendants engaged in investigative and remedial measures beginning in March 2018[8]
- The Nevada Gaming Control Board fined Defendants for failing to investigate sexual harassment claims against Steve Wynn[9]
- The Massachusetts Gaming Commission made findings against "Wynn Resorts."[10]

First, whether WRL engaged in the EEOC process or how it chose to engage with the EEOC process has nothing to do with the amount of control that WRL exercised over the details of Plaintiffs' day-to-day work and employment. WRL is entitled to respond to and defend itself from allegations asserted against WRL in the EEOC process. These allegations should not be a factor to determine whether WRL is a joint employer over Plaintiffs.

---

[2] *See* ECF No. 135 at 13:1 n. 7.
[3] ECF No. 106 at ¶¶ 21, 22,
[4] *Id.* at ¶¶ 28, 297, 301, 304, 315, 321-26, 337, 341-346, 354-57, 360-62, 369-73, 385, 386, 390.
[5] *Id.* at ¶¶ 32-34; *see also* Opposition (ECF No.135) at Ex. 2 (showing Maurice Wooden never worked for WRL).
[6] ECF No. 106 at ¶¶ 39-40, 305.
[7] *Id.* at ¶¶ 49, 305-06.
[8] *Id.* at ¶¶ 54, 55, 56-58, 66.
[9] *Id.* at ¶ 68, 90.
[10] *Id.* at ¶¶ 69, 70, 72, 74, 75, 77-80, 82-84, 89, 282, 338.

Second, Plaintiffs circuitously attempt to assign liability to WRL for violating its obligations as an "employer" (*i.e.*, failing to protect Plaintiffs) without first establishing that WRL actually employs the Plaintiffs. For example, Plaintiffs allege that WRL's employment of individuals within its own company somehow equated to controlling the day-to-day terms and conditions of Plaintiffs' employment with Wynn Las Vegas, LLC. *See* ECF No. 135 at 13:21-25. However, Plaintiffs fail to establish how WRL had "a comprehensive and immediate level of 'day-to-day' authority over employment decisions" for Plaintiffs, which would obligate WRL to protect Plaintiffs as their employer. Importantly, Plaintiffs did not allege in their Second Amended Complaint (ECF No. 106) that WRL provided instrumentalities and tools to Plaintiffs, set their schedules, hired or paid Plaintiffs, provided benefits to Plaintiffs, or operated the salons as part of its normal business. In fact, Wynn Las Vegas, LLC has admitted an employment relationship with Plaintiffs, admitted to having day-to-day control over their work, and admitted to operating the Salon at Wynn and Salon at Encore where Plaintiffs worked or continue to work. Accordingly, Plaintiffs' allegations that WRL is their "employer" should be disregarded as conclusory.

Third, the fact that Wynn Las Vegas, LLC held a meeting on January 17, 2018, for its own employees does not establish an employment relationship between Plaintiffs and WRL. Nor does Wynn Las Vegas, LLC holding a meeting for its employees on January 31, 2018, establish an employment relationship between Plaintiffs and WRL, regardless of who spoke at that meeting.

Fourth, WRL's public statements of support regarding its *own former employee* as the Chief Executive Officer, Steve Wynn, do not affect the "details" of Plaintiffs' work or establish that WRL had "day-to-day" control over Plaintiffs.

Fifth, investigations into allegations concerning WRL's *own former employee,* Steve Wynn, and alleged remedial actions aimed at correcting the same, do not show that WRL controlled the terms and conditions of *Plaintiffs' employment*. The fact that both Wynn Las Vegas, LLC and WRL allegedly conducted investigations and remedial actions only shows that both entities took action to correct alleged harassment within their own respective companies (*i.e.,* by Wynn Las Vegas, LLC addressing alleged customer harassment against its employees and WRL addressing alleged harassment by its own former employee, Steve Wynn).

To the extent Plaintiffs allege that WRL's policies and remedial actions after complaints regarding Steve Wynn's alleged conduct came to light affected their workplace conditions at Wynn Las Vegas, LLC, Plaintiffs fail to allege that WRL had any control over the terms and conditions of their workplace and day-to-day details of their work at the time that Steve Wynn's alleged conduct, or any other wrongful conduct, occurred. *See, e.g.,* ECF No. ¶ 55 (indicating that WRL did not have control over Wynn Las Vegas, LLC or Plaintiffs prior to March 14, 2018, when Matt Maddox announced he was "taking over" as the new WRL CEO at a meeting).[11]

Similarly, the fact that the Nevada Gaming Control Board fined both Defendants for their own respective failures to investigate sexual harassment claims against Steve Wynn (without attaching any admissions, findings, or statements from the same to their Second Amended Complaint (ECF No. 106)) does not establish a joint employment relationship over Plaintiffs where the fines were the result of conduct from each company's own employees.

Moreover, Plaintiffs' extensive reliance on the Massachusetts Gaming Commission findings and decisions is misplaced. These documents make findings regarding Wynn MA, LLC (not a party to this action) and WRL's involvement with Wynn MA, LLC. The Massachusetts Gaming Commission did not conduct any investigation, make any finding, or issue any decision regarding Wynn Las Vegas, LLC or Plaintiffs. It is thus wholly irrelevant to establishing the workplace conditions of Plaintiffs or establishing a joint employer relationship between WRL and Wynn Las Vegas, LLC over Plaintiffs. Accordingly, any allegation regarding the Massachusetts Gaming Commission investigation, findings, and decision should be disregarded.

Plaintiffs conclusory statement that WRL "ultimately controlled" Wynn Las Vegas, LLC is insufficient to establish that WRL "ultimately controlled" Plaintiffs' workplace, particularly where they have failed to establish any factual (let alone plausible) allegations to support it. *See* ECF No. 106 at ¶ 11; *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[11] In any event, as a matter of public policy, a non-employer may exert indirect supervision and control over workers without becoming a joint employer if the supervision is to ensure lawful compliance or safety. *See Moreau v. Air Fr.*, 343 F.3d 1179, 1189 (9th Cir. 2003) (finding that "it could be counterproductive to equate ensuring lawful compliance with 'control' or supervision of employees" and declining to find a joint employer relationship in the FMLA context).

1   This is particularly true where, as here, WRL has offered two declarations from WRL's Executive Director of Human Resources and Wynn Las Vegas, LLC's Executive Director of Legal establishing the completely separate nature of the two companies. A declaration from the company is enough to determine the issue as a matter of law. *Stock v. NV Energy, Inc.*, Case No. 3:12-cv-00389-MMD-VPC, 2014 U.S. Dist. LEXIS 127413 (D. Nev. Sept. 10, 2014).[12]

Plaintiffs' insistence regarding what discovery may show does not excuse them from properly pleading their theories in the Second Amended Complaint (ECF No. 106) no matter how fact intensive the inquiry. *See, e.g.,* ECF No. 135 at 17:5-6; *id., e.g.,* at 18:10-12; *Gonzalez v. Diamond Resorts Int'l Mktg.*, No. 2:18-cv-00979-APG-NJK, 2020 U.S. Dist. LEXIS 152523, at *12 (D. Nev. Aug. 21, 2020) ("Litigants must generally possess the requisite basis to bring claims in federal court without the aid of the discovery process; the discovery process is a mechanism to collect evidence on existing claims that are sufficiently pled and is not a mechanism to develop a basis on which to bring claims") (citing *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014)).[13]

Because Plaintiffs cannot establish WRL is or was Plaintiffs' employer, their claims for discrimination, retaliation, and injunctive relief against WRL should be dismissed.

---

[12] Plaintiffs argue, without citation, that they believe the declarations are insufficient. ECF No. 20:25-22:24. They argue that the declarants should have discussed: (1) Steve Wynn's power and authority over WRL, which is irrelevant to establishing whether WRL is or was Plaintiffs' employer, (2) the factors of an "integrated enterprise" (e.g., operational interrelationship and commonality of management), which as discussed above is the wrong test; and (3) whether WRL exercises control over Wynn Las Vegas, LLC and the Plaintiffs, which as established by the declarations, it does not as it maintains its own legal existence and did not employ Plaintiffs.

[13] In support of their argument that the joint employer test is a fact intensive inquiry that should be decided at summary judgment, Plaintiffs cite to several cased "not offered for precedential value" that are: (1) irrelevant because the cases discuss facts not asserted in the Second Amended Complaint (ECF No. 106) and (2) distinguishable from the facts alleged. For example, Plaintiffs' citation to *Haro* is irrelevant from the present facts where Plaintiffs did not allege they complained to WRL or that failing to comply with WRL's policies could result in Plaintiffs' termination. *See* ECF No. 135 at 18:13-20; *Haro v. KRM, Inc.,* No. 2:20-cv-02113-APG-DJA, 2022 WL 980249 (D. Nev. Mar. 30, 2022). It is also distinguishable where in *Haro,* the parent company was actively and directly involved with the discriminatory activity. Similarly, *Kinnebrew* is irrelevant where Plaintiffs did not sufficiently allege that WRL and Wynn Las Vegas, LLC had blurred functions, finances, management and operations, and it is distinguishable because it applies the single employer test, which, as discussed above, is inapplicable to this case. *Kinnebrew v. W. Wholesale Supply, Inc.*, No. 18-00523-WGY, 2021 U.S. Dist. LEXIS 117767 (D. Idaho June 23, 2021). Further, Plaintiffs gloss over important distinguishing facts in *John* where "the subsidiary relied on the parent for payroll, HR, accounting, legal, purchasing, and some safety and sales services*." John v. Core Brace, LLC*, No. 4:20-cv-00071-BLW, 2021 U.S. Dist. LEXIS 140080 at *35 (D. Idaho July 26, 2021).

### 2. Plaintiffs' do not plead facts to establish state law claims outside of the employment context.

In its Motion, WRL showed that Plaintiffs' state law tort claims should be dismissed because they are premised on Plaintiffs' nonexistent employment relationship with WRL. ECF No. 118 at 8:10-10:2. Despite the face of the allegations, Plaintiffs now argue that they did "not necessarily" limit their state law claim to WRL in the context of an employer; however, they continue to rely on the employment relationship to "lend[ ] credence and weight to the coercive misuse of power." ECF No. 135 at 19:15-20:2. Plaintiffs now argue that the Second Amended Complaint (ECF No. 106) suggests that WRL provided negligent management services which harmed "employees" (not specifically Plaintiffs), which they allege is plausible given the fines imposed on WRL by gaming enforcement officials. ECF No. 135 at 19:22-20:2.

However, as discussed above, Plaintiffs fail to allege that any fine from the Nevada Gaming Control Board was for WRL's failure to protect Plaintiffs rather than for the behavior of *its own former employee and gaming licensee*, Steve Wynn, as well as other former WRL employees. Further, as discussed above, the findings and decision from the Massachusetts Gaming Commission is wholly irrelevant to Plaintiffs, their workplace, or their (again, nonexistent) relationship with WRL.

Plaintiffs did not assert state law claims against WRL outside of an employment context and Plaintiffs cannot save them by pointing to irrelevant and incomplete allegations from the Second Amended Complaint (ECF No. 106). Accordingly, Plaintiffs' claims for negligent hiring, training, supervision, and retention, intentional infliction of emotional distress, false imprisonment and invasion of privacy should be dismissed against WRL.

**B. WRL Joins Wynn Las Vegas, LLC's Motion to Dismiss and Reply In Support of its Motion to Dismiss.**

WRL should be dismissed from this action, plain and simple. In the alternative, WRL continues to join, adopt and incorporate Wynn Las Vegas, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 115) and now joins, adopts, and incorporates Wynn Las Vegas, LLC's Reply in Support of its Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 144). Plaintiffs' claims against WRL should be dismissed for the same reasons set forth

1  in Wynn Las Vegas, LLC's Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 115) and Reply (ECF No. 144).

### III. CONCLUSION

For the reasons set forth above, Defendant Wynn Resorts, Limited respectfully requests the Court dismiss Plaintiff's Second Amended Complaint in its entirety with prejudice against Wynn Resorts, Limited.

Dated this 6th day of May, 2022.

JACKSON LEWIS P.C.

*/s/ Deverie J. Christensen*
DEVERIE J. CHRISTENSEN, ESQ.
Nevada Bar No. 6596
JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
HILARY A. WILLIAMS, ESQ.
Nevada Bar No. 14645
300 S. Fourth Street, Suite 900
Las Vegas, Nevada 89101

*Attorneys for Defendants*
*Wynn Resorts, Limited, and*
*Wynn Las Vegas, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Jackson Lewis P.C., and that on this 6th day of May, 2022, I caused a true and correct copy of the foregoing **DEFENDANT WYNN RESORTS, LIMITED'S REPLY IN SUPPORT OF ITS: (1) MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; OR (2) IN THE ALTERNATIVE, JOINDER TO DEFENDANT WYNN LAS VEGAS, LLC'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** to be served via the Court's CM/ECF electronic filing and service system to the following:

Kathleen J. England, Esq.
**Gilbert & England Law Firm**
610 South Ninth Street
Las Vegas, Nevada 89101

Jason R. Maier, Esq.
Joseph A. Gutierrez, Esq.
Danielle J. Barraza, Esq.
**Maier Gutierrez & Associates**
8816 Spanish Ridge Avenue
Las Vegas, Nevada 89145

*Attorneys for Plaintiffs*

/s/ Kelley Chandler
Employee of Jackson Lewis P.C.