**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

JUDY DOE NO. 1, et al.,

        Plaintiffs,

vs.

WYNN RESORTS LIMITED, et al.,

        Defendants.

Case No. 2:19-cv-01904-GMN-VCF

**ORDER**

PLAINTIFFS' SUPPLEMENTAL BRIEFING IN SUPPORT OF THEIR (1) MOTION FOR LEAVE TO PROCEED UNDER FICTITIOUS NAMES AND (2) MOTION FOR PROTECTIVE ORDER [ECF NO. 127]

Plaintiffs Judy Does Nos. 1-9 filed supplemental briefing (ECF No. 127) in support of their motion for leave to proceed under fictious names (ECF No. 20) and motion for protective order (ECF No. 21). I deny the motion to proceed under a fictitious name. Implementation of this order, however, is temporarily stayed, pending a decision on the motion to dismiss. I deny the motion for a protective order as moot.

**I.     Background**

I previously denied plaintiff Judy Does' motion to proceed under fictitious names from the bench in a hearing. ECF No. 20. Judge Mahan affirmed my order and granted defendant Wynn Las Vegas, LLC's motion to dismiss. ECF Nos. 8 and 81. Plaintiffs Judy Does 1-9 appealed. ECF No. 83. The Ninth Circuit affirmed in part, reversed in part, and remanded this case for further proceedings. ECF No. 96.

Pursuant to the Ninth Circuit's mandate, plaintiffs filed their amended complaint. ECF No. 106. The parties filed supplemental briefs regarding the motions to proceed under fictitious names and for a protective order. ECF No. 127. I held a hearing on the supplemental briefing. ECF No. 153. I assess their motion to proceed under fictious names per *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) and *Doe v. Kamehameha Schools*, 596 F.3d 1036 (9th Cir. 2010). I also considered their arguments regarding the protective order.

This is a Title VII case: plaintiff Judy Does work at the Wynn/Encore Salon, and they claim that their employer allowed Steve Wynn[1] to sexually harass them. ECF No. 106. Judy Does bring claims against Wynn Resorts Limited and Wynn Las Vegas, LLC for (1) discrimination based on sex; (2) retaliation; (3) negligent hiring, training, supervision, and retention of high-level executives and human resources personnel; (4) intentional infliction of emotional distress; (5) false imprisonment; (6) invasion of privacy; and (7) injunctive relief. *Id.*

The plaintiffs included specific sections for each of the nine Judy Does in their amended complaint. ECF No. 127 at 3. None of the Judy Does allege that Steve Wynn sexually assaulted them, but their allegations of sexual harassment by Steve Wynn at work are serious and not to be trivialized. I have reviewed their detailed allegations in their amended complaint and in their supplement, such as, but not limited to:

Judy Doe 1: "calling her after hours and on weekends to discuss the projects but descended into overly personal inquiries,"

---

[1] In early 2018, Stephen Alan Wynn resigned from his position as chairman and CEO of Wynn Resorts after multiple media outlets published allegations of Wynn's sexual misconduct against multiple employees. ECF No. 106.

2

Judy Doe 2: "initiating inappropriate physical touching of Judy Doe No. 2 during manicures in his private villa,"

Judy Doe 3: "his wearing inappropriate clothes, his physically touching her inappropriately (grabbing her hands and forcing her to massage him near his genitals during a manicure or pedicure),"

Judy Doe 4: "inappropriate inquiries making about her sexual practices, inappropriately touching her, and telling her how he likes sex, and asking her inappropriate sexual questions."

Judy Doe 5: "Steve Wynn acted physically inappropriate towards Judy Doe No. 5, including but not limited to wrapping his arms around her, using her body to maneuver himself in his chair, wearing only underwear, etc.,"

Judy Doe 6: "forcing her to provide services in the seclusion of his office and villa, where he touched her, spoke directions to her in a very low and seemingly seductive voice, and where he inappropriately maneuvered his body closer to her during the manicures" and that she was "very frightened by the presence of Steve Wynn's highly trained German shepherd guard dog at his private villa, who growled at her."

Judy Doe 7: "forcing her hand into his crotch area, touching her thigh, and asking her inappropriate sexual questions" and "sitting too close to her, entwining his legs with hers, touching her unnecessarily, positioning himself inappropriately for her to reach his hand for manicure, and also asking her sexual questions and otherwise playing mind games with her."

Judy Doe 8: "forcing her to perform services to him in the seclusion of his private office, where he made inappropriate sexual advances to her (which she rebuffed although fearing reprisal),"

Judy Doe 9: "He made inappropriate physical gestures and comments about watching pornography."

See ECF Nos. 106 and 127.

The plaintiffs argue in their supplement that they should be allowed to proceed using fictitious names because they will be humiliated if their identities are revealed. ECF No. 127. Plaintiffs also argue in their supplement in support of their motion for a protective order that their identities should be protected from Steve Wynn, even though he is likely to be a witness in this case. *Id.* They also argue that Steve Wynn will sue them for defamation if he learns their identities. *Id.* They also note the Ninth Circuit's ruling on the issue, which states:

> [T]he district court should reassess the motion to proceed under fictitious names, carefully applying the Ninth Circuit test as articulated in *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) *and Doe v. Kamehameha Schools,* 596 F.3d 1036 (9th Cir. 2010).

ECF No. 96 at 6.

The defendants argue in their opposition that plaintiffs have failed to demonstrate sufficient grounds for the use of fictitious names under the controlling standards articulated in *Does I thru XXIII v. Advanced Textile Corp*., 214 F.3d 1058 (9th Cir. 2000) and *Doe v. Kamehameha Schools*, 596 F.3d 1036 (9th Cir. 2010). ECF No. 148 at 2. Defendants also argue that plaintiffs' request for a protective order, that prevents defendants from disclosing their true names in discovery to non-parties, including to Steve Wynn, would greatly prejudice them. *Id.*

At the hearing on the supplemental briefing, the plaintiffs argued that they have now provided evidence that their fear that Steve Wynn will sue them for defamation is reasonable, given that he has filed many defamation lawsuits against his accusers in the past. Plaintiffs argued that if Steve Wynn is deposed, they can put Judy Doe #1-9's affidavits in front of him, so their actual identities are of little importance. The plaintiffs also argue that they will be embarrassed at work if they are identified as Steve Wynn's victims. Plaintiffs argue that this is not a run-of-the-mill sexual harassment case because of the identity of Steve Wynn: a billionaire sexual predator with his signature on the building where they work.

The defendants argue at the hearing that the actual allegations that the Judy Does make against Steve Wynn, though not to be minimized, are like the allegations other plaintiffs (who proceeded with their real names) have made in other sexual harassment cases. The defendants also argued at the hearing that they are not so concerned with what is on the public docket, but they will be greatly prejudiced if they cannot reveal the Does' identities to Steve Wynn or others during discovery.

## II. Discussion

### a. Legal Standard

Firmly embedded in the American judicial system is a presumption of openness in judicial proceedings. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 569-574, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980) (describing the benefits of full access to the court system); see also *Nixon v. Warner Commc'ns*, 435 U.S. 589, 612, 98 S. Ct. 1306, 1319 (1978) (Noting that the common law right of access to courtroom is a precious common law right, one that predates the Constitution itself.)

That is why our court system has a default preference for openness, and parties are allowed to use pseudonyms "in the 'unusual case' when nondisclosure of the party's identity 'is necessary ... to protect a person from harassment, injury, ridicule or personal embarrassment.'" See *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir.2000) (citing *United States v. Doe*, 655 F.2d 920 (9th Cir. 1981) and *Doe v. Madison Sch. Dist.* No. 321, 147 F.3d 832 (9th Cir. 1998)).

If such unusual or special circumstances exist, the district court has discretion to permit a party to remain anonymous so long as "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068 (quotation omitted). The court must "determine the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice." *Id.* (citing *James v. Jacobson*, 6 F.3d 233, 240-41 (4th Cir. 1993)). The court must also decide "whether the public's interest in the case

would be best served by requiring that the litigants reveal their identities." *Id.* at 1068-69 (citing *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981)).

Federal Rules of Civil Procedure Rule 10(a) commands that the title of every complaint must name all the parties. "The normal presumption in litigation is that parties must use their real names." *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). In *Advance Textile*, the Ninth Circuit held:

> [A] district court must balance the need for anonymity against the general presumption that parties' identities are public information and the risk of unfairness to the opposing party. Applying this balancing test, courts have permitted plaintiffs to use pseudonyms in three situations: (1) when identification creates a risk of retaliatory physical or mental harm; (2) when anonymity is necessary "to preserve privacy in a matter of sensitive and highly personal nature"; and (3) when the anonymous party is "compelled to admit [his or her] intention to engage in illegal conduct, thereby risking criminal prosecution[.]"

*Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067-68 (9th Cir.2000) (citations omitted); see also *Doe v. Ayers*, 789 F.3d 944, 945-946 (9th Cir. 2015) (noting that proceeding under a pseudonym is a "high bar.")

If a party seeks to sue anonymously based on retaliatory harm (the first situation), courts apply a five-factor balancing test that weighs: (1) the severity of the threatened harm, (2) the reasonableness of the anonymous parties' fears, (3) the anonymous party's vulnerability to retaliation, (4) prejudice to the opposing party, and (5) whether the public's interest in the case requires that litigants reveal their identities. *Kamehameha Sch.*, 596 F.3d at 1042 (citing *Advanced Textile Corp.*, 214 F.3d at 1068). The first and second factors are the most important. *Id.* at 1042- 43.

Where a party does not allege a risk of retaliatory harm (e.g., party asserts privacy in sensitive and highly personal matters), courts engage in a condensed analysis weighing: (1) the party's interest in

6

anonymity, including the severity of any likely harm; (2) any prejudice to the opposing party; and (3) the public's interest. *Doe v. United Airlines, Inc.*, No. 2:17-cv-2825-RFB-NJK, 2018 U.S. Dist. LEXIS 141573, at 2-3 (D. Nev. Aug. 21, 2018) (citing *J.J. v. Olympia Sch. Dist.*, 2016 U.S. Dist. LEXIS 86874, at 4 n.1 (W.D. Wash. July 5, 2016); *Doe v. JBF RAK LLC*, No. 2:14-cv-00979-MMD-GWF, 2014 U.S. Dist. LEXIS 98688 (D. Nev. July 18, 2014). District courts have broad discretion to determine whether a plaintiff may proceed anonymously. *Advanced Textile Corp.*, 214 F.3d at 1068; *Kamehameha Schools*, 596 F.3d at 1045-1046.

### b. Analysis

#### i. The Three Situations in *Advanced Textile*

The parties concede that the third situation in *Advanced Textile* (regarding risking criminal prosecution) does not apply in this case. Plaintiffs argue that the first two situations (regarding retaliation and privacy) apply. Since the plaintiffs argue they will face retaliation (the first situation), I apply the five-factor balancing test. See *Kamehameha Sch.*, 596 F.3d at 1042 (citing *Advanced Textile Corp.*, 214 F.3d at 1068). Since the Judy Does also seek to proceed anonymously because of privacy (the second situation), I also consider the condensed three-step analysis. See *Doe v. United Airlines, Inc.*, No. 2:17-cv-2825-RFB-NJK, 2018 U.S. Dist. LEXIS 141573, at 2-3 (D. Nev. Aug. 21, 2018). Since these balancing tests overlap, I also consider them together.

#### 1. The First Situation: Risk of Retaliatory Harm
##### a. Factors One and Two: Severity of the Threatened Harm and Reasonableness of Fear

Plaintiffs fear will suffer severe retaliatory harm from multiple sources. They argue that their names must be kept off the public docket because if Steve Wynn, specifically, learns their identities, he will sue them for defamation. ECF No. 127 at 18. Although the Wynn corporate defendants in this case

already know the Judy Does' identities, the Does allege that their current supervisors may not be aware of their litigation and may retaliate against them. *Id.* at 23. The Judy Does also argue that they are still working in the salon and beauty industry, and fear retaliation within the industry. *Id.* at 18. They also argue that that Steve Wynn's powerful friends will retaliate against them. *Id.*

The Ninth Circuit held that that when a plaintiff faces economic rather than physical harm, the harm must be "extraordinary" to justify granting anonymity, 214 F.3d at 1070-71. The Ninth Circuit distinguished "perhaps typical" fears of termination and blacklisting, which many plaintiffs face, from the "extraordinary" harm required to justify granting anonymity. *Id.* In *Advanced Textile*, the Ninth Circuit overturned the lower court's refusal to grant plaintiffs' request to proceed anonymously. The plaintiffs, Chinese garment workers working on the island of Saipan, feared that if their employers discovered their participation in the suit, they would be terminated.  *Id.* Once terminated, they were likely to be deported to China, where they or their family could be imprisoned for failure to pay punitive debts imposed by the employers. *Id.* The Ninth Circuit found that these workers' fears of potential deportation, arrest, and imprisonment constituted "extraordinary" retaliation, meriting an anonymity order. *Id.* The Ninth Circuit found that their fears were reasonable based on the workers' declarations repeating the threats of their employers and since they knew other people who had been imprisoned in China for failure to pay debts. *Id.* at 1065.

The Ninth Circuit distinguished a Fifth Circuit case holding that plaintiff attorneys in a Title VII action had no right to anonymity, because their fears of being fired or otherwise retaliated against by their employers for asserting their claims were "typical." *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir.1979). The Ninth Circuit noted that the Fifth Circuit had "simply held that it was not faced with a case meriting anonymity because the threatened retaliation was not extraordinary." *Advanced Textile Corp.*, 214 F.3d at 1070.

8

### i. Fear of being sued

The Judy Does conceded at the hearing that they face much less severe harm than the *Advanced Textile* plaintiffs. The Judy Does fear that if they reveal their identities on the public docket, Steve Wynn will retaliate by bringing a defamation lawsuit against them, which would cause economic harm. Plaintiff argues that Steve Wynn has vast financial resources and has already sued many people who have publicly accused him of misconduct for defamation.[2] The defendants argue that the plaintiffs' sworn statements in this case, however, are absolutely privileged[3] and cannot form the basis of a lawsuit. The defendants point out that Steve Wynn has not sued anyone that has brought similar sexual harassment claims in court, and that the litigants in those sexual harassment cases did not proceed fictitiously.[4]

A defamation lawsuit against the Judy Does based only on the allegations in this case would be frivolous because their statements in this case are protected by the litigation privilege. If that were the end of the story, this issue would be simple. I agree with the Judy Does, however, that the threat of a

---

[2] For example, he sued their former boss Jorgen Nielsen, after he was quoted in the Wall Street Journal. See ECF No. 148 at 8.

[3] "[There] is [a] long-standing common law rule that communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. The absolute privilege precludes liability even where the defamatory statements are published with knowledge of their falsity and personal ill will toward the plaintiff." *Sahara Gaming v. Culinary Wkrs. Union*, 115 Nev. 212, 216, 984 P.2d 164, 166 (1999) (quoting *Circus Circus v. Witherspoon*, 99 Nev. 56, 60, 657 P.2d 101, 104 (1983)).

[4] See *Angelica Limcaco v. Wynn Las Vegas, LLC, Steve Wynn, et. al.*, Case No. A-19-796060-C (Nevada District Court); *Angelica Limcaco v. Wynn Las Vegas, LLC, Steve Wynn, et. al.*, Case No. 2:2018-cv-01685 (D. Nev.); *Angelica Limcaco v. Wynn Las Vegas, LLC, Steve Wynn, et. al.*, Case No. 2:2020-cv-11372 (C.D. Cal.); *Angelica Limcaco v. Wynn Las Vegas, LLC, Steve Wynn, et. al.*, Case No. 2:2020-cv-11370 (C.D. Cal.); *Brenna Schrader v. Wynn Resorts, Limited, Wynn Las Vegas, LLC, Steve Wynn*, Case No. A-19-802598-C (Nevada District Court); *Brenna Schrader v. Wynn Resorts, Limited, Wynn Las Vegas, LLC, Steve Wynn*, Case No. 2:2019-cv-02159 (D. Nev.); *Jane Doe v. Stephen A. Wynn*, Case No. A-18-770360-C (Nevada District Court) (On March 9, 2018, court denied Plaintiff permission to proceed using fictitious name; stipulation for dismissal with prejudice was filed on August 16, 2018). None of the Plaintiffs in these cases were sued by Steve Wynn.

lawsuit, even a likely frivolous defamation lawsuit, is still a threat.[5] The potential harm of a retaliatory lawsuit is heightened when the perpetrator is an alleged serial litigator, with unlimited resources, the ability to forum-shop, and a history of abusing the court system with potentially frivolous defamation suits.

There is no threat of severe retaliatory harm here, however, even assuming the Judy Does' fears are true, because there is nothing preventing Steve Wynn from suing the Judy Does now. If Steve Wynn does not yet know their identities, there is nothing preventing him from filing a lawsuit against "Judy Does 1-9." The doe lawsuit is generally a tool in the plaintiff's toolbox – either by bringing the lawsuit as an anonymous plaintiff like the Does in this case—or by bringing a lawsuit against a doe defendant, with the intent of discovering the identity of the doe defendant during litigation. Plaintiffs brought this lawsuit in 2019, and Steve Wynn has not sued them yet. Steve Wynn has no reason to sit back and wait for the anonymous speakers' masks to fall. The Judy Does have already spoken, and the ball is already in Steve Wynn's court. Defamation lawsuits, whether they are frivolous or not, against "doe defendant anonymous speakers" are more than commonplace in today's digital world.

Steve Wynn may also already know their identities, given that the Judy Does have specifically identified Steve Wynn as the perpetrator of the alleged sexual harassment. See *Doe v. Hallock*, 119 F.R.D. 640, 644 (S.D. Miss. 1987) ("the source of any harassment apparently is already aware of plaintiff's identity, and there is little reason to believe that disclosure of her identity in this lawsuit would serve to increase the number of such incidents"); see also *S. Methodist Univ. Ass'n of Women*

---

[5] This type of lawsuit is a typical strategic lawsuit against public participation (also known as a SLAPP suit or intimidation lawsuit). These lawsuits are intended to censor, intimidate, and silence critics by burdening them with the cost of a legal defense until they abandon their criticism or opposition. Nevada has a strong anti-SLAPP law (NRS 41.635-670) that offers some protection against these meritless lawsuits. SLAPP plaintiffs, however, often use forum shopping to avoid these protections. There is currently no federal anti-SLAPP law.

*Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) (the normal presumption in litigation is that parties must use their real names which is loosely related to right of private individuals to confront their accusers). While it might potentially be easier for Steve Wynn to sue the Judy Does if their names are on the public docket, keeping their names secret from the public does not prevent him from filing a suit now. Plaintiffs' request to shield their identities from the public to protect them from this hypothetical lawsuit is an extreme request.

Regarding reasonableness of the fear I, "consider the surrounding context and other listeners' reactions to the threats." *Kamehameha Sch.*, 596 F.3d at 1044. I also consider whether "plaintiffs were threatened, and [whether] a reasonable person would believe that the threat might actually be carried out." *Kamehameha*, 596 F.3d at 1044 (internal quotation marks and citations omitted, alteration in the original). Steve Wynn has not threatened to sue the Judy Does. Plaintiffs only speculate that he might sue them if he learns their names. Plaintiffs have not met their burden to show that their fear of being sued reasonably rises to the unusual level required to justify shielding their identity. There are no factors here, like in *Advanced Textile*, such as a high risk of arrest or imprisonment, elevating the Judy Does' fears to the level of an "extraordinary" fear.

      **ii.  Fear of severe retaliatory harm from supervisors, from within the salon/beauty industry, or from Steve Wynn's powerful friends**

Plaintiffs' fear that their supervisors, others in the industry, or powerful friends of Steve Wynn, will retaliate against them. The plaintiffs do not allege that any of Steve Wynn's powerful friends have threatened to retaliate against them, but they allege generally that he has powerful friends in the salon and gaming community that will retaliate against them. ECF No. 127 at 21. The Judy Does also claim

that "use [of] fictitious names will help eliminate any possibility of supervisors/managers using this lawsuit as leverage against them." *Id.* at 23.

The Judy Does also allege that they fear retaliation in the "salon industry" in general. *Id.* at 3. The Judy Does do not give specific examples of any threatened retaliation from their managers or from within the salon/beauty/gaming industry.[6] Their allegations regarding "leverage" imply that they face reduced work, possible termination, or blacklisting within the salon/beauty industry. These arguments open the figurative flood gates, given that many employees would prefer to litigate their cases against their employers in secret. The presumption that plaintiffs should proceed under their real names, as highlighted by Rule 10, reflects the openness of our public courts. The plaintiff's fears of retaliation from current or potential future employers are not "extraordinary" but are examples of the "typical" fears described by the Ninth Circuit in *Advanced Textile*.

The Ninth Circuit noted that the District Court could not rely on the anti-retaliation provisions of the Fair Labor Standards Act to protect the plaintiffs because, once they were deported to China, these provisions would be effectively impossible to enforce. *Advanced Textile*, 214 F.3d at 1071. Employment law in the United States offers many protections for workers against retaliation, unlike the plaintiffs in *Advanced Textile*. Plaintiffs have not met their burden of showing both (1) that they have a fear of severe harm, and (2) that their fear of severe harm is reasonable. See *Kamehameha Sch.*, 596 F.3d at 1042.

//

---

[6] They allege that the corporate Wynn defendants hired an undercover agent to spy on their former boss, Salon Director Jorgen Nielsen, because of a quote he gave to the Wall Street Journal. The Judy Does appear to imply that they fear a similar type of retaliation. Given that the corporate Wynn defendants already know the Judy Does' identities, there is nothing preventing the Wynn defendants from taking similar actions now. The Judy Does do not allege that anything like this has happened to them.

### b. Factor Three: Vulnerability to Retaliation

Regarding vulnerability to retaliation, The Ninth Circuit found that the workers were very vulnerable to retaliation because their employment contracts prevented them from seeking any other work on Saipan. *Advanced Textile*, 214 F.3d at 1065.

Plaintiffs' fear of being sued in retaliation by Steve Wynn is understandable. The Judy Does have submitted declarations they know that Steve Wynn has sued other people who have made similar public allegations about him. Since there is nothing stopping Steve Wynn from suing them now, however, they are probably not vulnerable to a pure retaliatory lawsuit, absent some other factor.

Plaintiffs have not alleged that they have faced any retaliation since filing their EEOC Charges (in 2018) nor this case (in 2019). Steve Wynn and other executives identified in plaintiffs' complaint are no longer employed by the defendants in this case. The Massachusetts Gaming Commission Report, attached to plaintiffs' motion, states that, "Mr. Wynn is no longer with the Company, and the individuals identified in this investigation as bearing the most responsibility for the corporate failures have been replaced." ECF No. 21-1 at 199.

Plaintiff's fear that their supervisors, others in the industry, or powerful friends of Steve Wynn, will retaliate against them are not reasonable. Unlike the *Advanced Textile* plaintiffs, the plaintiff Judy Does have not been threatened with any type of retaliation from any of these actors. The plaintiff Judy Does do not allege that any of the other victims been blacklisted in their industry for making similar allegations.

Unlike the defendants in *Advanced Textile*, the plaintiffs do not allege that the defendants here will terminate and deport their workers and thus take the matter outside the Court's jurisdiction. Plaintiffs' vulnerability to retaliation if their names are disclosed to Steve Wynn or other non-parties is minimal. Plaintiffs have not met their burden to show that they are vulnerable to retaliation.

13

### c. Factors Four and Five: Prejudice to the Opposing Party and the Public's Interest

Defendants take no position regarding whether plaintiffs' names are on the public docket, other than that they argue that plaintiffs have not met their burden. Defendants strongly oppose plaintiffs' motion to remain anonymous to prevent Steve Wynn from learning their identities. Defendants argue they need to disclose plaintiffs' identities to Steve Wynn and other non-parties to adequately investigate plaintiffs' allegations, conduct discovery, and to prepare their defense in this case. One of the plaintiffs' biggest fears is for Steve Wynn to learn their identity. Plaintiffs propose that Steve Wynn can be interviewed and deposed in this case without knowing their names because he will be able to look at each of the Doe declarations and their charges on paper.

The Ninth Circuit noted in *Advanced Textile* that the Court should "determine the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice." *Advanced Textile Corp.*, 214 F.3d at 1068.  Plaintiffs' request to conceal their identities from Steve Wynn, the named perpetrator, and other non-parties, will greatly prejudice the defendants once discovery opens.

Plaintiffs also argue their identity is not crucial to the resolution of this case. They argue that remaining anonymous would not obstruct the public's ability to scrutinize the important issues in this case. Openness in judicial proceedings fosters the press's ability to research the litigants' backgrounds (which may bear on matters pertaining to credibility) and the potential motivations for suing. That information may be central to the public's broader understanding of this case. Allowing the plaintiffs to proceed without using their true names undermines these important values.

Federal courts are courts of public record, and the strong presumption is that the public has a right to know who is seeking what in court and whether he or she is entitled to the relief sought. The

presumption can be overcome in unusual cases where anonymity is critical. This is not such an unusual case. The public interest factor weighs against allowing the plaintiffs to proceed anonymously.

Except for limited discovery relevant to the defendants' corporate structure, discovery is currently stayed pending a motion to dismiss. I find that any prejudice to the defendants and the public is minimal at this stage. If this case survives the motion to dismiss and discovery opens, however, both prejudice factors weigh against the plaintiffs.

### 2. The Second Situation: Preservation of Privacy in a Matter of Sensitive and Highly Personal Nature

I have already analyzed the severity of harm from the perspective of retaliation, so now I consider the condensed analysis, regarding the severity of any likely harm, the party's interest in anonymity, and prejudice (to the defendants and the public interest) in the context of the second situation. Plaintiffs argue that they should be permitted to use fictitious names because they are afraid of having to relive their traumatic experiences publicly and while at work. ECF No. 127 at 18. For example, plaintiffs argue that clients might identify them as one of Steve Wynn's victims and make intrusively thoughtless comments. ECF No. 127 at 20.

Plaintiffs' allegations involve sensitive issues that are personally embarrassing to them. There are no allegations of sexual assault in this case. The defendants argue that the type of sexual harassment they allege Steven Wynn subjected them to are all within the realm of a typical Title VII sexual harassment suit. The Judy Does claim they were subjected to unwelcome verbal and/or physical conduct of a sexual nature by Steve Wynn. Title VII plaintiffs usually bring their suits in their own names. The Judy Does argue that this case is different from other Title VII sexual harassment suits because of the identity of Steve Wynn. Steve Wynn's wealth and notoriety make this case different, rather than the actual allegations of the Judy Does.

Many other courts have considered the issue of the famous perpetrator, and the media attention associated with accusing the famous perpetrator in a civil case. For example, in *Doe v. Shakur*, 164 F.R.D. 359 (S.D.N.Y. 1996), which the defendants cite to in their brief, the doe plaintiff alleged that rapper Tupac Shakur brutally sexually assaulted her. The court did not allow her to proceed anonymously and found that because she chose to bring civil charges against Shakur, she had to "be prepared to stand behind her charges publicly." *Id.* at 361. The court also found that, "this is a civil suit for damages, where plaintiff is seeking to vindicate primarily her own interests. This is not a criminal case where rape shield laws might provide some anonymity to encourage victims to testify to vindicate the public's interest in enforcement of our laws." *Id.* The court also considered the fact that, "Shakur has been publicly accused. If plaintiff were permitted to prosecute this case anonymously, Shakur would be placed at a serious disadvantage, for he would be required to defend himself publicly while plaintiff could make her accusations from behind a cloak of anonymity." *Id.,* citing to *Southern Methodist Univ. Ass'n of Women Law Students*, 599 F.2d at 713 (Because "the mere filing of a civil action against…private parties may cause damage to their good names and reputation," "basic fairness" dictates that plaintiffs who publicly accuse defendants in civil suits "must [sue] under their real names."); and *Doe v. Hallock*, 119 F.R.D. 640, 644 (S.D. Miss. 1987) ("By filing her complaint, the plaintiff has levelled serious charges against the defendants, and has specifically identified them in the complaint.").

It is worthwhile to point out that the *Shakur* court made this ruling more than 25 years ago. Since that time, the rise of important social justice movements—like the #MeToo movement and Black Lives Matter—have shed light on acts of severe violence and injustices suffered by women, people of color, and other marginalized groups. Courts now place more weight on the psychological trauma faced by victims of sexual assault, the easy public access of court records online, and the deterrent effect that

16

outing a sexual assault victim may have on other victims. Courts are also grappling with urgent issues like unconscious bias, that fact that people of color are more likely to be falsely accused of egregious crimes (like, but not limited to, sexual assault), and the fact that survivors of color often face difficult obstacles when seeking justice for violent crimes. The *Shakur* court's ruling, made more than a quarter of a century ago, probably did not consider the sexual assault victim's trauma in the same light that a modern court would. The *Shakur* court's ruling also, however, unfortunately still illustrates the tensions that exist between many important issues.[7]

I assume for the purposes of this order that all the Judy Does allegations against Steve Wynn, which are horrific, are true. Many sexual harassment plaintiffs have brought horrific claims against their supervisors and have done so using their real names. Plaintiff's contention here is that it is the identity of Steve Wynn, i.e., of being identified as one of Steve Wynn's victims, is what makes this case different from other sexual harassment cases. This is not an unusual case, however, given that several other people have sued using their real names with similar allegations against Steve Wynn and the instant defendants.

The #MeToo movement showed the world that powerful people, mostly men, were abusing their power and perpetrating violence against women. Many of these famous men have rightfully lost much of their power thanks to the courageous public testimony of the survivors who came forward. Most of these survivors used their own names and put their own credibility on the line. The Judy Does have already made their allegations about Steve Wynn in public by specifically identifying him in these public filings. The plaintiffs argue that Steve Wynn is a "billionaire sexual predator" that invites negative media

---

[7] Shakur, a black man, who was himself an influential figure for social justice and racial equality, was killed here in Las Vegas a mere few months after the *Doe v. Shakur* court's ruling. At the time of this writing, his murder is still unsolved.

attention. This begs the question raised by the *Shakur* court regarding what type of prejudice accused perpetrators (who do not have the option to remain anonymous once the complaint is filed) face in having to defend themselves against unnamed accusers. Steve Wynn is not a defendant here, but the named corporate defendants in this case will be prejudiced if discovery opens, and they are unable reveal the identities of the plaintiffs to their witnesses or Steve Wynn. Plaintiffs essentially argue that the embarrassment they feel is worse than similarly situated sexual harassment plaintiffs because the alleged perpetrator is a high-profile public figure. This argument, however, inappropriately discounts the trauma felt by people who are sexually harassed by supervisors who are not famous.

Allowing plaintiffs in general to proceed anonymously against famous perpetrators in sexual harassment cases based on the perpetrator's identity, will also lower the public's confidence in the courts. Considering the acts of the perpetrator, in contrast to similarly situated sexual harassment plaintiffs, serves the public interests of treating like cases alike and protecting open courts. The plaintiffs' fear of harassment, injury, ridicule or personal embarrassment in this case are equally present for all similarly situated sexual harassment victims and is not extraordinary. The plaintiffs' interest in remaining anonymous is greatly outweighed by the prejudice to the public. The plaintiffs have not met their burden regarding the factors in the second situation.

### III. Conclusion

Plaintiffs' allegations are not to be taken lightly. In weighing these factors, I conclude that plaintiff has not met the high burden required by the law of this Circuit. Proceeding anonymously is the exception to the rule. *Advanced Textile*, 214 F.3d at 1067. The plaintiff's allegations do not meet the high standard of "extraordinary harm." I deny plaintiffs' request to proceed anonymously. Since discovery is substantially stayed pending the outcome of a motion to dismiss, and I consider prejudice at each stage of the litigation, implementation of this order is also stayed pending the outcome of the

motion to dismiss. Since I order that the Judy Does may not proceed under fictious names on the public docket, I deny their proposed protective order that conceals their identity from Steve Wynn and others as moot.

ACCORDINGLY,

I ORDER that plaintiff Judy Does Nos. 1-9 supplement to her motion for leave to proceed anonymously in this case (ECF No. 127) is DENIED.

I FURTHER ORDER that plaintiff's motion for a protective order (ECF No. 127) is DENIED AS MOOT.

I FURTHER STAY implementation of this order pending the outcome of the motion to dismiss. Although implementation of this order is temporarily stayed, the time to object is still within fourteen days of the date of this order. See Local Rules IB 3-1 and IB 3-2.

I FURTHER ORDER that an in-person status hearing is set for **11:00 AM, November 2, 2022**, in Courtroom 3D.

IT IS SO ORDERED.

DATED this 9th day of August 2022.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE