1
2

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

3
4
5
6
7
8

| | |
|---|---|
| JUDY DOE NO. 1, *et al.*, | ) |
| | ) |
| Plaintiffs, | )    Case No.: 2:19-cv-01904-GMN-VCF |
| vs. | ) |
| | )         **ORDER** |
| WYNN RESORTS, LIMITED, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

9
10

Pending before the Court is Defendants Wynn Las Vegas, LLC and Wynn Resorts,

11 Limited's[1] (collectively, "Defendants'") Motion to Dismiss, (ECF No. 115). Plaintiffs Judy

12 Doe No. 1, Judy Doe No. 2, Judy Doe No. 3, Judy Doe No. 4, Judy Doe No. 5, Judy Doe No. 6,

13 Judy Doe No. 7, Judy Doe No. 8, and Judy Doe No. 9 (collectively, "Judy Doe Plaintiffs")[2]

14 filed a Response, (ECF No. 136), to which Defendants filed a Reply, (ECF No. 144).

15 Further pending before the Court is Defendant Wynn Las Vegas, LLC's unopposed

16 Motion to Seal, (ECF No. 117), and unopposed Motions for Leave to File Excess Pages, (ECF

17 Nos. 114, 142).

18
19
20

---

21 [1] Defendant Wynn Resorts, Limited filed a separate Motion to Dismiss, (ECF No. 118), arguing that dismissal is
warranted because it "has never been [the Judy Doe Plaintiffs]' employer, and as such, is not a proper party to the
22 lawsuit." (Wynn Resorts, Limited Mot. Dismiss ("MTD") 1:26–28). Alternatively, Defendant Wynn Resorts,
Limited asserted that it "join[ed], adopt[ed], and incorporat[ed] herein the legal arguments set forth" in Wynn
23 Las Vegas's, "Motion to Dismiss Plaintiffs' Second Amended Complaint (ECF No. 115)." (*Id.* 14:8–12).
Accordingly, the Court includes Defendant Wynn Resorts, Limited in the instant Motion to Dismiss.
24 [2] In a previous Order, the Magistrate Judge denied the Judy Doe Plaintiffs' Motion to Proceed Under Fictious
Names, (*see generally* Order, ECF No. 154), but stayed implementation of the Order "pending a decision on the
25 [instant] motion to dismiss." (*Id.* 1:15–18). The Judy Doe Plaintiffs have subsequently filed an Objection, (ECF
No. 157), to the Magistrate Judge's Order. Accordingly, the Court will continue to use fictious names in
referring to the Judy Doe Plaintiffs and will separately review the Judy Doe Plaintiffs' Objection to the
Magistrate Judge's Order.

For the reasons discussed below, the Court GRANTS in part and DENIES in part Defendants' Motion to Dismiss.  Further, the Court GRANTS Defendant Wynn Las Vegas, LLC's Motions for Leave to File Excess Pages[3] and DENIES it's Motion to Seal.[4]

## I.    BACKGROUND

This case arises from Steve Wynn's alleged sexual harassment of the Judy Doe Plaintiffs and other unnamed individuals, and the subsequent response taken by Defendants.[5]  The Judy Doe Plaintiffs all worked for Wynn Las Vegas at either the Wynn or Encore Salon (collectively, "the Salon").[6]  (SAC ¶ 27, ECF No. 106).  The Judy Doe Plaintiffs allege that Steve Wynn personally selected high-level executives who "facilitated, enabled, and covered up decades" of his "sex-based" misconduct.  (Id. ¶ 28).  The Judy Doe Plaintiffs further contend

---

[3] The Court grants Defendant Wynn Las Vegas, LLC's Motions for Leave to File Excess Pages given that the Judy Doe Plaintiffs do not oppose the Motions. (ECF Nos. 114, 142).

[4] Because Defendant Wynn Las Vegas, LLC's Motion to Seal relates to its Motion to Dismiss, "the sealing motion[] [is] more than tangentially related to the merits of the case.  Thus, the compelling reasons standard applies." HotSpot Therapeutics, Inc. v. Nurix Therapeutics, Inc., No. 22-cv-04109, 2022 WL 16637988, at *2 (N.D. Cal. Nov. 2, 2022) (citation omitted).  Here, Defendant Wynn Las Vegas, LLC petitions the Court to seal the Judy Doe Plaintiffs EEOC Charges of Discrimination in their entirety based on a protective order issued by the Magistrate Judge, (ECF No. 113), "protecting from disclosure to Steve Wynn the names/identifies of the nine Judy Doe Plaintiffs" until the Court rules on Defendants' Motion to Dismiss. (Mot. Seal 3:20–27, ECF No. 117).  The Court agrees with Defendant Wynn Las Vegas, LLC that the continued protection of the Judy Doe Plaintiffs identities is a compelling reason to seal; the Court disagrees, however, that wholesale sealing is the solution.  To the extent the EEOC Charges of Discrimination contain "additional detailed accounts of alleged sexual harassment and rationalization" which are not included in the Second Amended Complaint, Defendants have not explained why they cannot file a redacted version of the exhibits omitting said information. (Id. 3:15–17).  Therefore, Defendants "may file a redacted version to the extent necessary to conceal protected information and/or the [Judy Doe Plaintiffs'] identities." Alexander v. Falk, No. 2:16-cv-02268, 2019 WL 8014618, at *2 (D. Nev. June 17, 2019).  Accordingly, Defendant Wynn Las Vegas LLC's Motion to Seal is DENIED.  The Court will not seal the EEOC Charges of Discrimination in their entirety but will not order them unsealed pending Defendant Wynn Las Vegas, LLC's renewed motion to seal.  Defendant Wynn Las Vegas, LLC may refile the motion for leave to file under seal with specific information demonstrating that compelling reasons overcome the public policy favoring disclosure, with an additional explanation of why redaction is not possible.

[5] None of the Judy Doe Plaintiffs contend that Steve Wynn sexually assaulted them, so the instant action is limited to Steve Wynn's alleged sexual harassment. (See generally SAC).

[6] The Court utilizes the phrase "the Salon" to refer to both the Wynn and Encore Salon because the Judy Doe Plaintiffs did so in their Second Amended Complaint. (SAC ¶ 27).  The Court advises the Judy Doe Plaintiffs that the use of this phrase is confusing, however, as later events alleged in the Second Amended Complaint are alleged to have taken place at "the Salon," resulting in it being unclear if the Judy Doe Plaintiffs meant that the events transpired at the Wynn Salon, Encore Salon, or both salons.

that these executives provided Steve Wynn with access to their private information, including their cell phone numbers and work schedules. (*Id*. ¶ 29).  The facts underlying the full extent of Steve Wynn's alleged conduct towards the individual Judy Doe Plaintiffs is outlined below.

## A. Judy Doe Plaintiff No. 1

Judy Doe Plaintiff No. 1 began working at Wynn Las Vegas in 2004. (*Id*. ¶ 97).  Judy Doe Plaintiff No. 1 contends that Steve Wynn obtained her phone number and began making inappropriate requests, including asking for photographs of "certain parts of [Judy Doe Plaintiff No. 1's] anatomy." (*Id*. ¶ 98).  In 2008, Judy Doe Plaintiff No. 1 became a makeup artist at the Wynn Salon. (*Id*. ¶ 100).  Judy Doe Plaintiff No. 1 maintains that Steve Wynn continued his pattern of inappropriate behavior at her new position by "asking her out and . . . being overly familiar to her in the presence of other clients." (*Id*. ¶ 101).  In 2012 to 2013, and periodically throughout 2017, Judy Doe Plaintiff No. 1 did Steve Wynn's makeup at his private villa "where he was inappropriately clothed and positioned." (*Id*. ¶ 102).

## B. Judy Doe Plaintiff No. 2

In 2006, Judy Doe Plaintiff No. 2 began working as a manicurist at Wynn Las Vegas before transitioning to a position at the Encore Salon in 2008. (*Id*. ¶ 117).  On many occasions,[7] Judy Doe Plaintiff No. 2 performed "in-room" manicure services for Steve Wynn at his private villa, during which he "subjected Judy Doe Plaintiff No. 2 to sexual harassment, including by initiating inappropriate physical touching[.]" (*Id*. ¶ 118).  Judy Doe Plaintiff No. 2 feared retaliation by Steve Wynn or Wynn Las Vegas if she complained about his conduct. (*Id*. ¶ 119).  Additionally, Judy Doe Plaintiff No. 2 alleges that she otherwise avoided participating in Wynn Las Vegas's "in-room" manicure services program because the program exposed employees "to

---

[7] The Second Amended Complaint does not provide a precise set of dates or span of time that the alleged sexual harassment occurred.

many questionable and uncomfortable situations, including guest drug abuse and alcohol abuse, indecent exposure, and inappropriate physical advances by guests." (*Id*. ¶ 120).

### C. Judy Doe Plaintiff No. 3

Judy Doe Plaintiff No. 3 served as a manicurist at Wynn Las Vegas. (*Id*. ¶ 134).  From 2009 to 2012, Judy Doe Plaintiff No. 3 performed "in-room" manicure services for Steve Wynn at his private villa, during which he subjected her to sexual advances and degrading behavior, including "physically touching her inappropriately (grabbing her hands and forcing her to massage him near his genitals during a manicure or pedicure)," wearing inappropriate clothing, and making lewd comments such as "[i]f you were mine, you would never work another day in your life again." (*Id*. ¶ 135).  Judy Doe Plaintiff No. 3 further alleges that she participated in Wynn Las Vegas's "in-room" manicure service program, which exposed her to unsafe situations while providing in-room salon services to customers. (*Id*. ¶ 139).  Specifically, Judy Doe Plaintiff No. 3 contends that she faced intoxicated customers who sometimes engaged in sexual acts while she provided services, and customers offering to have sex with her. (*Id*.).

### D. Judy Doe Plaintiff No. 4

Judy Doe Plaintiff No. 4 was employed at Wynn Las Vegas starting in April 2005 before transitioning to a role as a manicurist at the Encore Salon in 2008. (*Id*. ¶ 151).  From 2006 to 2008, Judy Doe Plaintiff No. 4 provided manicure services to Steve Wynn at his private villa, where he allegedly made inappropriate inquiries about her sex life, in addition to inappropriately touching her. (*Id*. ¶ 151).  Judy Doe Plaintiff No. 4 also participated in the Wynn Las Vegas's "in-room" manicure services program and maintains that the program exposed her to unsafe situations while providing in-room salon service to customers. (*Id*. ¶ 164).

///

///

### E.   Judy Doe Plaintiff No. 5

Beginning in November 2008, Judy Doe Plaintiff No. 5 served as a makeup artist since at Wynn Las Vegas. (*Id*. ¶ 175).  From 2008 to 2017, Judy Doe Plaintiff No. 5 applied Steve Wynn's makeup at his office or personal villa where he inappropriately "wrap[ed] his arms around her, using her body to maneuver himself in his chair, [and] w[ore] only underwear," among other unspecified actions. (*Id*. ¶ 177).

### F.   Judy Doe Plaintiff No. 6

Judy Doe Plaintiff No. 6 was a manicurist with Wynn Las Vegas. (*Id*. ¶ 200).  She is no longer employed at Wynn Resorts. (*Id*.).  Judy Doe Plaintiff No. 6 gave Steve Wynn manicures in his private office and villa,[8] during which he sexually harassed her by "touch[ing] her, sp[eaking] directions to her in a very low and seemingly seductive voice, and . . . inappropriately manuerver[ing] his body closer to her during" manicures. (*Id*. ¶ 202).  Judy Doe Plaintiff No. 6 further alleges that when she went to Steve Wynn's private villa, his German Shepherd was seated nearby to intimidate her. (*Id*. ¶ 205).  On one occasion in 2017, Judy Doe Plaintiff No. 6 gave Steve Wynn a private manicure during which he "managed to engage in some disgusting physical contact during the manicure that made her extremely uncomfortable." (*Id*. ¶ 206).

### G.   Judy Doe Plaintiff No. 7

Judy Doe Plaintiff No. 7 began working as a manicurist at Wynn Las Vegas in February, 2006. (*Id*. ¶ 207).  As with the other Judy Doe Plaintiffs, Judy Doe Plaintiff No. 7 gave Steve Wynn private manicures and pedicures,[9] where he inappropriately forced her hand into his crotch area, touched her thigh, and asked her inappropriate questions. (*Id*. ¶ 222).  As with Judy

---

[8] As with Judy Doe Plaintiff No. 2, the exact span of time during which these events transpired are not specified.
[9] As with Judy Doe Plaintiffs Nos. 2 and 6, the exact span of time during which these events transpired are not specified.

Doe Plaintiff No. 6, Judy Doe Plaintiff No. 7 further alleges that Steve Wynn used his German Shepherd to intimidate her. (*Id*. ¶ 221).

### H.  Judy Doe Plaintiff No. 8

Judy Doe Plaintiff No. 8 began working at Wynn Las Vegas in March 2005, and later became a manicurist at the Wynn Salon in 2008. (*Id*. ¶ 238).  On many occasions,[10] Judy Doe Plaintiff No. 8 was subjected to sexually harassing conduct, including Steve Wynn talking about sex and encouraging Judy Doe Plaintiff No. 8 to watch pornography, touching her inappropriately, and sexualizing "what should be a simple manicure." (*Id*. ¶ 239).

### I.  Judy Doe Plaintiff No. 9

Judy Doe Plaintiff No. 9 began working at Wynn Las Vegas in March 2005. (*Id*. ¶ 259). On many occasions,[11] Steve Wynn subjected Judy Plaintiff No. 9 to sexually harassing conduct by talking about sex and encouraging Judy Doe Plaintiff No. 9 to watch pornography and touching her inappropriately. (*Id*. ¶ 260).

In addition to the allegations specific to the individual Judy Doe Plaintiffs, the following facts are common to all Judy Doe Plaintiffs.

### J.  Allegations Common to All Judy Doe Plaintiffs

In early 2018, various national media outlets began investigating Steve Wynn's workplace misconduct. (*Id*. ¶ 30).  According to the Judy Doe Plaintiffs, on January 17, 2018, Wynn Las Vegas convened a meeting for Salon employees. (*Id*. ¶ 32).  At that meeting, Maurice Wooden ("Wooden"), the then-president of Wynn Las Vegas, and Troy Mitchum ("Mitchum"), the then-president of Human Resources at Wynn Las Vegas, directed Salon employees to notify Mitchum if reporters contacted them inquiring about Steve Wynn's alleged

---

[10] As with Judy Doe Plaintiffs Nos. 2, 6, and 7 the exact span of time during which these events transpired are not specified.

[11] As with Judy Doe Plaintiffs Nos. 2, 6, 7, and 8 the exact span of time during which these events transpired are not specified.

misconduct. (*Id*. ¶ 32).  Wooden emphasized that Salon employees should not talk to reporters. (*Id*. ¶ 33).  On January 26, 2018, numerous national media outlets published reports of Steve Wynn's sexual misconduct. (*Id*. ¶ 35).  That same day, Wooden released a memorandum stating that Wynn Las Vegas remained "supportive" of Steve Wynn. (*Id*. ¶ 36).  The Judy Doe Plaintiffs interpreted Wooden's memorandum as a directive to "stifle the speech of" employees who were victims of Steve Wynn's conduct. (*Id*. ¶ 37).  Following this media exposure, the Massachusetts and Nevada Gaming Commissions respectively began investigating Wynn Las Vegas. (*Id*. ¶ 38)

On January 31, 2018, Steve Wynn spoke at a mandatory meeting for Salon employees. (*Id*. ¶ 39).  Defendants' high-level executives, security personnel, and board members were present for the meeting. (*Id*. ¶ 40).  Steve Wynn requested Salon employees "raise their hands if they ever felt assaulted or abused by him . . . ." (*Id*. ¶ 41).  The Judy Doe Plaintiffs allege this was a ploy to pressure the "Salon employees to 'out' themselves and subject themselves to further humiliation and treating them for possible retaliation." (*Id*.).  The Judy Doe Plaintiffs further maintain that they were trapped in the meeting based on the position of security personnel along the walls of the room where the meeting was held. (*Id*.).

On February 1, 2018, Steven Wynn appeared at the Salon to celebrate the birthday of an employee. (*Id*. ¶ 42).  According to the Judy Doe Plaintiffs, Steven Wynn brought a camera crew to film the birthday celebration and "initiated kisses and group hugs with . . . Salon employees and made intimidating comments about the press." (*Id*.).  During the celebration, Claude Baruk ("Baruk"), the Salon Director, informed the Judy Doe Plaintiffs that they needed to state on camera that Steve Wynn had not "assaulted or abused them," in addition to making "complimentary statements about Steve Wynn." (*Id*. ¶ 44).  The Judy Doe Plaintiffs maintain that Baruk's request was coercive and exposed individuals who did not participate for retaliation. (*Id*. ¶ 46).

On February 6, 2018, Steve Wynn resigned from his position as chairman and CEO of Wynn Las Vegas. (*Id*. ¶ 48).  Despite his resignation, Steven Wynn continued to receive salon services, including services given by several of the Judy Doe Plaintiffs, until March 2018. (*Id*. ¶ 50).  On February 15, 2018, Defendants' in-house legal counsel directed Salon employees to not discuss Steve Wynn's conduct with the Nevada and Massachusetts Gaming Commission. (*Id*. ¶ 51).

In March 2018, Wynn Las Vegas scheduled mandatory investigative meetings between Salon employees and "investigatory counsel" from the law firm of Gibson Dunn & Crutcher. (*Id*. ¶ 52).  The Judy Doe Plaintiffs contend these meetings were coercive and further exacerbated their fear of being retaliated against for speaking out against Steve Wynn. (*Id*. ¶¶ 52–54).  Further, on March 14, 2018, Defendants convened another meeting held by Wynn Resorts CEO Matt Maddox ("Maddox"). (*Id*. ¶ 55).  At the meeting, Maddox allegedly asked the Salon employees "[h]ow can we help you?" (*Id*.).  "This made many Salon employees very uneasy, because [Maddox] was widely perceived as Steve-Wynn's hand-picked successor . . . ." (*Id*.).  Next in late March 2018, Wynn Resorts Board Member Patricia Mulroy ("Mulroy") issued a letter directing Salon employees to report any information regarding Steve Wynn's alleged conduct to the Board of Director's investigators. (*Id*. ¶ 56).  Salon employees were required to acknowledge on a computerized employee portal that they read Mulroy's letter. (*Id*. ¶ 58).

In March 2018, the Equal Employment Opportunity Commission ("EEOC") began its administrative filings against Defendants. (*Id*. ¶¶ 21, 63).  By August 2018, the EEOC provided Defendants with the Judy Doe Plaintiffs sworn Charges of Discrimination. (*Id*. ¶ 64).  In November 2018, the EEOC commenced its investigation against the Defendants. (*Id*. ¶ 23).  On July 2, 2019, the EEOC issued the Judy Doe Plaintiffs' individual "Notice of Right to Sue,"

///

letters which all Judy Doe Plaintiffs received by July 5, 2019. (*Id.* ¶ 25); (*see generally* Notice Right Sue Letters, Ex. 4 to SAC, ECF No. 106-4).

On February 26, 2019, the Nevada Gaming Control Board fined Wynn Las Vegas twenty million dollars for its failure to investigate claims of sexual harassment against Steve Wynn. (*Id.* ¶ 68). In April 2019, the Massachusetts Gaming Commission published its official report on Wynn Las Vegas ("Massachusetts Gaming Report"). (*Id.* ¶ 69). The Massachusetts Gaming Report found that "over a course of years, a limited group of executives and employees" at Wynn Las Vegas "were aware of certain allegations of sexual misconduct against [Steve Wynn] involving employees, but they disregarded" company policies "when it came to handling those investigations." (Massachusetts Gaming Report at 8, Ex. 2 to MTD, ECF No. 106-2). The Massachusetts Gaming Report further identified that "[o]f particular concern is that certain high ranking Company executives who knew about allegations lodged against Mr. Wynn by employees failed to follow Company policy mandating an investigation." (*Id.* at 9, 22, 33, Ex. 2 to MTD). Further, the Judy Doe Plaintiffs allege that based on the Massachusetts Gaming Commission investigation, "back in 2018, some Salon employees were secretly surveilled by Defendants." (SAC ¶ 331).

The Judy Doe Plaintiffs' Second Amended Complaint alleges the following causes of action: (1) discrimination and harassment based on sex in violation of 42 U.S.C. § 2000(e) *et. seq*, and NRS § 613.330 *et. seq.*, including a hostile work environment; (2) retaliation pursuant to 42 U.S.C. § 2000 *et. seq*. and NRS § 613.340; (3) negligent hiring, training, supervision, and retention of high-level executives and human resources personnel; (4) intentional infliction of emotional distress; (5) false imprisonment on behalf of Judy Doe Plaintiffs Nos. 1, 2, 3, 4, 5, and 8; (6) invasion of privacy of behalf of Judy Doe Plaintiffs Nos. 5, 8, and 9; and (7) injunctive relief on behalf of Judy Doe Plaintiffs Nos. 1, 2, 3, 4, 7, 8, and 9. (*Id.* ¶¶ 275–402).

///

1    ## II.    <u>LEGAL STANDARD</u>

2          Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon

3    which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

4    555 (2007).  A pleading must give fair notice of a legally cognizable claim and the grounds on

5    which it rests, and although a court must take all factual allegations as true, legal conclusions

6    couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.  Accordingly, Rule

7    12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements

8    of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain

9    sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

10   face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A

11   claim has facial plausibility when the plaintiff pleads factual content that allows the court to

12   draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This

13   standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

14         "Generally, a district court may not consider any material beyond the pleadings in ruling

15   on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,

16   1555 n.19 (9th Cir. 1990).  "However, material which is properly submitted as part of the

17   complaint may be considered." *Id.*  Similarly, "documents whose contents are alleged in a

18   complaint and whose authenticity no party questions, but which are not physically attached to

19   the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v.

20   Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  On a motion to dismiss, a court may also take

21   judicial notice of "matters of public record." [12] *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279,

22

23   _____

24   [12] The Court takes judicial notice of the EEOC Charges and the Notices of the Right to Sue attached to the Judy
     Doe Plaintiffs' Second Amended Complaint. *See Winterberg v. Univ. of Nevada Reno, Regents*, No. 3:19-CV-

25   00747, 2020 WL 1916158, at *4 (D. Nev. Apr. 20, 2020) (taking judicial notice of the NERC/EEOC Charge as
     verifiable matters in the public record); *see Petersen v. Nevada ex rel. Nevada Dep't of Corr.*, No. 3:20-CV-
     00201-RCJ-WGC, 2021 WL 278048, at *5 (D. Nev. Jan. 26, 2021) ("The Court may consider this document for
     this motion without converting it into one for summary judgment as no party disputes the document's

1282 (9th Cir. 1986).  Otherwise, if a court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## III.   LEGAL STANDARD

Defendants now move to dismiss all the Judy Doe Plaintiffs' federal and state-based causes of action.  The Court will first evaluate the federal causes of action, beginning with an examination of whether Defendants discriminated against the Judy Due Plaintiffs based on their sex and subjected them to a hostile work environment in violation of Title VII, 42 U.S.C. § 1983 and NRS § 613.330.

### A. Sex Discrimination and Hostile Work Environment[13]

Defendants move to dismiss the Judy Doe Plaintiffs' first claim for sex discrimination

---

authenticity and Plaintiff necessarily relies on her charge of discrimination (for example, she alleges that she exhausted her administrative remedies).").

[13] The Judy Doe Plaintiffs discrimination and hostile work environment claims invoke Title VII, 42 U.S.C. § 1983, and NRS § 613.330. "Because the employment discrimination standards in § 1983 and NRS § 613.330 are coextensive with those under Title VII, the Court treats these claims together under Title VII." *Crawford v. Nevada Department of Transportation*, No. 2:17-cv-00655, 2019 WL 1442178, at *4 n.2 (D. Nev. Mar. 31, 2019); *see Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("In light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases.").

and hostile work environment.[14]  As part of its Motion to Dismiss, Defendants asserts that the

Court should not consider any alleged conduct that occurred more than 300 days before the

Judy Doe Plaintiffs respectively filed a discrimination charge with the EEOC.[15] (MTD 5:5–18,

ECF No. 115).  Defendants additionally argue that the "continuing violations doctrine" is

inapplicable to the Judy Doe Plaintiffs hostile work environment claim, and thereby fails to

resuscitate any untimely conduct.[16] (*Id*. 6:1–9:15).  As what conduct may be considered shapes

any analysis of the Judy Doe Plaintiffs' hostile work environment claim, the Court will first

determine whether the continuing violations doctrine is applicable.

### 1.    Continuing Violations Doctrine

Title VII claims, whether they are based on allegations of disparate treatment, disparate

impact, hostile work environment, or retaliation, are subject to a statute of limitations that is

tied to an administrative complaint process.  That means that a plaintiff must first file a

discrimination charge with the EEOC within 300 days of an alleged unlawful employment

practice. 42 U.S.C. § 2000e-5(e)(1).  Upon obtaining a right to sue letter from the EEOC, a

plaintiff then has ninety days to file a Title VII claim in district court.  Alleged unlawful

employment acts that occur more than 300 days prior the filing of an EEOC charge is generally

---

[14] The Court notes that the Judy Doe Plaintiffs' Second Amended Complaint is confusingly pled, and their Response is equally unclear, as these filings conflate the terms and elements for a claim of disparate treatment discrimination based on sex and a claim for hostile work environment based on sex/sexual harassment. (*See generally* SAC); (Resp.).  Nevertheless, it is the Court's understanding that the Judy Doe Plaintiffs first claim is for both a claim for disparate treatment discrimination based on sex and a claim for hostile work environment based on sex/sexual harassment.

[15] The Judy Doe Plaintiffs filed sworn intake forms with the EEOC between March 9, 2018, to April 10, 2018. (*See generally* Charges of Discrimination, Ex. A–F to Mot. Seal, ECF No. 117).  Therefore, any conduct that occurred prior to May 13, 2017, is untimely for all Judy Doe Plaintiffs. (*Id*.).

[16] Defendant additionally argues that conduct outside the limitations period is barred by the doctrine of laches. (MTD 9:16–10:11).  Determining whether delay was unexcused or unreasonable and whether prejudice ensued demands "a close evaluation of all the particular facts in a case." *Kling v. Hallmark Cards Inc.*, 225 F.3d 1030, 1041 (9th Cir. 2000).  "As a result, a claim is not easily disposed of at the motion to dismiss stage based on a defense of laches." *U.S. E.E.O.C. v. Global Horizons, Inc.*, 904 F. Supp. 2d 1074, 1095 (D. Haw. 2012) (citing *Kourtis v. Cameron*, 419 F.3d 989, 1000 (9th Cir. 2005).  The Court concludes that it is not clear on the face of the Judy Doe Plaintiffs' Second Amended Complaint that their delay in bringing suit was unreasonable or unexcused, and therefore declines to find that any conduct or claim is barred by laches at this juncture.

time-barred. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002) ("A Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period—180 or 300 days—set forth in 42 U.S.C. § 2000e–5(e)(1).").

However, the "continuing violations" doctrine allows a civil rights plaintiff to bring a claim based on events that occurred outside the applicable statute of limitations period in in hostile work environment claims if the plaintiff can show that the defendant engaged in a continuing violation that at least in part fell within the limitations period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 117 (2002); *Cherosky v. Henderson*, 330 F.3d 1243, 1246 n.3 (9th Cir. 2003) (noting that the continuing violations doctrine applies to Title VII and "other civil rights laws"). For *Morgan*'s continuing violation doctrine to apply, "the acts about which an employee complains [must be] part of the same actionable hostile work environment practice." *Id*. at 120. The Ninth Circuit subsequently applied *Morgan* in deciding whether acts of alleged sexual harassment that occurred prior to the 180 or 300-day statutory deadline are time barred. *See Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005). The *Porter* court held that, in order to determine whether events used to support a sexual harassment claim constitute one unlawful employment practice, courts should consider (1) whether the "events" were "sufficiently severe or pervasive," and (2) "whether the earlier and later events amounted to the same type of employment actions, occurred relatively frequently, [or] were perpetrated by the same managers." *Id*. at 893 (citing *Morgan*, 536 U.S. at 116, 120) (citations and internal quotation marks omitted).

Because the Judy Doe Plaintiffs raise a hostile work environment claim that includes acts outside the limitations period, the continuing violations doctrine could potentially apply. However, the Judy Doe Plaintiffs fail to provide any analysis of the elements laid out by the Ninth Circuit in *Porter* to establish why any untimely conduct falls under the continuing violations doctrine. (*See generally* Resp., ECF No. 136). Indeed, the Judy Doe Plaintiffs never

actually argue, or even generally assert for that matter, that the continuing violations doctrine applies or that they are pursuing a continuing action theory. (*Id.*).  Instead, they contend that Defendants' argument that the untimely conduct is "time-barred" "miss[es] the point entirely" because these allegations "provide the necessary background to explain why" the Judy Doe Plaintiffs were especially vulnerable to the "corporate attacks taking place in 2018 following [the] media's exposure of Steve Wynn's wrongdoing." (*Id.* 11:11–16).  They further maintain, without citation to any case-law, that Defendants' argument that the continuing violations doctrine "should not apply" is "more appropriate to review on summary judgment — not at this pleading stage." (*Id.* 11:24–26).

  As to the Judy Doe Plaintiffs first argument, it seems they intend for their allegations of untimely conduct to serve the limited purpose of providing background information for the Court in examining the timely alleged conduct.[17] (*Id.* 11:11–16).  The Supreme Court and Ninth Circuit have recognized that even if the continuing violations doctrine is inapplicable, discrete acts "still may be considered for purposes of placing non-discrete acts in the proper context." *Porter*, 419 F.3d at 893 n.4; *see Morgan*, 536 U.S. at 113 ("Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.").  Accordingly, the Court agrees with the Judy Doe Plaintiffs and will consider their untimely allegations to the extent they provide context for the timely allegations.

  Turning to the Judy Doe Plaintiffs second argument, district courts within the Ninth Circuit have routinely determined the continuing violations doctrines applicability at the motion to dismiss stage. *See Shahrivar v. City of San Jose*, No. 5:10-cv-01029, 2011 WL 4506198, at *3 (N.D. Cal. Sept. 28, 2011); *Flesch v. Cnty of Lake*, No. 21-cv-02018, 2021 WL 3633835, at *3 (N.D. Cal. Aug. 17, 2021); *Butcher v. City of Marysville*, No. 2:18-cv-02765, 2019 WL

---

[17] Indeed, the Judy Doe Plaintiffs later asserted in response to Defendants' laches argument that "Plaintiffs are all complaining about conduct that occurred in 2018," (Resp. 12:1–2), thereby providing further indication that any untimely conduct is solely used to provide background information for the timely conduct.

918203, at **4–5 (E.D. Cal. Feb. 19, 2019); *Irish v. City of Sacramento*, 04-cv-1813, 2005 WL 8176582, at *4 (E.D. Cal. Sept. 14, 2005).  It is not the Court's role to create and develop arguments for the parties. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009) ("[Courts] will not manufacture arguments for a[ ] [party], and a bare assertion does not preserve a claim.") (citation omitted); *Blankenship v. Cox*, No. 3:05-CV-00357-RAM, 2007 WL 844891 at 12 (D. Nev. Mar. 19, 2007) ("It is not the court's duty to do [Plaintiff's] legal research.").  Alleged unlawful employment acts that occur more than 300 days prior the filing of an EEOC charge is generally time-barred.  The continuing violations doctrine is an exception to this rule. *See Bird v. Dept. of Human Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (per curiam) ("The continuing violations doctrine functions as an exception to the discovery rule of accrual allowing a plaintiff to seek relief for events outside of the limitations period.") (internal quotation marks omitted).  In the absence of any argument for why the continuing violations doctrine applies, the Court will adhere to the general principal and not the exception. *See Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1182 (9th Cir. 2001) ("Issues raised in a brief which are not supported by argument are deemed abandoned."); *see Kihagi v. City of West Hollywood, California*, No. 14-cv-936, 2015 WL 12914870, at *7 (C.D. Cal. Apr. 13, 2015).  Accordingly, the Court will not apply the continuing violations doctrine at this juncture.[18]

## 2.  Disparate Treatment Based on Sex

The Judy Doe Plaintiffs' first claim alleges, in part, disparate treatment based on sex. (*See* Resp. 9:28–10:7, 12:3) (conflating the elements of a disparate treatment claim and hostile work environment claim, and later referring to their first cause of action as one based on discrimination, harassment, and hostile work environment).  In response, Defendants contend

---

[18] As stated, the Court's conclusion also applies to the Judy Doe Plaintiffs' claims under NRS § 613.330. *See Bunar v. Aliante Gaming*, No. 2:16-cv-02865, 2017 WL 3469271, at *2 (D. Nev. Aug. 10, 2017) (predicting that the Supreme Court of Nevada "would not apply the continuing violation doctrine to discrimination or retaliation claims that are based on discrete acts").

that the Judy Doe Plaintiffs failed to demonstrate the fourth element of a *prima facie* disparate

treatment claim. (Reply 9:24–10:1, ECF No. 144).

To state a *prima facie* claim of disparate treatment based on sex, the movant must

demonstrate: (1) she belonged to a protected class; (2) she was qualified and satisfactorily

performed her job; (3) she experienced an adverse employment action; and (4) similarly

situated employees outside of her protected class were "treated more favorably, or [that] other

circumstances surrounding the adverse employment action give rise to an inference of

discrimination." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010)

(quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 602 (9th Cir. 2004)); *see Stewart v.

SBE Entm't Grp., LLC*, 239 F. Supp. 3d 1235, 1246 n.61 (D. Nev. 2017) (explaining that a

discrimination claim under NRS § 613.330 proceeds under the same analysis as that of a Title

VII claim).

As stated, the first three elements are not disputed here. Defendants sole focus is on the

Judy Doe Plaintiffs inability to allege the fourth element of a *prima face* disparate treatment

case, specifically that "other similarly situated individuals outside of their protected class were

treated more favorably" or that other circumstances surrounding the adverse employment action

give rise to an inference of discrimination. (Reply 9:24–28). At the outset, the Court notes

Defendants argument can be bifurcated into two distinct contentions. First, Defendants

maintain that the Judy Doe Plaintiffs claim fails because they have not identified similarly

situated comparators who were treated more favorably. (*Id.* 9:16–26). Second, Defendants

advance that the Judy Doe Plaintiffs have not otherwise alleged circumstances which give rise

to an inference of discrimination. (*Id.* 9:27–28). The Court will examine each argument in turn.

As to the former, the Court agrees with Defendants that a plaintiff who pursues a

disparate theory claim through comparison to similarly situated individuals must allege facts

showing that the comparator is similar in all material respects. *See Hawn v. Executive Jet*

1    *Management, Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010) ("The employees' roles need not be
2    identical; they must only be similar 'in all material respects.'") (quotation omitted). But that is
3    only one method by which a disparate treatment claim can be proven. Alternatively, a disparate
4    treatment claim can be sustained through direct and circumstantial evidence which gives rise to
5    an inference of discrimination. *Id.* ("A plaintiff may do so through comparison to similarly
6    situated individuals, *or* any other circumstances 'surrounding the adverse employment action
7    [that] give rise to an inference of discrimination.") (emphasis added) (quoting *Peterson*, 358
8    F.3d at 603). Although these methods to establish disparate treatment are distinct, both present
9    viable ways to advance a claim. *Id.*

10        Notably, the Judy Doe Plaintiffs fail to specify their chosen method for proving their
11   disparate treatment claim. Indeed, the Judy Doe Plaintiffs fail to provide any analysis
12   demonstrating either the presence of similarly situated individuals or circumstances giving rise
13   to an inference of discrimination. (*See generally* Resp.). Instead, the Judy Doe Plaintiffs entire
14   disparate treatment analysis is a restatement of the first three elements of a disparate treatment
15   claim followed by conflating the fourth element of a disparate treatment claim with a hostile
16   environment claim, specifically stating that the Judy Doe Plaintiffs "were treated to an
17   objectively and subjectively sexually offensive and unwelcome work environment, as
18   specifically detailed in their [Second Amended Complaint.]" (*Id.* 10:2–3).

19        As the Judy Doe Plaintiffs have failed to specify their chosen method in proving their
20   disparate treatment claim, the Court will DISMISS their claim with leave to amend. (*See
21   generally* Resp.). The Court advises the Judy Doe Plaintiffs to clearly and separately allege
22   their claims in their complaint. The Court further counsels the Judy Doe Plaintiffs to
23   meaningfully analyze and explain why each element of the claims they ultimately allege are
24   met in any subsequent filing. Specifically, if the Judy Doe Plaintiffs choose to prove their
25   disparate treatment claim through a comparison between themselves and a group of other

employees, they must allege facts which show they are similarly situated in all materially respects. *See Hawn*, 615 F.3d at 1157.  Generally, "individuals are similarly situated when they have similar jobs and display similar conduct," *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), but the Court notes that "[m]ateriality will depend on context and the facts of the case." *Hawn*, 615 F.3d at 1157.  Similarly, if the Judy Doe Plaintiffs opt to rely on circumstances that give rise to an inference of discrimination, they must allege what those facts are, and explain why these facts give rise to an inference of discrimination.

### 3.  Hostile Work Environment

"[S]exual harassment so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment' violates Title VII." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)).  To plead a hostile work environment sexual harassment claim under Title VII, a plaintiff must allege he or she was subjected to sexual advances, conduct, or comments that were: (1) unwelcome; (2) because of sex; and (3) sufficiently severe or pervasive to alter the conditions of his or her employment and create an abusive work environment. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 68, 81 (1986); *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80–81 (1998).

#### a.  Discrimination Based On-Sex

As an initial matter, Defendants argue that the events relied on by the Judy Doe Plaintiffs are not actionable because they are not based on-sex discrimination. (MTD 13:2–4). The Court disagrees.

"[R]egardless of whether the [actions] were facially discriminatory, 'acts contributing to a hostile work environment do not need to be specifically . . . sex-based in nature so long as there is some basis to infer that incidents neutral on their face were in fact discriminatory." *Rippstein v. Boeing Company*, No. 20-cv-02216, 2022 WL 1522155, at *4 (D. Ariz. May 13,

2022) (quoting *Gordwin v. Amazon.com, Incorporated*, No. 21-cv-00888, 2021 WL 5396086, at *6 (D. Ariz. Nov. 17, 2021).  For example, in *Curtis v. City of Oakland*, the conduct that formed the basis for an employee's hostile work environment claim was largely neutral on its face, and the perpetrator of some of the events was unknown. 571 F. App'x 616, 617 (9th Cir. 2014).  Still, the Ninth Circuit reversed the district court's decision granting summary judgment in favor of the employer because "there was evidence in the record from which a reasonable jury could infer" that the employee was targeted because of his race. *Id.* at 618.

Here, the entirety of the events relied on by the Judy Doe Plaintiffs were a direct result of Steve Wynn's alleged sexual harassment, and the response to that sexual harassment by Defendants.  The Court cannot divorce that Defendants actions were on the basis of sex in that they directed their response at women who worked at the Wynn or Encore Salon. *See Cole v. Board of Trustees of Northern Illinois University*, 838 F.3d 888, 896 (7th Cir. 2016) ("Nevertheless, forms of harassment that might seem neutral in terms of race (or sex or other protected status) can contribute to a hostile work environment claim if other evidence supports a reasonable inference tying the harassment to the plaintiff's protected status.").  Therefore, the Court finds that the circumstances give rise to the inference that Defendants actions, even if facially neutral, were in fact discriminatory on the basis of sex.

### b.     *Severe or Pervasive*

"The third element requires [the court] to consider the totality of the circumstances and whether the harassment was both objectively and subjectively abusive." *Freitag v. Ayers*, 468 F.3d 528, 539 (9th Cir. 2006).  "Courts are to determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Kortan v. Cla. Youth. Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000).  As the

Supreme Court observed, "[t]he real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships." *Oncale*, 523 U.S. at 81–82.

### i.    Investigations and Meetings

The Judy Doe Plaintiffs' primary contention is that the Defendants' investigation into Steve Wynn's alleged sexual harassment created a hostile work environment. (Resp. 11:11–21:3).  Put differently, the Judy Doe Plaintiffs argue that Defendants' investigation was retaliatory in nature because they scrutinized the vulnerable Judy Doe Plaintiffs through investigative meetings and interviews such that a hostile work environment was created. (*Id.*). In contrast, Defendants maintain that the investigative interviews and meetings which underly the Judy Doe Plaintiffs claim did not create a hostile work environment. (MTD 13:5–14:20).

It is clear that an employer's investigation, and the constituent meetings and interviews conducted as part of that investigation, does not constitute a hostile work environment when executed to remedy alleged discrimination in the workplace. *See Corrales v. Chase Bankcard Services, Inc.*, No. 02-cv-2157, 2007 WL 9724519, at *4 (D. Ariz. Feb. 20, 2007) ("As an unavoidable consequence of the investigatory process, employers might have to ask questions . . . to . . . allow[] the employer to accurately gauge the relative offensiveness of the complained-of-conduct"); *E.E.O.C. v. Total Systems Services, Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) ("When an employer is told of improper conduct at its workplace, the employer can lawfully ask: is the accusation true?").  But the converse is also true.  An investigation, launched for retaliatory reasons, can create a hostile work environment. *See Cox. Onodaga Cnty. Sheriff's Dep.*, 760 F.3d 139, 147 (2d Cir. 2014) ("[A]n employer's investigation may constitute a cognizable retaliatory action if carried out so as to result in a hostile work environment, constructive discharge, or other employment consequences of a negative nature, or if conducted

in a such an egregious manner as to 'dissuade a reasonable worker from making or supporting a charge of discrimination.") (citation omitted).

The relevant inquiry is therefore whether the Defendants' efforts in convening the investigative interviews and meetings were in furtherance of obtaining information to remedy the situation, or to intimidate and interrogate the Judy Doe Plaintiffs and other potential victims into submission.  The Court's inquiry does not end merely because Defendants label the events as the "ordinary tribulations of the workplace." (MTD 13:7–8).  Instead, the Court is guided by what the Judy Doe Plaintiffs specifically allege transpired at the investigative interviews and meetings.[19]  *See Montano v. Donahue*, No. 14-cv-0634, 2017 WL 3412102, at *7 (D. N.M. Mar. 22, 2017) ("Plaintiff may *subjectively* feel as though these interviews were hostile and demeaning, but in order to qualify as [a] hostile work environment, the alleged conduct must also qualify as *objectively* severe or pervasive.") (emphasis in original); *Balkenbush v. Ortho Biotech Products, L.P.*, 653 F. Supp. 2d 1115, 1126 (E.D. Wash. 2009) (examining the specific language used by the plaintiff's employers in an investigate meeting to determine if it was objectively abuse such that it supported a hostile work environment claim); *Corrales*, 2007 WL 9724519, at *4 (finding that there was evidence to suggest that an investigate interview supported a finding of a hostile work environment where the employer asked "[d]etailed questions about Corrales and King's conversations about their marital sexual practices and the

---

[19] The Court's discussion will encompass the entirety of the Judy Doe Plaintiffs' timely charged conduct. However, the Court will not consider non-specific conduct or conclusory allegations as a basis for their hostile work environment claim.  For this reason, the Court excludes the Judy Doe Plaintiffs' undated allegations regarding their experiences while providing in-room services for guests. *See Montano*, 2017 WL 3412102, at *6 n. 4.  Although the Judy Doe Plaintiffs contend that their allegations surrounding the "in-room services" are timely because the program was only made non-mandatory in July of 2018, (Resp. 11:16–18), their Second Amended Complaint is devoid of dates specifying when the Judy Doe Plaintiffs actually participated in the program. (*See generally* SAC).  Therefore, the Court is unable to determine whether allegations surrounding the program are timely and may serve as actionable conduct for the hostile work environment claim.

respective sizes of their husbands' genitalia seem well beyond what was necessary to investigate the harassment charge made by King).

The difficulty here is that the Judy Doe Plaintiffs' Second Amended Complaint largely lacks specific allegations as to what transpired at the workplace meetings and investigative interviews such that a reasonable inference could be made that Defendants' design was to retaliate against the Judy Doe Plaintiffs. (*See* SAC ¶ 34) (detailing that Defendants convened a meeting on January 17, 2018, whereby Mitchum told Salon employees that "if anyone was threatened by reports, they should let" Mitchum know); (*id*.) (alleging that Wooden "emphasized that nobody should talk to reporters"); (*id*. ¶ 51) (explaining that Defendants' in-house legal counsel directed Salon employees not to talk to the Massachusetts Gaming Commission); (*id*. ¶¶ 52–54) (alleging that in March 2018, mandatory meetings were scheduled with investigatory counsel regarding sexual harassment allegations without specifying what was said at the meetings); (*id*. ¶¶ 55) (stating that in March 2018, another meeting was convened during which Matt Maddox asked Salon employees "how can we help you?"); (*id*. ¶ 56) (noting that Mulroy issued a letter in March 2018 which was posted on the Salon bulletin board which "stated that if anyone had information regarding sexual harassment allegations at the Wynn, they should report the information to the Board of Directors' investigation"); (*id*. ¶ 141) (alleging that Judy Doe Plaintiff No. 3 received "continue[d] inquires" from high-level Wynn executives "regarding her experiences in the Wynn workplace"); (*id*. ¶ 167, 202) (contending that Judy Doe Plaintiff Nos. 4 and 6 was "contacted" by Wynn human resources personnel "who wanted to interview her about her" charge of discrimination); (*id*. ¶ 264) (alleging that Mitchum handed out cards with the Massachusetts and Nevada Gaming Commissions' phone number "and told the employees they should not talk to anyone else"). For example, it is unreasonable to infer that it was Defendants' intent to intimidate the Judy Doe Plaintiffs solely by having them meet with investigatory counsel from Gibson Dunn

without allegations showing why the meeting was objectively abusive. *See E.E.O.C. v. Total Systems Services, Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) ("When an employer is told of improper conduct at its workplace, the employer can lawfully ask: is the accusation true?"). It is clear that the Judy Doe Plaintiffs subjectively felt offended by the Defendants' investigation, but the facts alleged in the Second Amended Complaint do not give rise to the inference that the conduct underlying the investigation "permeated with discriminatory intimidation . . . that is sufficiently severe or pervasive to alter the conditions of the [Judy Doe Plaintiffs'] employment and create an abusive working environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citation omitted).

In sum, the Judy Doe Plaintiffs' argument is inverted—it assumes that Defendants' investigation was retaliatory to permit the inference that the actions underlying the Second Amended Complaint were wrongful and thereby created a hostile work environment. But the opposite is needed for the Judy Doe Plaintiffs to allege a viable hostile work environment claim. They must specifically allege what was said or happened at these interviews and meeting that exceeded the scope of an employer's normal internal investigation into misconduct such that a reasonable inference can be drawn that Defendants had an improper motivation. *See Montano*, 2017 WL 3412102, at *7; *Balkenbush*, 653 F. Supp. 2d at 1126; *Corrales*, 2007 WL 9724519, at *4.

Merely labeling the actions by employers as retaliatory without more, is not sufficient to create a hostile work environment. Accordingly, the Court finds that the investigations and meetings underlying the Judy Doe Plaintiffs' Second Amended Complaint did not form a hostile work environment.

///

///

///

*ii.   Remaining Actions*

At the outset, the Court notes that the Judy Doe Plaintiffs Response otherwise fails to articulate why the Second Amended Complaint alleges a cognizable hostile work environment claim. (*See generally* Resp.).  Nevertheless, for reasons not set forth by the Judy Doe Plaintiffs, the Court finds that the allegations within the Judy Doe Plaintiffs Second Amended Complaint plausibly states a hostile work environment claim.

To recount, the Judy Doe Plaintiffs Second Amended Complaint alleges that numerous media outlets began reporting Steve Wynn's sexual misconduct on January 26, 2018. (SAC ¶ 35).  Even assuming that Defendants were not aware of Steve Wynn's alleged sexual misconduct prior to this date, it is reasonable to assume that they were constructively notified of Steve Wynn's misconduct on this day.  Despite the allegations against Steve Wynn, he was still permitted to address Salon employees at a meeting on January 31, 2018, (*id.* ¶ 39), and at the birthday celebration on February 1, 2018, (*id.* ¶ 42), where he engaged in inappropriate and insensitive actions.  The Judy Doe Plaintiffs further allege that Steve Wynn "continued to ask for and receive" salon "services in February 2018 and March 2018 (including by some of the [Judy Doe Plaintiffs.]"[20] (*Id.* ¶ 50).  Overall, while Steve Wynn's insensitive and improper conduct is relevant to the Judy Doe Plaintiffs' hostile work environment claim, the proper focus is on Defendants' response to Steve Wynn's conduct. *See Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 650 (9th Cir. 2021) (holding that "the proper focus for the hostile work environment claim [is] on the employer's response to the [hostile] coworker's conduct").

In *Fried*, a salon manicurist-employee received an unwanted proposition for sex by a male customer while at work. *Id.* at 646.  The employee reported the unwanted sexual advance to his manager and explained that he no longer felt comfortable interacting with the customer.

---

[20] The Court advises the Judy Doe Plaintiffs to specify which of the Judy Doe Plaintiffs actually provided services to Steve Wynn during this time-period.

*Id*.  According to the employee, the manager nevertheless directed him to complete the pedicure service with the customer. *Id*.  The Ninth Circuit held that the district court erred by ruling on summary judgment, as a matter of law, that the employer's response to the employee's report of the customer's harassment did not create a hostile work environment. *Id*. at 652.  The *Fried* court reasoned that the manager's response effectively condoned the customer's unwanted sexual advance and conveyed to the employee that he was expected to tolerate the harassment as part of his job. *See id*. (holding that while "an employer's prompt corrective response can insulate an employer from liability for an employee's hostile work environment claim," an employer's failure to intervene after learning of harassing conduct can create a hostile work environment); *see also Folkerson v. Circus Circus Enters., Inc.*, 107 F.3d 754, 756 (9th Cir. 1997) (holding that "an employer may be held liable [ ] where the employer either ratifies or acquiesces in the harassment by not taking immediate and/or corrective action when it knew or should have known of the conduct").

Here, based on the significant publicity surrounding Steve Wynn's actions, it is reasonable to infer that Defendants were aware that Steve Wynn should not have been around Salon employees, including the Judy Doe Plaintiffs.  Despite this awareness, the Defendants not only failed to stop Steve Wynn from seeing the Judy Doe Plaintiffs and other Salon employees, but "actively contributed to the hostile work environment [they] created by continuously putting [the Judy Doe Plaintiffs] in a position where [they] were forced to interact with [Steve Wynn.]" *Suarez v. Del Toro*, No. 22-cv-0021, 2022 WL 4112230, at *10 (S.D. Cal. Sept. 8, 2022); *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1075 (10th Cir. 1998) (emphasizing that the manager "placed Ms. Lockard in an abusive and potentially dangerous situation, although he clearly had both the means and the authority to avoid doing so").  Therefore, on the face of the Second Amended Complaint, the lack of corrective measures implemented by Defendants in allowing Steve Wynn to see the Judy Doe Plaintiffs on multiple occasions

permits the inference that they sanctioned Steve Wynn's sexual harassment. *See Fried*, 18 F.4th at 652 ("Reasonable jurors could decide that Fried's manager condoned the customer's conduct and conveyed that sexual harassment would be tolerated in the salon because she took no action to stop it—such as requiring the customer to leave the premises immediately."); *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020) (holding that a court considers "all the circumstances," including whether the discriminatory conduct was "physically threatening or humiliating") (citation omitted). Evidence revealed during discovery may well rebut this allegation. However, at this early stage in the litigation process, the Court finds that the lack of corrective measures identified above is sufficient to allege a claim for hostile work environment. Therefore, Defendants' Motion to Dismiss is DENIED as to the Judy Doe Plaintiffs hostile work environment claim.

## B. Retaliation[21]

To make out a *prima facie* case of retaliation under Title VII, a plaintiff must allege facts demonstrating that "(1) [she] engaged in a protected activity, (2) [she] suffered an adverse employment action, and (3) there was a causal link between [her] activity and the employment decision." *Stegall v. Citadel Broadcasting Co.*, 350 F.3d 1061, 1065–66 (9th Cir. 2003) (quoting *Raad v. Fairbanks North Star Borough Sch. Dist.*, 323 F.3d 1185, 1196–97 (9th Cir. 2003). Here, the Judy Doe Plaintiffs filing of an EEOC complaint was a protected activity. *See Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007) ("In this case, Poland's filing of EEOC complaints was a protected activity."). Therefore, the Court's discussion will be limited to an examination of the latter two elements.

---

[21] The Judy Doe Plaintiffs' retaliation claim is brought under both 42 U.S.C. § 2000 *et. seq.* and NRS § 613.340. As previously stated, "Nevada law looks to federal discrimination and retaliation cases for guidance in applying state law." *Curls v. Clark Cnty. Sch. Dist.*, No. 2:16-cv-00979, 2017 WL 1228409, at *2 (D. Nev. Mar. 31, 2017); *see Pope*, 114 P.3d at 281 (relying on Title VII cases to interpret NRS § 613.340); *Hirshhorn v. Sizzler Restaurants Int'l, Inc.*, 913 F. Supp. 1393, 1398 (D. Nev. 1993) (relying on Title VII cases to interpret NRS § 613.330). Because discrimination and retaliation claims under Nevada law are substantially similar to federal claims under Title VII, the Court's discussion will focus on Title VII.

### 1. Adverse Employment Action

Defendants maintains that the events underlying this case are mere "typical workplace activities" rather than the adverse actions the Judy Doe Plaintiffs portray them to be. (MTD 14:22–24). In rebuttal, the Judy Doe Plaintiffs primarily contend that the meetings and investigative interviews conducted by Defendants were meant to intimidate and dissuade them from "speaking out" against Steve Wynn and Defendants. (Resp. 13:13–19).

For purposes of a retaliation claim, a challenged action must be "materially adverse," meaning that it would dissuade a reasonable worker from exercising protected rights. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000) (describing an adverse employment action as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity"); *Xing Xing Lin v. Potter*, No. C 10– 03757 LB, 2011 WL 233053, at *11 (N.D. Cal. Jan. 22, 2011) (noting that the standard for "materially adverse employment decision" in the retaliation context is even lower than that required for a Title VII discrimination claim). Notably, the Ninth Circuit takes "an expansive view of the type of actions that can be considered adverse employment actions." *Ray*, 217 F.3d at 1241. Less severe actions can dissuade a reasonable employee from making a charge of discrimination than affecting the terms and conditions of employment. *Giovanetti v. Trustees of California State University (Humboldt State University)*, No. 04-cv-5514, 2007 WL 9735004, at *2 (N.D. Cal. Sept. 5, 2007).

While not exhaustive, actions such as an "employer's lateral transfer of an employee to another job of the same pay and status; the transfer of job duties; dissemination of unfavorable job references even if the employee is offered the new position; exclusion of an employee from meetings, seminars, and positions that would have made the employee eligible for salary increases; the unfair denial of secretarial support; and imposition of a more burdensome work

schedule," have been found to constitute a materially adverse employment action for a retaliation claim *Demetrius Williams v. Denis R. McDonough*, No. 2:20-cv-10074, 2022 WL 18214015, at *17 (C.D. Cal. Nov. 7, 2022) (citing Ray, 217 F.3d at 1240–1243); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").

Here, the Judy Doe Plaintiffs do not allege a traditional type of adverse employment action in that there was no discernable change in their employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.[22] (*See generally* SAC); *see Higdon v. Mabus*, 5 F. Supp. 3d 1199, 1212 (S.D. Cal. 2014) ("An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage[,] which generally includes a termination of employment, a demotion, a material loss of benefits, or . . . significantly diminished material responsibilities.") (internal quotation marks omitted). But the relative novelty of their theory of retaliation does not preemptively defeat their claim. The liberal thrust of what may be considered a materially adverse employment action is precisely

---

[22] The Court notes that the scope of its inquiry is limited by when the Judy Doe Plaintiffs engaged in their protected activity, *i.e.*, filing a complaint with the EEOC. Put differently, for a causal link to exist between the adverse employment action and the protected activity, the adverse employment action cannot predate the protected activity. *See Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 n.1 (9th Cir. 1986) ("[A]n employer who had already decided upon a course of action adverse to the plaintiff prior to learning of the plaintiff's protected activity did not intend to retaliate."); *Peace-Wikham v. Walls*, 409 F. App'x 512, 522–23 (3d Cir. 2010) (holding that plaintiff "cannot establish a sufficient causal relationship between her protected activities" and adverse employment action because the adverse action "predated all of her protected activities"); *Watkins v. Tex. Dep't of Crim. Just.*, 269 F. App'x 457, 461 (5th Cir. 2008) ("[M]any of the actions [plaintiff] complains of cannot be retaliatory because they predate his participation in any protected activity."). Here, the Judy Doe Plaintiffs' initial contact with the EEOC was between March 9, 2018, to April 10, 2018. (*See generally* Charges of Discrimination, Ex. A–F to Mot. Seal, ECF No. 117). Therefore, the Court considers below all of Defendants' actions from this date onward. *See Robinson v. Rigas*, No. 20-cv-07907, 2021 WL 3112419, at *8 (N.D. Cal. July 22, 2021) ("[B]ecause the adverse actions occurred before Plaintiff engaged in protected activity, the complaint does not allege the required causal link.").

that no "act will be preemptively rejected" and that it will ultimately "be up to the jury to decide whether a specific act 'would have been materially adverse to a reasonable employee.'" *Giovanetti*, 2007 WL 9735004, at *3 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68 (2006).

### b. *Investigative Meetings & Interviews*

In the instant action, the Judy Doe Plaintiffs contend that Defendants' investigation was the adverse employment action. Therefore, the relevant question becomes whether the investigative meetings and interviews conducted by Defendants were retaliatory actions meant to dissuade them from engaging in a protected activity. Generally speaking, "[c]ourts have consistently found that participation in investigative interviews or meetings, standing alone, does not constitute punishment or grounds for discipline and therefore would not deter a reasonable employee from engaging in protected activity." *Ballard v. Donohue*, No. 2:11-cv-2576, 2014 WL 1286, at *12 (E.D. Cal. Mar. 27, 2014); *Lee v. Hawaii*, No. 09-cv-00032, 2010 WL 235009, at *7 (D. Haw. Jan. 20, 2010) ("Merely being subject to an investigation while others are not does not rise to the level of an adverse employment action for purposes of Title VII."). "While an investigation might be undesirable or distasteful, it does not automatically or necessarily disadvantage an employee." *Niimi–Montalbo v. White*, 243 F.Supp.2d 1109, 1127 (D. Haw. 2003).

Nevertheless, as the Court previously noted, a distinction can be drawn based on the employer's motivation in conducting the investigation. When an investigation is launched for retaliatory reasons, the investigative meetings and interviews which comprise that investigation may constitute an adverse employment action. *See Cox*, 760 F.3d at 146 (finding that an employer's investigation of a harassment complaint "without more-that is, without additional particularized facts evidencing a retaliatory intent and resulting in, or amounting to, adverse job consequences for the complainant–cannot sustain a valid retaliation complaint"); *Perez v. U.S.*

*Postal Service*, 76 F. Supp. 2d 1168, 1185 (W.D. Wash. 2015) ("Investigative interviews may, however, rise to an actionable level or where they lead to an adverse consequence or where the attending circumstances show that a reasonable person subjected to them would be dissuaded from complaining about discrimination.").

In their respective briefings, the parties dispute whether the following investigative meetings and interviews were adverse employment actions: (1) the two town hall meetings conducted by Maddox on March 14, 2018, and May 8, 2018; (2) the investigative interviews with Gibson Dunn investigators; (3) continued Salon visits from executives, attorneys, Board members, and Wynn Resorts HR personnel who allegedly questioned the Judy Doe Plaintiffs about their filings. (MTD 15:12–18); (Resp. 12:23–13:1).

For the reasons set forth above, the Court finds that the Judy Doe Plaintiffs failed to allege facts in the Second Amended Complaint that give rise to the reasonable inference that these meetings were retaliatory in nature, and that a reasonable worker may have been dissuaded from speaking out based on the successive interviews and meetings pursuant to the investigation. *See Posin v. Cnty. of Orange*, No. 15-cv-0120, 2016 WL 5858706, at *4 (C.D. Cal. Jan. 18, 2016) (finding that even if there was a "lurking factual dispute regarding the County's motive to investigate or interview certain witnesses" the investigation and its findings were not "adverse employment actions" where the plaintiff did not suffer any adverse employment action "such as a demotion, leave of absence, or change in job responsibilities"); *Twitter, Inc. v. Paxton*, No. 21-cv-01644, 2021 WL 1893140, at *3 (N.D. Cal. May 11, 2021) ("Twitter cites no case holding the institution of an allegedly retaliatory investigation, by itself, constitutes a cognizable adverse action, and, as Paxton points, some courts have found it does not . . . ."). The Court again advises the Judy Doe Plaintiffs to specifically allege what transpired in those meetings such that it can be inferred that the meetings and interviews were meant to intimidate the Judy Doe Plaintiffs.

### c.  *Remaining Allegedly Materially Adverse Actions*

Although the Judy Doe Plaintiffs limit their Response to an examination of the previously mentioned investigative meetings and interviews, the Court notes that the Judy Doe Plaintiffs Second Amended Complaint also alleges that Defendants retaliated against them by failing "to craft a remedial mechanism to evaluate and compensate the[m] for unlawful discrimination," (SAC ¶ 331), such that they were forced to file the instant lawsuit, and because the Defendants "may" have "secretly surveilled" the Judy Doe Plaintiffs. (*Id*. ¶ 332).  The Court will address each argument in turn.

### i.  *Lack of Remedial Scheme*

As to the former, the Judy Doe Plaintiffs do not address what they precisely mean by a "lack of remedial mechanism" in their Response, (*see generally* Resp.), but the Court construes their allegation as effectively claiming that Defendants alleged failure or refusal to investigate or adequately respond to their protected activity is an adverse employment action because it forced them to initiate the instant action.  Even if the Judy Doe Plaintiffs plausibly alleged a failure to investigate or adequately respond, however, their allegations do not rise to the level of an adverse employment action, even for a retaliation claim.

"[A]n employer's failure to investigate a complaint of discrimination cannot be considered an adverse employment action in retaliation for the filing of the same discrimination complaint." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010). "This is because, broadly speaking, the 'failure to investigate an internal complaint cannot be considered retaliatory' because it 'leaves an employee no worse off than before the complaint was filed." *Yampierre v. Baltimore Police Department*, No. 21-cv-1209, 2022 WL 3577268, at *37 (D. Md. Aug. 18, 2022) (quoting *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640 (10th Cir. 2012).

///

1      For the failure to implement a remedial scheme or mechanism to constitute an adverse

2  employment action, the Judy Doe Plaintiffs must further allege how the absence of an internal

3  investigation made it more difficult for them to pursue their claims with the EEOC or otherwise

4  assert their rights. *See McFalls v. BrightView Landscapes, LLC*, No. 18-cv-2871, 2020 WL

5  1922828, at *7 (E.D. Pa. Apr. 21, 2020) (observing that an adverse employment action could be

6  based on "an employer's inadequate investigation if the plaintiff can show that the allegedly

7  deficient investigation effected a material change in the terms or conditions of the plaintiff's

8  employment"); *Rochon v. Gonzales*, 438 F.3d 1211, 1219–20 (D.C. Cir. 2006) ("[A] reasonable

9  FBI agent well might be dissuaded from engaging in activity protected by Title VII if he knew

10  that doing so would leave unprotected by the FBI in the face of threats against him or his

11  family").  Put differently, the "failure to investigate could constitute an adverse employment

12  action if the failure was in retaliation for a separate protected act." *Kuhn v. United Airlines*, 63

13  F. Supp. 3d 796, 804 (N.D. Ill. 2014) (citing *Fincher*, 604 F.3d at 722).  An illustration by the

14  United States District Court for the District of Puerto Rico is instructive.  In *Martinez-Taboas v.*

15  *Universidad Carlos Albizu, Inc.*, the Court explained that "a plaintiff who objects to some

16  discriminatory act and then is targeted by a colleague could experience an adverse employment

17  action if the employer refused to investigate the colleague.  If, instead, the employer simply

18  does not respond to an initial complaint about a colleague, the 'employee whose complaint is

19  not investigated cannot be said to have thereby suffered a punishment for bringing that same

20  complaint." No. 20-cv-1503, 2021 WL 2786265, at *5 (D. P.R. July 2, 2021) (quoting *Fincher*,

21  604 F.3d at 721).

22      Here, the Judy Doe Plaintiffs do not contend that Defendants' purported failure to

23  investigate or respond was in retaliation for their earlier engagement in a protected activity.

24  Instead, their claim is premised on Defendants allegedly inadequate response to their protected

25  act, *i.e.*, conducting an sham investigation in response to their filing a claim with the EEOC.

Therefore, the Court finds that as currently alleged, the Judy Doe Plaintiffs' allegation regarding Defendants' failure to implement a remedial scheme fails to constitute an adverse employment action.

### ii.   Secret Surveillance

The Judy Doe Plaintiffs further allege that "back in 2018," Defendants secretly surveilled "some Salon employees . . . ." (SAC ¶ 331.  In response, the Defendants contend that the Judy Doe Plaintiffs contention that they "may" have been surveilled is not a well-pled factual allegation, and leaves open the possibility that other Salon employees were filmed rather than them. (MTD 18:13–28).

 "Courts have held that evidence that an employer conducted secret surveillance of an employee who has engaged in protected activity raises a material issue of fact for a retaliation claim." *Rippstein*, 2022 WL 1522155, at *5 (D. Ariz. May 13, 2022); *Williams v. Guilford Tech. Cmty. Coll. Bd. of Trs.*, 117 F. Supp. 3d 708, 721 (M.D.N.C. 2015) ("Secretive surveillance and heightened scrutiny of an employee can constitute adverse employment actions for retaliation purposes."); *Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 598 (S.D.N.Y. 2010) ("[T]here is nothing unreasonable about the jury's concluding that secret surveillance by an employer well might ... dissuade a reasonable employee from continuing to complain about discrimination . . . .");

Generally speaking, it is not difficult to imagine that surveillance might intimidate a reasonable employee and dissuade them from complaining about discrimination. *See Bind v. City of New York*, No. 08-cv-11105, 2011 WL 4542897, at *10 (S.D.N.Y. Sept. 20, 2011) (noting that even if an employee is unaware of surveillance, the fact that the employee was under surveillance may constitute an adverse employment action); *Cichonke v. Bristol Twp.*, No. 14-4243, 2015 WL 8764744, *19 (E.D. Pa. Dec. 14, 2015) ("[I]t is possible that a reasonable jury could find that such [surveillance] was an adverse employment action.").

However, as currently alleged, the Court finds that the Judy Doe Plaintiffs Second Amended Complaint lacks specific factual allegations to "nudge" an inference of retaliation "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.  The Court advises the Judy Doe Plaintiffs to allege with greater specificity when the alleged surveillance began and who amongst the Judy Doe Plaintiffs was surveilled.  The Judy Doe Plaintiffs' allegations should also include where the purported secret surveillance occurred, *i.e.*, did the Defendants secretly surveil the Judy Doe Plaintiffs during the workday or did the surveillance exceed the confines of the workplace.

In sum, the Court finds that the Judy Doe Plaintiffs have failed to allege a materially adverse employment action to state a retaliation claim.  Therefore, the Court DISMISSES the Judy Doe Plaintiffs' retaliation claim with leave to amend the deficiencies identified by this Order.

### C. Negligent Hiring, Training, Supervision, and/or Retention

Defendants contend that the Judy Doe Plaintiffs' negligent hiring, training, supervision, and/or retention claim fails for three reasons.  First, Defendants argue that the claim is preempted by NRS § 613.330. (MTD 23:2–12).  Second, Defendants assert the claim is based on untimely conduct. (*Id*. 23:16–24:23).  Finally, Defendants contend that to the extent the claim is based on timely conduct, the alleged actions are insufficient to constitute a cognizable negligent hiring, training, supervision, and/or retention claim. (*Id*. 21:24–34:27).  In rebuttal, the Judy Doe Plaintiffs Plaintiffs argue that NRS § 613.330 does not preempt all tort claims based on employment actions, and that prior decisions by this court have recognized that tort claims in cases alleging sexual harassment are not preempted. (Resp. 16:5–20).

The Supreme Court of Nevada has recognized that NRS § 613.330 "provides the exclusive remedy for tort claims premised on illegal employment practices." *Williams v. Aria Resort & Casino, LLC*, No. 2:17-cv-1484-JCM-VCF, 2019 WL 2716765, at *8 (D. Nev. June

28, 2019) (citing *Brinkman v. Harrah's Operating Co., Inc.*, 2008 WL 11389180, at *5 (D. Nev. Oct. 16, 2008), *Sands Regent v. Valgardson*, 777 P.2d 898, 900 (Nev. 1989), and *D'Angelo v. Gardner*, 819 P.2d 206, 217 n.10 (Nev. 1991)).  Further, contrary to the Judy Doe Plaintiffs' contention, past decisions by this Court have found that a plaintiff's tort claims are preempted even when the underlying cause of action is for sexual harassment. *See Angela Evans v. Valley Electric Association, Inc., et al.*, No. 2:20-cv-000986, 2023 WL 184124, at *15 (D. Nev. Jan. 13, 2023) (determining that the plaintiff's negligent, hiring, training, supervision, and retention claim was preempted by NRS § 613.330 even where the plaintiff's underlying Title VII claim was based in part on sexual harassment); *Williams*, 2019 WL 2716765, at **8–9 (determining that the plaintiff's negligent supervision claim was preempted were the claim stemmed "from the same allegations that support her Title VII discrimination claims"); *Schaefer v. Diamond Resorts Intern. Marketing, Inc.*, No. 2:14-cv-01900, 2015 WL 1932196, at *7 (D. Nev. Apr. 28, 2015) (finding that the plaintiff's IIED claim was preempted by NRS § 613.330 where it was "based on the same alleged illegal employment practices underlying her discrimination claims").  Because the facts underlying the Judy Doe Plaintiffs training, supervision, and/or retention claim are the same as those underlying their employment discrimination claims, the Court finds that their claim is "clearly intended to be remedied by the statutory framework" and does not give rise to separate common law tort claims. *Jackson v. Universal Health Servs. Inc.*, No. 2:13-cv-01666, 2014 WL 4635873, at *4 (D. Nev. Sept. 15, 2014) (citation omitted).  Accordingly, the Court finds that this claim is preempted by NRS § 613.330 and is DISMISSED with prejudice.

///

///

///

///

1    **D. IIED**

2         Defendants contend that the Judy Doe Plaintiffs' IIED claim fails for four reasons: (1)

3    the claim is time-barred by the applicable statute of limitation;[23] (2) the claim is preempted by

4    the Nevada Industrial Insurance Act ("NIAA"); (3) Defendants did not engage in extreme or

5    outrageous conduct; and (4) that the Judy Doe Plaintiffs cannot demonstrate they suffered

6    severe distress. (MTD 25:3–29:19). Here, the Court agrees with Defendants fourth argument,

7    namely that the Judy Doe Plaintiffs have failed to plausibly allege that they suffered severe

8    emotional distress because of Defendants conduct.

9         To establish a claim of IIED, a plaintiff must prove the: (1) defendant engaged in

10   "extreme or outrageous conduct with either the intention of, or reckless disregard for, causing

11   emotional distress; (2) [plaintiff] has suffered severe or extreme emotional distress; and (3)

12   actual or proximate causation." *Posadas v. City of Reno*, 851 P.3d 24, 26 (1998) (internal

13   quotations omitted). When considering whether a plaintiff has sufficiently stated a claim upon

14   which relief can be granted, "[t]he court determines whether the defendant's conduct may be

15   regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may

16   differ, the jury [must determine] whether the conduct was extreme and outrageous enough to

17   result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1122 (D. Nev. 2009).

18        The Judy Doe Plaintiffs argue that as a result of Defendants conduct, they suffered

19   severe or extreme emotional distress in the form of "anxiety, a generalized fear of going into

20   work, and panic," (SAC ¶ 364), as well as "physical manifestations of feeling physically sick

21   for having to attend Steven Wynn's January 2018 Wynn Resorts' Country Club Meeting where

22   he demanded that people raise their hands if they had been abused by him . . . ." (Resp. 18:7–

23

24   ---

     [23] The limitation period for IIED claims is two years. *See* NRS § 11.190(4)(e); *Long v. Diamond Dolls of
     Nevada, LLC*, No. 3:19-cv-00652, 2020 WL 6381673, at *8 (D. Nev. Oct. 29, 2020) (applying NRS §
25   11.190(4)(e)'s two-year limitation period). Notably, the Judy Doe Plaintiffs do not contend that equitable
     tolling, equitable estoppel, or the continuing violations doctrine resuscitate their expired claims. (*See generally*
     Resp.).

16).  However, even accepting these allegations as true, such symptoms are insufficient to establish severe emotional distress. *See Kennedy v. UMC University Medical Center*, 203 F. Supp. 3d 1100, 1110 (D. Nev. 2016) (finding that anxiety and panic attacks were insufficient to establish severe and emotional distress); *Taylor v. Clark Cnty Sch. Dist.*, No. 2:18-cv-01264, 2019 WL 2453648, at *5 (D. Nev. June 11, 2019) ("The only specific examples of emotional distress in the complaint are the panic attack on June 1, 2017, and the stress and anxiety that lead to the FMLA release, neither of which amount to severe emotional distress."); *Kelley v. City of Henderson*, No. 2:15-cv-02204, 2017 WL 2802732, at *7 (D. Nev. June 27, 2017) ("Kelley's allegations of humiliation, anxiety, embarrassment, and severe emotional distress do not suffice to allege she experienced severe emotional distress."); *Bravo v. Caesars Entertainment Corp.*, No. 2:14-cv-1616, 2014 WL 7178359, at *6 (D. Nev. Dec. 17, 2014) (finding that the plaintiff's alleged anxiety, anguish, and worrying was insufficient to sustain an IIED claim).  Therefore, because the Judy Doe Plaintiffs fail to allege severe emotional distress, their claim for IIED is DISMISSED with leave to amend.[24]

### E.  False Imprisonment

The Judy Doe Plaintiffs argue that based on the positioning of Defendants' staff at the January 31, 2018, meeting, they were confined to the room the meeting took place in such that they were falsely imprisoned. (Resp. 21:1–9).  Specifically, the Judy Doe Plaintiffs contend that at this meeting, "high-level executives, security personnel, and possibly some Board members positioned themselves along the perimeter of the room in such a manner that Plaintiffs reasonably believed they were not allowed to leave." (SAC ¶ 369).

In order to state *prima facie* claim for false imprisonment, a plaintiff must show: (1)

---

[24] Because the Court finds that the Judy Doe Plaintiffs failed to allege severe emotional distress such that their IIED claim fails, it declines to examine Defendants' remaining arguments.

defendant(s) intended to confine plaintiff within boundaries fixed by defendant, (2) defendant(s) acts directly or indirectly results in such a confinement of plaintiff, and (3) plaintiff is conscious of the confinement or is harmed by it. *Pitti v. Alberstons, LLC*, No. 2:11-cv-00280, 2012 WL 1931243, at *4 (D. Nev. May 29, 2012) (citing *Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981). The Supreme Court of Nevada has explained that "[s]ubmission to mere verbal direction of another unaccompanied by force or threats of any character does not constitute false imprisonment." *Moen v. Las Vegas Intern. Hotel, Inc.*, 521 P.2d 370, 371 (Nev. 1974). Additionally, "[a]pprehension that one might in the future lose one's job . . . is not force or threat of force which is necessary to establish false imprisonment." *Id.* at 371.

Here, the Court finds that the circumstances of the January 31, 2018, meeting fail to rise to the level of false imprisonment. Notably absent from the Judy Doe Plaintiffs Second Amended Complaint is any allegation that they tried to leave the meeting or were told that they could not leave. Additionally, the Judy Doe Plaintiffs Second Amended Complaint contains no allegation that the doors to the meeting were locked, thereby preventing them from leaving. *See Jacobson v. State*, 510 P.2d 856, 863 (Nev. 1973) (Zenoff, J., dissenting) ("Because a security guard was seated outside the door does not mean that the security guard was supposed to keep Landucci within the premises. Laducci never asked if he could leave and did not try to leave and made no attempt to leave the King's Castle premises."). Finally, the Supreme Court of Nevada has made clear that any implied threat of retaliation through an adverse employment action, such as termination, fails to constitute the threat of force needed to establish false imprisonment. *See Leslie v. Las Vegas Metropolitan Police Department*, No. 2:14-cv-01430, 2015 WL 10504244, at *6 (D. Nev. Dec. 18, 2015) ("Neither verbal directions unaccompanied by force or threats of any character, nor threatened job loss, constitutes force or threat of force for purposes of false imprisonment.") (citing *Moen*, 521 P.2d at 371). Here, the mere presence

of security personnel and other high-level employees along the walls of the meeting is insufficient to demonstrate that the Judy Doe Plaintiffs were confined to the room. Accordingly, the Court DISMISSES the Judy Doe Plaintiffs' false imprisonment claim with leave to amend.[25]

### F. Invasion of Privacy

Defendants further move to dismiss Judy Doe Plaintiffs 5, 8, and 9 invasion of privacy claim. Specifically, Judy Doe Plaintiffs Nos. 5, 8, and 9 invasion of privacy claim are predicated on two separate causes of action: (1) intrusion upon seclusion, and (2) false light. The Court will first examine Judy Doe Plaintiffs Nos. 5, 8, and 9 intrusion upon seclusion claim.

#### 1. Intrusion Upon Seclusion

Judy Doe Plaintiffs Nos. 5, 8, and 9 believe that Steve Wynn, by filming them at the February 1, 2018, birthday celebration for a Salon employee, violated their privacy and thereby intruded upon their right to seclusion. (Resp. 21:14–22:8.) In contrast, Defendants maintain that the filming of the event fails to rise to the level of an invasion of privacy in part because the celebration took place at the Salon, which is in a public area. (MTD 32:3–34:3.)

The Supreme Court of Nevada has explained that "Nevada's common law recognizes the tort of invasion of privacy for unreasonable intrusion upon the seclusion of another. The purpose of the tort is to provide redress for intrusion into a person's reasonable expectation of privacy . . . ." *Clark Cnty School Dist. v. Las Vegas Review-Journal*, 429 P.3d 313, 320 (Nev. 2018). "To recover for the tort of intrusion, a plaintiff must prove the following elements: (1)

---

[25] The Judy Doe Plaintiffs false imprisonment claim also fails to the extent it is predicated on allegations that they were "required or trapped in their workplace into attending one or more additional meetings in their Salon workplace by HR or other officials." (SAC ¶ 376). The Second Amended Complaint is devoid of allegations demonstrating that the Judy Doe Plaintiffs were in fact confined to a section. (*See generally Id.*). Additionally, the fact that Judy Doe Plaintiff No. 8 declined to participate in such an interview further militates against a finding that the meetings were mandatory tools designed to confine the Judy Doe Plaintiffs. (*Id.* ¶ 247).

Case 2:19-cv-01904-GMN-VCF   Document 162   Filed 02/03/23   Page 40 of 45

an intentional intrusion (physical or otherwise); (2) on the solitude or seclusion of another; (3) that would be highly offensive to a reasonable person." *Singer v. Las Vegas Athletic Clubs, Inc.*, 376 F. Supp. 3d 1062, 1076 (D. Nev. 2019) (citation omitted).  "Also, in order to recover under this tort, the plaintiff must have an actual and objectively reasonable expectation of seclusion or solitude." *Pittman v. J.J. Mac Intyre Co of Nevada, Inc.*, 969 F. Supp. 609, 614 (D. Nev. 1997).

Whether "'conduct will be regarded as a 'highly offensive' intrusion is largely a matter of social conventions and expectations,' and is therefore a matter usually to be resolved by a jury." *Magdaluyo v. MGM Grand Hotel, LLC*, No. 2:14-cv-01806, 2017 WL 736875, at *3 (D. Nev. Feb. 23, 2017) (quoting *Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1449 (D. Nev. 1994) (citation omitted).  Courts look to "the degree of intrusion, the context, conduct and circumstances surrounding the intrusion as well as the intruder's motives and objectives, the setting into which he intrudes, and the expectations of those whose privacy is invaded." *Id.*

Here, Judy Doe Plaintiffs Nos. 5, 8, and 9 have not adequately pled they had an objectively reasonable expectation of privacy in the area videotaped.  Namely, the birthday celebration took place in the Salon, Judy Doe Plaintiffs Nos. 5, 8, and 9's workplace and a public area in the hotel.  An individual's workplace has not generally been considered an area in which they have an expectation of privacy. *See O'Connor v. Ortega*, 480 U.S. 709, 717 (1987) ("An office is seldom a private enclave free from entry by supervisors, other employees, and business and personal invitees."); *Craig v. M&O Agencies, Inc.*, 496 F.3d 1047, 1060–61 (9th Cir. 2007) (finding that the plaintiff had no reasonable expectation of privacy in the common area of the women's restroom); *Minden v. Salvation Army*, No. 07-1370, 2007 WL 4171544, at *1 (D. Or. Nov. 19, 2007) ("[T]he workplace generally is not recognized as supporting an expectation of solitude or seclusion."); *Randazza v. Cox*, No. 2:12-cv-2040, 2014 WL 1407378, at *7 (D. Nev. Apr. 10, 2014) ("Generally, there is a decreased expectation of

privacy in the workplace . . . .").   In this context, Judy Doe Plaintiffs Nos. 5, 8, and 9 did not

have an expectation of privacy in an area accessible to, and populated by, other individuals. *See*

*Med. Lab. Mgmt. Consultants v. Am. Broadcasting Cos., Inc.*, 306 F.3d 806, 812–13 (9th

Cir.2002).  Therefore, the Court finds that Judy Doe Plaintiffs 5, 8, and 9 have failed to

plausible allege that Defendants intruded upon their solitude or seclusion.  Accordingly, the

Court will DISMISS this claim with prejudice.

### 2.  False Light

As with Judy Doe Plaintiffs Nos. 5, 8, and 9 intrusion upon seclusion claim, their false

light claim is also based on their being filmed at the February 1, 2018, birthday celebration.

Specifically, Judy Doe Plaintiffs Nos. 5, 8, and 9 contend that their presence in the film gives

the false appearance that they support Steve Wynn and do not believe that he committed the

acts of sexual harassment reported in the media. (Resp. 22:17–22).

To succeed in a false light claim, a plaintiff must show that the defendant's conduct: (1)

"gives publicity to a matter concerning another that places the other before the public in a false

light," (2) "the false light in which the [plaintiff] was placed would be highly offensive to a

reasonable person," and (3) "the [defendant] had knowledge of or acted in reckless disregard as

to the falsity of the publicized matter in which the [plaintiff] would be placed." *Fulkerson v.*

*Public Utilities Commission of Nevada*, No. 3:20-cv-00007, 2020 WL 5644879, at *5 (D. Nev.

Sept. 22, 2020) (citation omitted).

Here, Judy Doe Plaintiffs Nos. 5, 8, and 9 have failed to allege that the recording at issue

was disseminated to the public. *See DelVecchia v. Frontier Airlines, Inc.*, No. 2:19-cv-01322,

2020 WL 1450581, at *3 (D. Nev. Mar. 24, 2020) ("Here, the allegations are that the false

statements were made only in the presence of a small group of passengers. Such a limited group

does not meet the requirement of public disclosure."); *Kuhn*, 865 F. Supp. at 1448 (explaining

that publicity requires that the "matter is made public, by communicating it to the public at

large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge"). In the absence of allegations from which it can inferred that the recording was disseminated, and thereby actually cast Judy Doe Plaintiffs Nos. 5, 8, and 9 in a false light, the claim as currently constructed fails. *See Hutson v. Verizon Federal Network Systems, LLC*, No. 2:07-cv-00201, 2008 WL 4279418, at *5 (D. Nev. Sept. 17, 2008) ("[N]one of the statements were uttered to more than a few co-workers or employees of a potential employer and thus do not constitute 'publicity' . . . ."). Accordingly, the Court DISMISSES Judy Doe Plaintiffs Nos. 5, 8, and 9 false light claim with leave to amend.

### G. Injunctive Relief

The Judy Doe Plaintiffs additionally seek systemic injunctive relief against Defendants by "requiring Defendants to immediately correct all discriminatory and retaliatory practices and take all appropriate steps to ensure" a workplace free from unlawful discrimination. (SAC ¶ 397). Further, the Judy Doe Plaintiffs request that Defendants "be required to engage the services of outside" experts to study "the workplace culture which led to this injurious and hostile situation." (*Id.* ¶ 400). Defendants maintain that such relief is unnecessary in light of the remedial measures they have taken to eliminate discrimination in the workplace. (MTD 35:11–37:23).

Upon finding liability under Title VII, the court has discretion to "enjoin [the employer] from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include . . . any . . . equitable relief as the court deems appropriate." 42 U.S.C. § 2000e-5(g)(1); 42 U.S.C. § 12117(a). "[T]he district court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975). "Generally, a person subjected to employment discrimination is entitled to an injunction against future discrimination, unless the employer

proves it is unlikely to repeat the practice." *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1544 (9th Cir. 1987) (citations omitted); *see also James v. Stockham Valves and Fitting Co.*, 559 F.2d 310, 354 (5th Cir. 1977) ("Absent clear and convincing proof of no reasonable probability of further noncompliance with the law a grant of injunctive relief is mandatory"). "[A]s the Ninth Circuit has made clear, it is Defendant's burden, not Plaintiff's, to prove that discrimination is unlikely to recur." *EEOC v. Go Daddy Software, Inc.*, No. CV 04-2062-PHX-DGC, 2007 WL 1076701 at *8 (D. Ariz. April 6, 2007).

Here, Defendants maintain that injunctive relief is on longer necessary based on the remedial measures they have taken to eliminate discrimination in the workplace. (MTD 47:12–49:14). While Defendants' efforts to employ remedial measures are commendable, they are insufficient to warrant dismissal of the Judy Doe Plaintiffs' claim for injunctive relief with prejudice. "At this stage in the proceeding, [Defendants'] liability remains an open question. The answer to the questions of fact underlying the ultimate liability determination may prove crucial to the [C]ourt's determination of injunctive relief." *U.S. E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, No. 5:10-cv-03911, 2013 WL 1435290, at *11 (N.D. Cal. Apr. 9, 2013). As the Court has denied Defendants' Motion to Dismiss as to the Judy Doe Plaintiffs hostile work environment claim, and granted the Judy Doe Plaintiffs leave to amend their remaining Title VII claims, the possibility remains that Defendants will ultimately be held liable for their alleged actions. Therefore, it will DISMISS the Judy Doe Plaintiffs' injunctive relief claim with leave to amend rather than with prejudice.

In sum, Defendants' Motion for Dismiss is GRANTED in part and DENIED in part. Defendants' Motion to Dismiss is DENIED as to the Judy Doe Plaintiffs hostile work environment claim. Defendant's Motion to Dismiss is GRANTED as the Judy Doe Plaintiffs' remaining claims. As the Ninth Circuit has explained, while "leave to amend should be freely given," a district court may "dismiss without leave where a plaintiff's proposed amendments

would fail to cure the pleading deficiencies and amendment would be futile." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011).  Accordingly, the Judy Doe Plaintiffs are given leave to amend the following claims: disparate treatment pursuant to 42 U.S.C. § 2000(e) *et. seq*, and NRS § 613.330 *et. seq.,* retaliation pursuant to 42 U.S.C. § 2000 *et. seq*. and NRS § 613.340, false imprisonment, IIED, and intrusion upon seclusion claim.  In contrast, the Court DISMISSES with prejudice the Judy Doe Plaintiffs' negligent, hiring, training, supervision, and retention claim, and invasion of privacy claim as amendment would be futile.

If the Judy Doe Plaintiffs choose to file an amended complaint, they must do so no later than **February 24, 2023**.  Any amended complaint must cure the deficiencies identified by this Order.

///
///
///
///
///
///
///
///
///
///
///
///
///

IV.    **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss, (ECF No. 115), is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Defendant Wynn Las Vegas, LLC's Motions for Leave to File Excessive Pages, (ECF Nos. 114, 142), are **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Wynn Las Vegas, LLC's Motion to Seal, (ECF No. 117), is **DENIED**. Pages, (ECF Nos. 114, 142).  Accordingly, if Defendant Wynn Las Vegas, LLC wants to re-file its Motion to Seal, it has until **February 24, 2023**, to file a Renewed Motion to Seal.  If Defendant Wynn Las Vegas, LLC elects not to re-file their Motion to Seal, the Court will order the Clerk to unseal the Judy Doe Plaintiffs EEOC Charges of Discrimination.

**DATED** this ___3___ day of February, 2023.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT